1   C.D. Michel – Calif. S.B.N. 144258
    Joshua Robert Dale – Calif. S.B.N. 209942
2   MICHEL & ASSOCIATES, P.C.
    180 E. Ocean Blvd., Suite 200
3   Long Beach, CA 90802
    Telephone:  (562) 216-4444
4   Facsimile:  (562) 216-4445
    cmichel@michellawyers.com
5   jdale@michellawyers.com

6   Attorneys for Plaintiff
    Wayne William Wright

7

8                **UNITED STATES DISTRICT COURT**

9          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10      **WESTERN DIVISION - SPRING STREET COURTHOUSE**

| | |
|---|---|
| 11   WAYNE WILLIAM WRIGHT,  ) | **CASE NO. 2:15-CV-5805-R-PJW** |
| 12          Plaintiff,  ) | **FIRST AMENDED COMPLAINT FOR:** |
| 13          v.  ) | |
| 14   CHARLES L. BECK; MICHAEL N.  ) FEUER; HEATHER AUBRY;  ) | **(1)   VIOLATION OF FEDERAL CIVIL RIGHTS UNDER COLOR OF LAW (42 U.S.C. §1983)** |
| 15   RICHARD TOMPKINS; JAMES  ) EDWARDS; CITY OF LOS  ) | |
| 16   ANGELES; and DOES 1 through 50,  ) | **(a)   COUNT 1: VIOLATION OF FOURTH AMENDMENT;** |
| 17          Defendants.  ) | |
| 18   ──────────────────────────  ) | **(b)   COUNT 2: VIOLATION OF FIFTH AMENDMENT;** |
| 19 | |
| 20 | **(c)   COUNT 3: VIOLATION OF FOURTEENTH AMENDMENT;** |
| 21 | |
| 22 | **(d)   COUNT 4: FAILURE TO TRAIN;** |
| 23 | |
| 24 | **(2)   STATE LAW TORTS OF CONVERSION & TRESPASS TO CHATTELS;** |
| 25 | |
| 26 | **(3)   VIOLATION OF RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. §1961, *et seq.*);** |
| 27 | |
| 28 | |

**(4)     CONSPIRACY TO VIOLATE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (18 U.S.C. §1962(d)); AND**

**(5)     STATE LAW PREEMPTION CHALLENGE TO LAPD FIREARMS REGISTRATION POLICY**

**DEMAND FOR JURY TRIAL**

**AMENDMENT AS A MATTER OF COURSE**

Plaintiff hereby amends his complaint as a matter of course within 21 days after the service of Defendants' Answer on September 28, 2015. See FED.R.CIV.P. 15(a)(1)(B).

**JURISDICTION AND VENUE**

1.     Jurisdiction of this action is founded on 28 U.S.C. §1331, in that this action arises under the Constitution and laws of the United States, and on 28 U.S.C. §1343, 42 U.S.C. §1983, and 42 U.S.C. §1988, insomuch as this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges, or immunities secured by the United States Constitution and by Acts of Congress. The Court has supplemental jurisdiction over Plaintiff's state law claims asserted herein under 28 U.S.C. §1367 because such claims arise out of the same case or controversy as the federal claims.

2.     Venue in this judicial district is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**INTRODUCTION AND SUMMARY OF THE CASE**

3.     Plaintiff brings this action to seek relief regarding the destruction of his firearms by the Los Angeles Police Department ("LAPD") and its employees and agents, such destruction resulting from: 1) the execution of an illegal policy

**1**

**FIRST AMENDED COMPLAINT**

promulgated by Chief Charlie Beck, and LAPD denying the return of firearms after Plaintiff became eligible for the firearms to be released or returned, 2) the willful and malicious failure of LAPD's employees to follow state law and a lawful and well-established policy of LAPD mandating the return of the firearms, 3) the LAPD and the Los Angeles City Attorney's Office ignoring the jurisdiction of the Ventura County Superior Court and violating the court's orders, and 4) the LAPD and the Los Angeles City Attorney's Office conspiring to commit multiple unethical and illegal acts in order to facilitate the destruction of Plaintiff's property.

4. Plaintiff is a former Glendale Police Officer, firefighter helicopter pilot and a decorated veteran of the Vietnam War who currently proudly serves as an Adjutant/Service Officer with Veterans of Foreign Wars Post 10049. He is retired and living in Simi Valley in Ventura County. As a result of Plaintiff's military, police, and firefighting service, he became interested in the hobby of collecting antique, curio, and relic firearms. Over the course of decades, he invested hundreds of thousands of dollars in his collection and had collected hundreds of rare and collectible weapons and paraphernalia at the time they were seized by Defendant.

5. In the early-2000's, LAPD applied for and received federal antiterrorism grants, the requirements of which were to stop "gunrunning," shut down illegal arms dealers who fund and supply terrorists and street gangs, and to get guns used by terrorists and gangs "off the streets." LAPD has annually reapplied and received grants from these federal programs, including the program "Project Safe Neighborhoods." These grants are key to LAPD maintaining or increasing the available money in its annual budgets as the receipt of the federal grant monies allows, inter alia, for LAPD to staff its Gang and Narcotics Division - Gun Unit ("Gun Unit") with additional detectives.

6. To justify the continuing renewal of these grants from the federal

**2**

**FIRST AMENDED COMPLAINT**

1    government to LAPD, and thus keep the additional personnel paid for by the

2    grants, LAPD is required to show that the grant money is resulting in the actual

3    removal of tangible numbers of firearms from criminal hands.  Plaintiff was the

4    victim of LAPD's need to show its federal benefactors that tangible numbers of

5    guns were being taken off the streets.  See, e.g., Exhibit "1".

6         7.    LAPD's Gun Unit conducts "sting" operations at gun shows outside

7    its jurisdiction.  These sting operations are true fishing expeditions.  With no

8    intelligence that gun trafficking is occurring at such gun shows, the Gun Unit will

9    place undercover agents (including those whose salaries are funded solely by

10    federal grants) at shows to attempt to develop intelligence about illegal firearms

11    transactions.  Instead, what these sting operations tend to reveal are that

12    participants are law-abiding firearms collectors.  So undercover Gun Unit

13    detectives will then engage in entrapment schemes to then get purported

14    justification to arrest a gun collector and seize his or her property.  In doing so, it is

15    hoped by the Gun Unit that the random targets of these entrapment schemes might

16    actually be involved in some sort of significant gun trafficking activity, and the

17    arrest and seizure of that target and his or her property will provide enough

18    pressure for the targeted individual to give up his or her network of fellow gun

19    traffickers as part of a plea agreement.  In reality, these stings uncover almost zero

20    illicit "gun trafficking" activity.  But the arrests and seizures, which are often

21    financially ruinous to their victims, do oftentimes result in the targeted gun

22    collectors not having the financial or emotional wherewithal to fight to get their

23    seized property returned from LAPD.  The seized firearms are then deemed

24    abandoned by LAPD, the seized accessories and ammunition are auctioned off to

25    generate income for LAPD, and the firearms themselves are destroyed, with such

26    destruction used to tout the numbers of guns LAPD is "getting off the streets," and

27    to support further grant applications.

28         8.    Plaintiff's firearm collection consisted of pistols, revolvers, long guns

**3**

**FIRST AMENDED COMPLAINT**

and paraphernalia that had great value as collector's items, but very little value as "street weapons" or as tools of terrorism, e.g., Plaintiff collected old military rifles from the late 19th Century that no modern terrorist or street gang would use in a criminal act.  The vast majority of Plaintiff's firearms collection consisted of old handguns, shotguns, and military rifles manufactured and used in the early part of the 20th Century.

9.     LAPD became aware of Plaintiff's collection by Plaintiff's attendance at local gun shows and proud display of his collection thereat.  Plaintiff would occasionally sell one of his firearms at such shows.  The number of collectible firearms Plaintiff would occasionally sell was low; maybe a few a year.  Under no definition of the term "dealer" – state, federal, or common sense – would Plaintiff be classified as a dealer of firearms and certainly could not ever credibly be characterized as a "gun trafficker."  Notwithstanding Plaintiff's status as a collector, LAPD's Gun Unit became aware of Plaintiff's collection, targeted Plaintiff and began surveilling him at gun shows under the auspices that he was an unlicensed dealer and gun trafficker.

10.     LAPD did not observe any behavior at gun shows that would lead them to believe Plaintiff was selling a large number of firearms such that he might be properly considered an unlicensed dealer least of all a gun trafficker to gangs or terrorists.  Accordingly, they never arrested Plaintiff, nor anyone he sold a firearm to, at a gun show while he was displaying his collection.  Nonetheless, in 2004, LAPD decided to conduct a sting on Plaintiff, and in the process committed a blatant act of entrapment as a pretext to seize Plaintiff's collection.

11.     The Gun Unit, led by Defendants Tompkins and Edwards, contacted Plaintiff as ostensible purchasers of a firearm from Plaintiff's collection. They arranged to meet with Plaintiff to inspect the firearm and arrange the transfer. Plaintiff met in Los Angeles County with the ostensible purchaser, played by Edwards.  Edwards agreed at the meeting to purchase the firearm after inspecting

**4**
**FIRST AMENDED COMPLAINT**

1   it.  Plaintiff wanted to immediately take the firearm to a local Federal Firearms

2   Licensee ("FFL") in order to properly effect the sale under state and federal law.

3   Edwards agreed to the immediate FFL transfer, but played the "eager buyer" and

4   insisted that Plaintiff allow Edwards to drive the firearm to the local FFL to

5   surrender the firearm to the FFL and begin the transfer paperwork.  After cajoling

6   by Edwards, Plaintiff agreed, and gave Edwards possession of the firearm to drive

7   to the FFL, at which point, Gun Unit officers appeared and arrested Plaintiff.

8        12.   Plaintiff's reluctance to engage in the transaction in the unlawful

9   manner which Edwards insisted upon was clear from the surveillance recordings of

10  the encounter, and the matter would never be charged as a crime against Plaintiff.

11  It was apparent that no crime had been committed but for Edwards's insistence of

12  "holding" the firearm while they drove to the dealer to get the lawful transfer

13  process started.  It was a bad sting.  Nonetheless, LAPD then used the fact of the

14  arrest to get a search warrant to seize Plaintiff's collection, claiming, with no

15  corroborating evidence, that the collector was a "gun trafficker."  Given how badly

16  the sting was conducted, on information and belief, LAPD's purpose in conducting

17  the sting in the first instance was not to get good faith evidence of an illegal

18  firearms sale occurring in Los Angeles County, but was to instead get enough

19  evidence to justify issuance of a warrant to get at Plaintiff's voluminous firearms

20  collection located in Ventura County.

21       13.   LAPD executed on the warrant at Plaintiff's Ventura County residence

22  and a Ventura County storage unit.  During the course of the seizure, LAPD

23  discovered in the storage unit an unregistered suppressor and an unregistered

24  "Assault Weapon."  These had been acquired by Plaintiff lawfully during, inter

25  alia, the transfer of another retired officer's estate to Plaintiff as the estate's

26  executor. Plaintiff had placed them in storage simply forgotten about them.  But

27  Plaintiff's possession of them was technically a crime, and LAPD referred the

28  matter to the Ventura County District Attorney for prosecution.  Tellingly, LAPD

1    never referred for prosecution any of the alleged LA County "gun trafficking"

2    crimes Plaintiff purportedly committed giving rise to the search warrant.

3         14.    For all of LAPD's grandiose public claims of stopping gun trafficking

4    and illegal arms dealing (see Exhibit "1"), Plaintiff pled in the Ventura County

5    Superior Court to a single count of possession of an unregistered assault weapon,

6    which was later reduced to a misdemeanor, and he was sentenced to informal

7    probation.  He completed his probation and then applied for and received clearance

8    from the California Department of Justice ("DOJ") for the return of the hundreds of

9    firearms and paraphernalia seized by LAPD.

10        15.    At the time of Wright's plea agreement, the Ventura County Superior

11   Court had jurisdiction over the disposition of his seized property including the

12   firearms, pursuant to California law.  While the Los Angeles County Superior

13   Court initially had jurisdiction over the firearms in order to issue and enforce

14   LAPD's search warrant, the Los Angeles County Superior Court was divested of

15   jurisdiction once criminal charges were filed in Ventura County and the firearms

16   became the subject of the prosecution and plea of those charges.  Wright entered

17   into a binding and legally-enforceable contract with Ventura County with regard to

18   the disposition of the seized firearms in the form of the plea agreement.  As part of

19   his plea agreement with Ventura, Wright was permitted to transfer the firearms out

20   of the possession of the LAPD to a bailee of his choosing.  Defendants, by

21   operation of law and their voluntary actions, submitted themselves to the

22   jurisdiction of the Ventura County Superior Court for purposes of effecting certain

23   portions of the disposition of the plea relating to firearms in Defendants'

24   possession, and they were the direct subject of the portion of the plea that ordered

25   the divestment of the firearms from LAPD's possession for Wright's benefit.

26        16.    Despite state law to the contrary and the clearance letters from the

27   DOJ, LAPD refused to return the firearms unless Plaintiff complied with LAPD's

28   unlawful demand that Plaintiff show "proof of ownership" of the firearms – in the

1    form of written title or original sales receipts – and sought to compel Plaintiff to

2    register his firearms with DOJ as a condition of their return.  LAPD had no legal

3    authority to condition the return of Plaintiff's property to him on either review of

4    original sales receipts or that Plaintiff register those firearms.

5         17.    On well-founded information and belief, LAPD has an adopted policy

6    and practice of refusing to return firearms to their lawful owners, and in most

7    cases, of unlawfully requiring such lawful owners to register those firearms with

8    DOJ as a condition of their return.  In some instances, LAPD's adopted policy is

9    followed in such a manner that a firearms owner has to sue LAPD in court before

10   LAPD will return firearms, even though those owners had previously complied

11   with LAPD's "written" policy of returning firearms to owners upon furnishment of

12   adequate proof of ownership.   Even though Plaintiff refused to capitulate to

13   LAPD's illegal policies at first, Plaintiff later provided and continued to provide

14   the unnecessary "proof of ownership" as requested because LAPD otherwise

15   refused to return his property and he desperately wanted the fruits of a lifetime's

16   worth of collecting returned to him. As ex-military and ex-law enforcement,

17   Plaintiff took LAPD at its word when it repeatedly represented that if Plaintiff

18   capitulated to LAPD's seemingly ever-changing proof of ownership demands,

19   LAPD would return his property to him.

20        18.    When LAPD continued to refuse to return the firearms based on

21   Plaintiff's "failure" to meet LAPD's illegal requirements, Plaintiff sought and

22   received from the Ventura County Superior Court judge handling the criminal

23   matter an order that LAPD comply with the Penal Code and return the firearms in

24   conformance with its written policy.   However, LAPD intentionally and with

25   malice ignored that court order and instead punished Plaintiff and violated his

26   rights by secretly and without due process destroying the property in violation of

27   that order.

28        19.    California law restricts a law enforcement agency from disposing of a

1  firearm for 180 days after the law enforcement agency notifies the owner of the

2  firearm that the firearm is available for return.  See CAL. PENAL CODE §33875.

3  LAPD purportedly also has a policy and practice of destroying unclaimed firearms

4  in their possession only after expiration of the 180-day period beginning with

5  notice to the owner of the firearm of the intent to destroy such firearm, and only if

6  such owner has not responded to the advance notice by informing LAPD of the

7  desire to not abandon the firearm and/or the desire to maintain ownership of the

8  firearm.

9      20.    In this instance, LAPD destroyed Plaintiff's firearms in violation of

10 both California law and its own policies by not giving such notice to Plaintiff *and*

11 by destroying Plaintiff's firearms where LAPD was on ample notice that Plaintiff

12 had not abandoned the firearms and desired to maintain ownership of the firearms.

13 Plaintiff made this abundantly clear to LAPD insomuch as he had taken multiple

14 overt steps over the course of *years* to gain the return of such firearms, including

15 the notable step of hiring counsel and getting a court order against LAPD in an

16 attempt to secure the firearms' return. At the time of the destruction, Plaintiff had

17 made several written and verbal claims for the return of the firearms, and LAPD,

18 including, specifically, Tompkins, had been interacting with Plaintiff's attorneys

19 and representing that the receipts submitted by Plaintiff were in the process of

20 being reviewed by LAPD.

21     21.    LAPD first demanded – although unlawfully – that Plaintiff provide

22 sales receipts for all of his firearms that were not in DOJ's Automated Firearms

23 System ("AFS"). Plaintiff furnished such unnecessary proof. Then, months later,

24 LAPD demanded – again unlawfully – that Plaintiff provide *original* sales receipts

25 for all of his firearms that were not in AFS, of which he had previously provided

26 copies as demanded.  Even though Plaintiff furnished such unnecessary proof yet

27 again, LAPD continued to hold the firearms under the guise of a need to review the

28 original sales receipts. This unlawful qualified refusal deprived Plaintiff of the use

**8**

**FIRST AMENDED COMPLAINT**

1   of the firearms.

2       22.   Further, without notice to Plaintiff, LAPD and the Los Angeles City

3   Attorney's Office further violated state law by seeking and obtaining an unlawful

4   ex parte court order from a different court to have Plaintiff's firearms destroyed.

5   The Los Angeles City Attorney essentially sought that a Los Angeles County

6   Superior Court judge unlawfully overrule a standing order from the Ventura

7   County judge, and was able to obtain such an order by 1) hiding the fact of the

8   prior Ventura County court order from the Los Angeles County judge, 2) failing to

9   disclose to the Los Angeles County judge that the firearms were the subject of a

10  plea agreement and under the exclusive jurisdiction of the Ventura County

11  Superior Court, and 3) never giving notice of the petition they had filed in the Los

12  Angeles County Superior Court to Plaintiff or his attorneys.  Defendants engaged

13  in these ex parte acts while at the same time Tompkins continued to actively

14  represent to Plaintiff and his attorneys that LAPD was still reviewing Plaintiff's

15  ownership receipts and that they would be further contacting Plaintiff after such

16  review was completed so he could retrieve his firearms.

17      23.   Destruction of Plaintiff's firearms resulted in the permanent taking of

18  the firearms by LAPD and a permanent interference with Plaintiff's property rights

19  in the firearms.

20      24.   As a result of LAPD's destruction of Plaintiff's property, Plaintiff

21  suffered actual monetary loss in the form of the value of the firearms now that they

22  are destroyed in addition to the value of their use during the time they were

23  unlawfully seized prior to their destruction.

24      25.   Defendants' acts were not negligent or inadvertent.  They were part of

25  an intentional course of action to use a retiree's collection of curio weapons as a

26  basis for justifying Defendants' continuing receipt of substantial federal grant

27  money.  Plaintiff has not been, nor was he ever actually considered to be, a gun

28  trafficker supplying terrorists or gangs with modern-style weapons.  Yet, to tout the

**9**

**FIRST AMENDED COMPLAINT**

"hundreds" of firearms seized and destroyed from a "gun trafficker," LAPD engaged in an illegal sting to get at the collection, ignored court orders and state law in refusing to return the firearms, and then secretly and illegally got a court order as purported cover to justify surreptitiously destroying the firearms.  To continue to keep the tap of federal grant money open and flowing to their Gun Unit, Defendants conspired with one another to egregiously and flagrantly violate Plaintiff's property and due process rights.

26.     On information and belief, Defendants also engaged in the scheme to withhold the firearms, apply arbitrary and illegal proof of ownership requirements, and represent to Wright that he would eventually get the firearms returned, in order to surreptitiously continue an investigation of alleged gun trafficking, notwithstanding the effect of the plea agreement and the Ventura County Superior Court's orders that LAPD comply with the law and its own policy in returning the firearms to Wright.  Thus, on information and belief, Defendants engaged in illegal heightened proof of ownership scheme so as to further trace the origin of Wright's firearms.  Having entrapped Wright with the false but unprovable  premise that he was a gun trafficker, on information and belief, Defendants engaged in the scheme to delay return of the firearms in the hopes that they could develop evidence (supplied by Wright himself in the form of his receipts and histories of the firearms he was supplying to secure the firearms' return) that Wright had acquired one or more of the firearms in some illegal manner indicative of gun trafficking.  When, after years of Wright supplying receipts and histories for the firearms in question based on LAPD's promises the firearms would be returned, it became abundantly clear to LAPD that there was no gun trafficking occurring, on information and belief, LAPD decided at that point to end its illegal further investigation of Wright and destroy the weapons surreptitiously.  After stringing Wright along for years with false promises, and releasing firearms in dribs and drabs, Defendants decided they'd gotten all they could out of their scheme, and blithely destroyed the property

**10**

**FIRST AMENDED COMPLAINT**

1    in secret.

2                                    **PARTIES**

3         27.    Plaintiff Wayne William Wright is a citizen of the United States and a

4    resident of Simi Valley, Ventura County, California.

5         28.    Defendant Charlie Beck ("Beck") is an employee of Defendant City of

6    Los Angeles ("City"), and currently holds the title of Chief of the LAPD.  LAPD is

7    a political subdivision of the Defendant City.  Beck is one of the ultimate policy

8    makers, if not the ultimate policy maker, for LAPD, including during the time that

9    the policies and procedures promulgated and executed by him and by other

10   Defendants as described below resulted in the continued seizure and surreptitious

11   destruction of Plaintiff's property.  Beck has direct control over promulgating,

12   enforcing, and continuing the policies of his predecessors, including the unlawful

13   policies and procedures of LAPD previously utilized by other Defendants as

14   complained of herein. Beck is sued solely in his official capacity as current Chief

15   of LAPD, and monetary damages are not sought from him individually.

16        29.    Defendant Michael N. Feuer ("Feuer") is an employee of Defendant

17   City, and currently holds the title of "Los Angeles City Attorney."  He is one of the

18   ultimate policy makers, if not the ultimate policy maker, for the Office of the Los

19   Angeles City Attorney.  The Office of the City Attorney is a political subdivision

20   of the City.  Feuer has direct control over promulgating, enforcing, and continuing

21   the policies of his predecessors, including the unlawful policies and procedures of

22   the Office of the Los Angeles City Attorney previously utilized by other

23   Defendants as complained of herein. Feuer is sued solely in his official capacity as

24   Los Angeles City Attorney, and monetary damages are not sought from him

25   individually.

26        30.    Defendant Heather Aubry ("Aubry") is an employee of Defendant

27   City, and currently holds the title of "Los Angeles Deputy City Attorney."  She

28   participated in the unlawful acts alleged hereunder as part of promulgating,

**11**
**FIRST AMENDED COMPLAINT**

1    enforcing, and continuing the policies of her supervisors and her employer,
2    including the conspiracy to promulgate the unlawful policies and procedures of
3    LAPD and the Office of the Los Angeles City Attorney previously utilized by other
4    Defendants as complained of herein.  Plaintiff is informed and believes, and
5    thereupon alleges that, at all times relevant hereto, Aubry was acting in the course
6    and scope of her employment with Defendant City. Aubry is, and was at certain
7    times identified hereinbelow, acting under color of State law within the meaning of
8    42 U.S.C. §1983.

9        31.   Defendant Richard Tompkins ("Tompkins") is a Detective with
10   LAPD. On information and belief, and at all times relevant hereto, he was assigned
11   as the Officer In Charge, Gun Unit, Gang and Narcotics Division. On information
12   and belief, Tompkins ordered the continued seizure of Plaintiff's firearms after
13   LAPD no longer had cause to keep Plaintiff's property. On information and belief,
14   Tompkins then ordered the destruction of Plaintiff's firearms in LAPD's
15   possession without notice to Plaintiff. Plaintiff is informed and believes, and
16   thereupon alleges that, at all times relevant hereto, Tompkins was acting in the
17   course and scope of his employment with Defendant City. Tompkins is, and was at
18   certain times identified hereinbelow, acting under color of State law within the
19   meaning of 42 U.S.C. §1983.

20       32.   Defendant James Edwards ("Edwards") is a Detective with LAPD. On
21   information and belief, and at all times relevant hereto, he was assigned to the Gun
22   Section, Gang and Operations Support Division. On information and belief,
23   Edwards ordered the continued seizure of Plaintiff's firearms after LAPD no longer
24   had cause to keep Plaintiff's property. On information and belief, pursuant to
25   LAPD's unlawful policies and procedures, Edwards unlawfully authorized their
26   destruction.  Plaintiff is informed and believes, and thereupon alleges that, at all
27   times relevant hereto, Edwards was acting in the course and scope of his
28   employment with Defendant City. Edwards  is, and was at certain times identified

**12**
**FIRST AMENDED COMPLAINT**

1    hereinbelow, acting under color of State law within the meaning of 42 U.S.C.

2    §1983.

3         33.    Defendant City of Los Angeles is legally responsible for the overall

4    operation of LAPD and the Office of the City Attorney pursuant to official

5    decision-making channels, in policy, practices, customs, or law. City of Los

6    Angeles is, and at time relevant hereto was, a municipal corporation and political

7    subdivision of the United States, organized and existing under the laws of the State

8    of California, with its principal place of business in this judicial district.

9         34.    Plaintiff is unaware and genuinely ignorant of the true identities of

10   DOES 1 through 50. Doe Defendants are fictitiously named. The true names and

11   capacities of the Doe Defendants are unknown to Plaintiff at the time of filing of

12   this complaint. Plaintiff will amend this complaint to show the true names and

13   capacities of these Doe Defendants when the same have been ascertained. Plaintiff

14   is informed and believes, and thereupon alleges that, at all times herein mentioned,

15   Defendants fictitiously designated, and each of them, were the agents, servants,

16   employees, representatives, and/or other persons or entities acting or purporting to

17   act on Defendants' behalf or over whom Defendants exercise management and

18   control, and were acting within the course and scope of such agency and/or

19   employment. Plaintiff is informed and believes, and thereupon alleges that, each of

20   the Defendants named herein as DOES 1 through 50 were in some manner acting

21   unlawfully or otherwise responsible for the events and happenings alleged herein.

22   **FACTS SPECIFIC TO LAPD'S UNLAWFUL POLICY AND HOW SUCH**
     **POLICY RESULTED IN THE DESTRUCTION OF PLAINTIFF'S**
23   **PROPERTY**

24        35.    On August 17, 2006, Plaintiff was convicted of a misdemeanor

25   violation of California Penal Code §12280(b). Therefore, Plaintiff received

26   informal probation, one condition of which was that Plaintiff could not be in

27   possession of firearms during the probationary period.  Plaintiff however,

28   maintained ownership of his seized firearms as a result of his plea.

36. Because Plaintiff could not possess firearms during the probationary period, the parties agreed to the sale of the property through a licensed firearm dealer, the proceeds from which would go to Plaintiff. Accordingly, on August 17, 2006, the Court ordered the firearms to be "sold once proof of ownership [was] provided pursuant to Los Angeles Police Department Policy."[1]

37. In order to establish ownership of the firearms that Plaintiff sought to have transferred to a licensed firearm dealer, Plaintiff subpoenaed the relevant records that were in the possession of LAPD due to the search warrant. LAPD did not provide the documents requested in a timely manner.

**A.     The Court Ordered the Return of All Non-firearm Property**

38. On January 17, 2007, Plaintiff obtained an order from a Ventura County Superior Court releasing to Plaintiff "all documents, files, computers, electronic storage, electronic media, computer equipment, and photographs in its possession that were seized from the vehicle, residence, storage facility, warehouse, store or other location under the control of [Plaintiff]."

39. From February through October 2007, Plaintiff and his counsel repeatedly interacted with LAPD and the City Attorney's office about the return of Plaintiff's non-firearm property and the release of the Plaintiff's firearm property to a third-party FFL for storage or sale. Plaintiff's non-firearm property was not first

---

[1] In 2000, the Office of the Chief of Police issued Special Order No. 1 regarding the seizure and return of firearms, which Special Order was in effect at all times described herein and was memorialized as, inter alia, Volume 4, Section 560.40 of the LAPD Manual. That Special Order sets forth, inter alia, that "The Department must accept any reasonable proof of ownership. Registration in the name of the lawful owner shall constitute proof of ownership. However, a lack of registration does not constitute a lack of proof of ownership unless registration is required by law for possession and/or ownership of the gun. Unless there is articulable probable cause to disbelieve a sworn declaration from the claimant/owner, a sales receipt, or other proof of ownership from the claimant[sic] shall constitute proof of ownership."

1    released until January 2008, and even then, not all such property was released.

2         40.    Under another LAPD policy, in order for items in the custody of

3    LAPD's Property Division to be released, the detective or officer in charge of the

4    case has to notify the Property Division that the items can be released.  Even

5    though LAPD had been in receipt of a Ventura County Superior Court order since

6    January 2007 ordering the release of Plaintiff's non-firearm property, Defendant

7    Tompkins did not notify the Property Division to release Plaintiff's non-firearm

8    property until January 2008.  Even after this lengthy period of non-compliance, not

9    all non-firearm property was returned after the year's delay had occurred.  Some

10   property was lost or missing, and a small percentage of it had not been marked for

11   release by Detective Tompkins for arbitrary and unexplained reasons.

12        41.    With regard to the firearms in LAPD's possession, on May 1, 2007 at

13   8:18 AM, Defendant Edwards wrote and email to Plaintiff's counsel, stating that

14   the "firearms that are legally DROS'd to [Plaintiff] should be available for release

15   next week in addition to the other non-firearms related property." This should have

16   meant that all firearms recorded in AFS in Plaintiff's name would be released the

17   following week. However, as explained below, Plaintiff was not able to retrieve

18   those items until he obtained a court order in *September 2011*.

19        42.    As of October 2007, LAPD had not released Plaintiff's firearms nor

20   provided a reason under its own written policy why the firearms could not be

21   released.  One of the reasons under LAPD's written policy why a firearm will not

22   be released is if LAPD has articulable probable cause to disbelieve a sworn

23   declaration of ownership presented by the owner to LAPD.  On October 19, 2007,

24   Plaintiff's counsel wrote an email to Defendant Aubry regarding whether LAPD

25   believed there was "articulable probable cause" to disbelieve Plaintiff's sworn

26   declaration.  Plaintiff's counsel again followed up with Defendant Aubry on

27   November 5, 2007 as to whether a declaration from Plaintiff claiming ownership of

28   the property would be deemed sufficient by LAPD allow the release of the firearms

**15**

**FIRST AMENDED COMPLAINT**

1    to a dealer.

2         43.    On November 14, 2007, Deputy Los Angeles City Attorney Julie

3    Raffish – Defendant Aubry's supervisor at the time – responded to Plaintiff's

4    counsel. She stated in her letter that the Office of the Los Angeles City Attorney

5    agreed that LAPD Manual, Volume 4, Section 560.40 – including the articulable

6    probable cause standard – was applicable to Plaintiff's firearms in LAPD's

7    possession.  However, because of the "extremely large number of firearms subject

8    to this Return of Property matter," the few firearms registered to Plaintiff  would be

9    released to a Federal Firearms Licensee of Plaintiff's choice, and the firearms

10   registered to individuals other than Plaintiff would be retained by LAPD.  For the

11   hundreds of remaining firearms of Plaintiff's in LAPD's custody, the City Attorney

12   expressly stated that Plaintiff would have to provide satisfactory "proof of

13   ownership" for the remaining firearms "in accordance" with LAPD policy.

14   However, as noted the applicable LAPD written policy (LAPD Manual, Volume 4,

15   Section 560.40), which the Office of the Los Angeles City Attorney agreed was

16   applicable to this matter, did not require anything more than a sworn declaration of

17   ownership.  The proof of ownership requirement that LAPD was imposing, and the

18   City Attorney was ratifying, was an unwritten adopted policy requiring proof

19   contrary to and much higher than the proof of ownership requirements of Section

20   560.40.  Thus, as to Plaintiff's firearms, a sworn declaration in conformance with

21   Section 560.40 would not be enough for LAPD to return the firearms.  Instead,

22   Plaintiff would need to provide receipts showing how Plaintiff had acquired each

23   firearm and would be required to register each them in AFS.

24        44.    Because of inaccurate and incorrect paperwork generated by the

25   Property Division when Plaintiff's firearms were seized, Plaintiff and his counsel

26   had to negotiate with LAPD and the City Attorney to gain access to the seized

27   property for inspection, including the firearms, in order to begin to compile the

28   heightened "proof of ownership" that LAPD was demanding.  For example, LAPD

had recorded serial numbers of the firearms incorrectly, including transposing characters or leaving characters off. In some instances, they had failed to accurately or completely note necessary distinguishing information of a particular firearm, such as its model name or number. These errors made it difficult for Plaintiff to conduct his own search of his records or publicly-available records in order to furnish the proof LAPD claimed would get Plaintiff his firearms back.  So Plaintiff and his counsel negotiated and eventually convinced LAPD and the City Attorney to allow Plaintiff to inspect the firearms at the Property Division and photograph them to assist in his compiling the demanded records.

45.    More than 400 firearms were seized from Plaintiff. The vast majority of the firearms seized were either antiques, had never been used (or even taken out of their boxes until LAPD seized them), or both. The value of a collectible item depends greatly on the item retaining its original packing, paperwork, and features. The average box seized from Plaintiff contained a firearm, a clip or magazine (depending on the firearm), some kind of cleaning equipment or tools, and either a manual, receipt, or both. When Plaintiff went to retrieve his non-firearm property on January 28, 2008 from the Property Division, he was provided some of the firearm's boxes, factory packaging, and other non-firearm contents as part of the items returned to him at that time.  He noted that all of the item boxes returned to him had been stripped of their contents. In addition, the paperwork that had previously been in the boxes, which paperwork would have assisted Plaintiff in his efforts in compiling the "proof of ownership" information that LAPD required for the eventual release of Plaintiff's remaining firearms, was missing.

46.    Notwithstanding the daunting task of using incorrect or missing paperwork to attempt to comply with an onerous and illegal heightened proof of ownership policy, on July 29, 2009, Plaintiff's counsel informed Defendant Aubry that Plaintiff had completed the arduous process of categorizing the firearms to their related documents so that he could provide proof of ownership to LAPD.

**17**

**FIRST AMENDED COMPLAINT**

1   Plaintiff's counsel also informed Defendant Aubry that Defendant Edwards told

2   him that LAPD was planning to move forward with the court at some unspecified

3   point in the future to request that Plaintiff's firearms be destroyed. Plaintiff's

4   counsel expressly told Defendant Aubry that he would be objecting to Defendant

5   Edwards's proposed plan to destroy the firearms *when such a motion was made by*

6   *Defendants*.  Defendant Aubry did not confirm Defendant Edwards's contention

7   regarding a future motion, and neither Defendant Aubry nor any other City

8   Attorney ever subsequently filed a motion seeking permission from the Ventura

9   County Superior Court to destroy any of Plaintiff's firearms.

10
11
   **B.   Plaintiff's Probation Ended in August 2009 and He Then Asked to Have the Firearms Returned Directly to Him**

12      47.   Once Plaintiff was no longer on probation and no longer faced any

13   firearm restriction as a result of the misdemeanor conviction, there was no longer a

14   need to transfer the firearms to a Federal Firearms Licensee because Plaintiff was

15   not prohibited from owning and possessing firearms under state and federal law at

16   that point. To continue to attempt to comply with LAPD's unlawful proof of

17   ownership requirement, Plaintiff spent countless hours tracking down purchase

18   records and sales receipts relating to his valuable and historically-significant

19   collection of firearms that he had slowly obtained over the past 60 years. For the

20   firearms that Plaintiff could not locate sales receipts or other title documents,

21   Plaintiff provided LAPD with a sworn declaration of ownership pursuant to

22   Section 560.40 of LAPD's policy.

23      48.   Under state law, individuals seeking the return of firearms that are in

24   the custody or control of a court or law enforcement agency must submit a Law

25   Enforcement Gun Release ("LEGR") Application for a determination by DOJ as to

26   whether the individual is eligible to possess that firearm. Plaintiff received a

27   Personal Firearms Eligibility Check ("PFEC") Notification from DOJ stating that

28   he was eligible to both possess and purchase firearms as of the date the check was

**18**

**FIRST AMENDED COMPLAINT**

completed, January 28, 2010.  Then, Plaintiff sought to recover his firearms, and completed the necessary series of LEGR Applications required under California Penal Code §§33850 through 33895 in order to regain possession of his firearms from LAPD.

49.     Notwithstanding the Firearms Eligibility Clearance letters Plaintiff subsequently received, LAPD delayed the release of the firearms that were the subject of the clearance letters from the DOJ.  In May and June 2010 correspondence, Detective Edwards's proffered excuse for delaying the release of the firearms was that he hadn't completed reviewing the heightened proof of ownership paperwork Plaintiff had furnished, and Detective Edwards did not expect his review to be completed until late July 2010.   Detective Edwards's purported review of the demanded paperwork evidencing ownership was not completed in July, or August or September.  In fact, contrary to Detective Edwards's representations, he wasn't actually reviewing any of the heightened proof of ownership paperwork that had been demanded of Plaintiff.

50.     Thus, on September 28, 2010 at 12:06 PM, Defendant Edwards wrote to Plaintiff's counsel via email, proposing that Plaintiff's counsel take the *original* firearm receipts to the Police Administration Building in Los Angeles so that Defendant Edwards could go over those instead of the copies Plaintiff had previously furnished many months prior.  Seemingly, Defendant Edwards found the copies of the receipts provided by Plaintiff to be insufficient for the release of the firearms, although without basis in any state or federal law for that contention. In his email, Defendant Edwards stated that it would take a couple of days to go through all of the receipts because of the large quantity. However, it had taken Defendant Edwards significantly more than a couple days already to review the copies previously provided.  In hindsight, it is now clear that Detective Edwards's was simply stringing Plaintiff along, changing the conditions of the heightened proof of ownership that LAPD purportedly demanded not for the purpose of

**19**

1  determining Plaintiff's ownership in the firearms, but rather to indefinitely delay

2  return of the firearms.

3      51.    After attempts by Plaintiff's counsel to follow up with Defendant

4  Edwards, Defendant Aubry wrote to Plaintiff's counsel via email on November 16,

5  2010 at 3:58 PM stating that Defendant Edwards was on vacation for another three

6  weeks, that Plaintiff's counsel should contact Defendant Tompkins regarding

7  Defendant Tompkins's availability to review the firearms documentation.  Blithely,

8  Defendant Aubrey wrote that "[i]t is essential that the documentation, including

9  any declaration by Mr. Wright, be reviewed before this matter can move forward."

10  At this point, LAPD had been in possession of such documentation, including the

11  declaration, for almost a year.

12      **C.**    **Plaintiff Continued to Seek the Firearms' Return and LAPD**

13  **Continued to Claim They Would Return Them Once They'd Reviewed Plaintiff's "Proof" And Deemed It Sufficient**

14      52.    In September 2011, Plaintiff had grown frustrated with LAPD's

15  delays, and therefore filed a motion with the Ventura County Superior Court

16  seeking the release of his property directly to him. At that point, after seven years,

17  Defendants had more than ample time to conduct any independent inquiries of the

18  subject firearms as well as ample time to review the voluminous "proof of

19  ownership" provided by Plaintiff.  Defendants were only willing to return the

20  firearms for which Plaintiff had a Firearms Eligibility Clearance letter from DOJ

21  indicating that "[t]his firearm is recorded in AFS and the firearm is recorded in the

22  name of the individual who is seeking its return." As a result, the Honorable Judge

23  Ryan Wright – who'd presided over Plaintiff's criminal matter and ratified the plea

24  agreement between Plaintiff and Ventura County involving the firearms –

25  expressly ordered the release by LAPD of 26 specific firearms to Plaintiff.   As to

26  the remainder of the firearms still yet unreleased, Judge Wright asked the parties to

27  try to further informally work it out and to come back to him if additional orders

28  were needed.  Judge Wright never ordered the firearms destroyed nor was he ever

**FIRST AMENDED COMPLAINT**

1   asked by Defendants to consider allowing the firearms in LAPD's custody to be

2   destroyed.  Neither during the hearing nor in any of the briefing on Plaintiff's

3   motion did the City Attorney or LAPD represent that they were contemplating

4   destroying any of Plaintiff's firearms or challenge Judge Wright's jurisdiction over

5   the issue.

6           53.   On March 13, 2012, Plaintiff picked up from the Property Division the

7   24 handguns and two long guns that were the subject of the Ventura County

8   Court's enforcement order.  It was apparent that each of the firearms had been fired

9   while in LAPD's custody – some extensively – and they had not been cleaned or

10   oiled since their seizure approximately eight years earlier.  Three of the handguns

11   had suffered significant damage. There were scratches and markings on the

12   wooden grips on a number of the recovered handguns that had been in the custody

13   of the Property Division of LAPD for nearly eight years, and several of the

14   firearms were missing sights and/or bolts.

15           54.   In addition to the release of the 26 firearms that had been specifically

16   identified in the court order, during this time period, LAPD began releasing a few

17   additional firearms at a time, again representing that they were "working their way"

18   through Plaintiff's proof of ownership paperwork, and the releases were the result

19   of LAPD finding such paperwork satisfactory.

20           55.   In late March 2012, Plaintiff's counsel contacted Defendant Tompkins

21   and Defendant Aubry regarding a loss of Plaintiff's property.  The loss had resulted

22   from firearms in LAPD's possession, and for which Plaintiff had a receipt, simply

23   "disappearing" from LAPD's Property Division.  Plaintiff had called the Property

24   Division of LAPD to arrange a time to pick up the property of his that the parties

25   had agreed to have released. He was told, however, that those property numbers no

26   longer existed.  Nonetheless, approximately two weeks prior, while he was still

27   waiting for approval of his LEGR Applications, Plaintiff had been told that his

28   property was still there. Additionally, Plaintiff had not received any information

**21**

**FIRST AMENDED COMPLAINT**

from LAPD regarding the other firearms that he sought to have returned. In response, in an email sent on March 28, 2012 at 11:17 AM, Defendant Tompkins vaguely told Plaintiff's counsel that LAPD was "making progress" in Plaintiff's case and that he would contact Plaintiff's counsel within the next couple of weeks.

56.     In November 2012, and on multiple occasions before then, Defendant Tompkins specifically told Plaintiff's counsel that LAPD was "working their way" through the receipts. In November 2012, Defendant Tompkins said that they would attempt to finish the work by the end of the following week.

57.     Up through 2013, LAPD returned some of Plaintiff's firearms a few firearms at a time, with LAPD detectives declaring that Plaintiff had met some arbitrary and undefined threshold with regard to proving ownership of those particular firearms that were returned.  Based on this limited success and Defendants' continuing representations that Plaintiff would retrieve his property if he continued his attempts to comply with LAPD's illegal proof of ownership policy, Plaintiff continued to provide receipts and other proof of ownership in lieu of, e.g., seeking additional orders from the Ventura County Superior Court enforcing the terms of the plea agreement.

58.     Although, as noted above, Defendant Edwards initially communicated in 2007 that Defendants might at some point in the future seek an order from the Ventura County Superior Court for permission to destroy the firearms, Defendants never again mentioned the threat in the subsequent seven years of negotiations with Plaintiff and counsel.  Thereafter they also implicitly abandoned the one-time threat, inter alia, by representing to Plaintiff that if he supplied sufficient proof of ownership, they would return his firearms, by then actually returning a few of Plaintiffs firearms to him up through 2013 when they had deemed he had provided adequate proof, and by their actions and representations at subsequent hearings on motions brought by Plaintiff in the Ventura County Superior Court.

**FIRST AMENDED COMPLAINT**

**D.   LAPD and Their Agents Continued to Deny Plaintiff's Requests to Retrieve Property Based on LAPD's Improper Attempt to Impose Unfounded Conditions on Plaintiff, And Despite DOJ's Repeated Findings that Plaintiff was Eligible to Regain Firearms**

59.   At the end of October 2012, Plaintiff's counsel contacted Defendant Tompkins regarding the fact that Plaintiff was still having an issue with LAPD releasing the last five of the handguns from the previous submitted list. On November 1, 2012 at 11:03AM, Defendant Tompkins wrote to Plaintiff's counsel via email stating that he would "take care of it."

60.   Over the years, despite DOJ's repeated findings that Plaintiff was eligible to regain possession of his firearms and that the firearms were eligible to be returned, LAPD denied Plaintiff's repeated requests to pick up his property, while consistently indicating that if Plaintiff played by LAPD's invalid rules, he could get then get his property back.  LAPD initially justified its refusal to return the property on the erroneous and legally unsupportable grounds that many firearms at issue were not recorded in AFS.

61.   There is no requirement that any long gun purchased prior to January 1, 2014 be recorded in AFS. See e.g., CAL. PENAL CODE §§11106 (2013), 28160, 28165.  Other than the temporary entry required under California Penal Code §11108, there is no requirement under federal or California law that lawfully-owned handguns that were purchased prior to the implementation of AFS be retroactively and permanently recorded in AFS.  Also, California Evidence Code §637 creates a presumption that a thing possessed by a person is owned by him. Thus, the mere fact of Plaintiff's prior undisputed physical possession of those firearms created a legal presumption of Plaintiff's ownership that LAPD was obligated to abide by in further handling the return of the firearms to Plaintiff. LAPD's *written* policy – Section 560.40 – by allowing proof of ownership to be satisfied with a simple declaration under oath implicitly recognized this state law presumption, and obligated LAPD to return Plaintiff's firearms.  LAPD, in

**23**
**FIRST AMENDED COMPLAINT**

1 imposing the illegal adopted policy of heightened proof of ownership as to Plaintiff

2 and others, ignored this presumption and its own policy.

3      62.    As noted Section 560.40 of the LAPD Manual states that only if the

4 LAPD has articulable probable cause to not believe a firearms' owners sworn

5 declaration of ownership will LAPD refuse to return a firearm.  At no time did

6 LAPD identify any articulable probable cause to disbelieve that Plaintiff was the

7 lawful owner of the firearms seized from him.  On information and belief, they

8 were aware of no articulable probable cause to disbelieve Plaintiff was the lawful

9 owner, and instead continued to withhold his firearms as a pretext for further

10 investigation into their unfounded allegations of "gun trafficking" and to keep the

11 firearms long enough to justify the firearms' eventual destruction.

12      63.    Despite repeated affirmations in Firearms Eligibility Clearance letters

13 from DOJ in response to Plaintiff's LEGR Applications, LAPD still refused to

14 return the firearms again exhorting Plaintiff to comply with LAPD's unlawful

15 heightened proof of ownership requirements, or, alternatively in certain instances,

16 claiming that they still hadn't reviewed Plaintiff's proof of ownership paperwork.

17 LEGR responses are only valid for 30 days after issuance, and each time after

18 Plaintiff submitted a LEGR Application and LAPD unlawfully refused to return

19 Plaintiff's firearms, the Firearms Eligibility Clearance would then expire.  Each

20 time Plaintiff applied for LEGR Applications, he had to pay processing fees to

21 DOJ, and each time thereafter that Defendants unlawfully delayed in releasing the

22 firearms, by claiming that Defendants Tompkins or Edwards still hadn't reviewed

23 Plaintiff's paperwork  (or some other legally dubious explanation), the Firearms

24 Eligibility Clearance letters expired and the processing fees paid by Plaintiff were

25 essentially wasted.

26

27 **E.    The Office of the City Attorney Applied for an Illegal Ex Parte Court Order to Destroy the Firearms**

28      64.    While LAPD and its employees continued to represent to Plaintiff and

1    his counsel that the firearms would be returned once the review of the receipts

2    provided by Plaintiff was completed, the Office of the City Attorney, through

3    Defendant Aubry, and DOES 1 through 50, and each of them, applied ex parte in

4    December 2013 for an order allowing destruction of almost all of Plaintiff's

5    firearms still in LAPD's possession.  There was no formal notice of such motion

6    given, and neither the implicit or express representation of Defendants for the six

7    years prior had given Plaintiff actual or constructive notice that Defendants were

8    even contemplating such a motion.

9         65.    Despite the matter of the seizure and return of the firearms having

10   been previously handled by the Ventura County Superior Court, Defendant Aubry,

11   DOES 1 through 50, and each of them, inexplicably applied to the Los Angeles

12   County Superior Court for the property destruction order.  Neither Defendant

13   Aubry nor any Doe Defendant ever informed the Los Angeles County Superior

14   Court of the prior order of Judge Ryan Wright of the Ventura County Superior

15   Court regarding the return of Plaintiff's property, or of the fact that the disposition

16   of the firearms had been the subject of a plea agreement entered in the Ventura

17   County Superior Court.  On information and belief, Defendant Aubry and the Doe

18   Defendants, as part of the application, misrepresented to the Los Angeles County

19   Superior Court that Defendants had complied with their state law obligations

20   regarding 180-day notice to Plaintiff before seeking to destroy the firearms, and

21   further misrepresented that Plaintiff had abandoned the firearms in LAPD's

22   custody.  By applying ex parte to a different court, by omitting key information in

23   the Los Angeles County Superior Court application about Judge Wright's previous

24   handling of and orders regarding the disposition and return of Plaintiff's firearms

25   and other property, by rebuking the jurisdiction of the Ventura County Superior

26   Court to which Defendants previously submitted, and by lying to the Los Angeles

27   County Superior Court about proper notice and abandonment of the firearms,

28   Defendant Aubry and the Defendant Does violated state law regarding

**FIRST AMENDED COMPLAINT**

1    misrepresenting information to courts, regarding the prohibition against seeking

2    contrary orders from different Superior Court judges, and violated ethical canons

3    regarding the conduct of members of the California State Bar.

4        66.    Although Defendant Aubry had repeatedly interacted with Plaintiff's

5    counsel regarding the return of the firearms, and at the time she and the Doe

6    Defendants sought the ex parte application was fully aware that Plaintiff was

7    represented by counsel and actively seeking return of his property, Defendant

8    Aubry and the Doe Defendants never gave notice of their office's ex parte

9    application for destruction of the firearms to Plaintiff or his counsel.  Defendant

10   Aubry and the Doe Defendants also never gave notice of the Los Angeles County

11   Superior Court's subsequent entry of the order or otherwise allowed Plaintiff or his

12   counsel any opportunity to oppose the application and prevent the destruction of

13   the property.  On information and belief, Defendant Aubry and the Doe Defendants

14   intentionally failed to provide such notice so as to prevent Plaintiff from exercising

15   his due process right to oppose the application, seek his own injunctive orders from

16   the court with proper jurisdiction, and preserve his property.

17       67.    On information and belief, Defendant Feuer was aware of and

18   approved Aubry's use of an unlawful ex parte application to the Los Angeles

19   County Superior Court to effect the destruction of the firearms.  On information

20   and belief, Defendant Feuer was aware of and approved Aubry's and the Doe

21   Defendants' tactic of seeking to "overturn" Judge Wright's prior order by seeking a

22   contrary order from the Los Angeles County Superior Court to effect the

23   destruction of the firearms. On information and belief, Defendant Feuer was aware

24   of and approved Aubry's and the Doe Defendants' tactic of failing to provide

25   notice of the application or order to Plaintiff or his counsel.  On information and

26   belief, Defendant Feuer approved of Aubry's and the Doe Defendants' tactics for

27   the purpose of preventing Plaintiff from exercising his due process right to oppose

28   the application and preserve his property.  On information and belief, Feuer

**FIRST AMENDED COMPLAINT**

1    intended for the firearms to be destroyed to assist the LAPD in its efforts to justify

2    its federal anti-terrorism funding and to assist Feuer in his political profile as

3    advocating for the reduction of citizen access to firearms.

4              68.    The actions of Defendant Aubry were not the actions of a "rogue"

5    deputy city attorney, rather they were part of a carefully coordinated plan between

6    the Gun Unit and the City Attorney's Office to justify destruction of firearms in

7    furtherance of LAPD's adopted policy, to financially benefit LAPD and politically

8    benefit LAPD, the City Attorney's Office, Beck, and Feuer.  Evidence that such

9    actions were intentional and ratified as policies of both government agencies

10   includes, inter alia, LAPD contacting and coordinating with the City Attorney's

11   Office to proffer excuses to Plaintiff and his counsel why the firearms were delayed

12   in being returned and why LAPD's unwritten adopted heightened "proof of

13   ownership" was valid and legal, where such excuses and explanations were made

14   and parroted by Defendants Edwards, Tompkins, and Aubry over a course of years

15   as well by supervising attorneys within the City Attorney's Office.  Such

16   coordination of actions as part of fulfilling a policy of both agencies to

17   permanently deny and destroy Plaintiff's firearms is further evidenced in the City

18   Attorney filing briefs and making arguments in coordination with the LAPD and on

19   behalf of the Gun Unit in filings with the Ventura County Superior Court and again

20   in the surreptitious ex parte filing with the Los Angeles County Superior Court.

21   Such filings by the City Attorney's Office  included arguments parroting the

22   unlawful policy of LAPD and led to result of the property being actually destroyed.

23   On information and belief, such coordination with the LAPD to facilitate the

24   destruction of the firearms, and the submission of the filings by Defendant Aubry

25   making legal arguments supporting the delay in return and subsequent destruction

26   of the firearms, was done by Defendant Aubry at the direction of and with the

27   approval and permission of Defendant Aubry's supervisors, for the express purpose

28   of causing the destruction of Plaintiff's firearms without adequate compensation or

**FIRST AMENDED COMPLAINT**

1    process.

2    **F.    LAPD Used and Damaged the Firearms While They Were in**
3    **      LAPD's Custody**

4    69.    LAPD's official written policy is that property stored with its Property

5    Division, such as firearms, are to be carefully guarded, maintained in the condition

6    in which the property was found at the time of its seizure or surrender to LAPD,

7    and not "checked out" or otherwise taken from the custody of the Property

8    Division.  The seizure or surrender of property to LAPD, such as Plaintiff's

9    property, creates an equitable bailment, for which the LAPD Property Division is

10   obligated to exercise a duty of care to the property owner in maintaining and

11   storing the seized or surrendered property.

12   70.    On information and belief, LAPD's Property Division does not

13   faithfully catalog and maintain property seized from individuals or surrendered to

14   LAPD.  On information and belief, property has been known to go missing or be

15   used by LAPD officers and staff while ostensibly in LAPD's custody and care.

16   71.    As noted above, after LAPD seized Plaintiff's property, several times

17   prior to the unlawful destruction of Plaintiff's property, Plaintiff went to the

18   Property Division and inspected and documented the condition of his property,

19   including photographing the property.  The property, including the firearms, was in

20   many instances in a different condition than it had been in when it was seized.

21   Plaintiff noted and documented that firearms that had been new in the box and

22   previously unfired prior to seizure showed signs of use and wear after having

23   ostensibly in storage with the Property Division.  Firearms accessories and other

24   items appurtenant to the firearms had been taken and were no longer in LAPD's

25   custody.

26   72.    As evidence of such misuse of property in their custody, on July 24,

27   2015, LAPD released a Smith & Wesson Model 36 revolver to Plaintiff – one of

28   the few remaining firearms of Plaintiff's in their custody that hadn't been

**28**
**FIRST AMENDED COMPLAINT**

1    surreptitiously destroyed.  When seized by LAPD in 2004, this firearm was brand

2    new in the box, and in mint condition having been purchased by Plaintiff at a

3    police auction as unused surplus and kept in storage.  When Plaintiff retrieved the

4    firearm from the Property Division on July 24th, the firearm had been used, fired,

5    and extensively damaged.  It evidenced deep score marks showing significant use

6    while in the Property Division's custody.  The frame of the firearm was rusted in

7    several places, and parts of the frame had been painted over.  The wood grip on the

8    firearm had been damaged in several places, and gunpowder residue was evident

9    on and near the cylinder and end of the barrel.

10       73.    On information and belief, officers and staff with the LAPD, including

11   the Doe Defendants, removed some of Plaintiff's firearms and other property from

12   the custody of the Property Division while the property was under LAPD's

13   custody, bailment, and care.  On information and belief, some of the property,

14   including the firearms were taken from LAPD's custody by officers and staff of

15   LAPD, including the Doe Defendants, and never returned prior to LAPD

16   destroying the property.

17       **G.    LAPD Destroyed the Firearms and Related Property While**
          **Claiming They Were Still Reviewing Plaintiff's Proof of**
18        **Ownership And Would Eventually Return The Firearms**

19       74.    LAPD Manual, Volume 4, Section 552.10 requires that the

20   Commanding Officer, Property Division, make all necessary arrangements upon

21   determining that a firearms destruction should be scheduled.

22       75.    California law restricts a law enforcement agency from disposing of

23   firearms for 180 days after the agency notifies the owner that the firearms are

24   available for return. Neither Plaintiff nor Plaintiff's counsel received any notice

25   that the firearms were available for release. Neither Plaintiff nor Plaintiff's counsel

26   received any notice of the December 2013 order. Plaintiff was still obtaining

27   firearms from the Property Division of LAPD through early 2013 after LAPD

28   cleared five more firearms based on information provided to LAPD almost one

**FIRST AMENDED COMPLAINT**

1    year before.  Detective Tompkins was still representing to Plaintiff and his counsel

2    in 2013 and 2014 that documentation was being reviewed and that the firearms

3    would be returned to Plaintiff.

4         76.    As requested and required by LAPD for the release and return of

5    Plaintiff's property, Plaintiff and Plaintiff's counsel supplied LAPD with

6    documentation concerning the ownership of Plaintiff's property that was never

7    released. First, a sworn declaration in conformance with Section 560.40 was

8    provided to LAPD for review.  Then copies of all ownership documentation for

9    their heightened "proof of ownership" standard were provided to LAPD for review.

10   Then, when LAPD arbitrarily deemed the copies insufficient because they were

11   copies, originals of all documentation were provided to LAPD for review. Once all

12   purportedly necessary documentation was supplied, LAPD was supposed to

13   investigate the records so that Plaintiff's ownership could be confirmed and the

14   property could be returned. On information and belief, contrary to continued

15   assurances by LAPD to Plaintiff and Plaintiff's counsel, LAPD never researched

16   the ownership of Plaintiff's property, and made representations that they were

17   reviewing and investigating the records provided simply as an excuse to delay the

18   return of the firearms.

19        77.    After stymying for at least eight years Plaintiff's efforts to regain his

20   property, including blatantly disregarding state law and LAPD's own written

21   policies, LAPD unilaterally destroyed nearly all of the remaining firearms.  On

22   information and belief, such destruction was performed by a third party at the

23   direction of LAPD.  LAPD did not give any notice or warning to Plaintiff that it

24   was going to destroy the firearms.

25        78.    Because LAPD surreptitiously destroyed the firearms, without

26   informing either Plaintiff or Plaintiff's counsel, Plaintiff was reasonably unaware

27   that such firearms had been destroyed until Plaintiff's counsel contacted the

28   Property Division of LAPD on July 25, 2014. It was only after Plaintiff's counsel

**FIRST AMENDED COMPLAINT**

1  contacted LAPD, that LAPD revealed, and Plaintiff first learned, that LAPD had

2  destroyed the firearms.

3       79.    Plaintiff's counsel spoke with Defendant Tompkins on August 4,

4  2014. During that conversation, Defendant Tompkins confirmed that all but a few

5  pieces of Plaintiff's property had been destroyed. LAPD never sent the notice

6  required by California Penal Code and LAPD's own policy prior to destruction of

7  Plaintiff's property. Thus, contrary to continued assurances by LAPD to Plaintiff

8  and Plaintiff's counsel, LAPD destroyed the firearms without notification.

9       80.    Defendant Aubry responded to correspondence from Plaintiff's

10 counsel and confirmed that the City Attorney had sought and received a court order

11 from Judge Melvin Sandvig of the Los Angeles County Superior Court in

12 December 2013 to have the firearms destroyed. She stated that in addition to the 26

13 firearms that were identified in Ventura County Judge Wright's September 2011

14 order and released to Plaintiff, LAPD had also determined that one additional

15 firearm was appropriate for release based on research establishing Plaintiff's

16 ownership. Plaintiff was purportedly notified of the availability of that firearm for

17 release in late 2013.

18      81.    On information and belief, following Defendant Tompkins's

19 communications with Plaintiff's counsel on July 25, 2014, Defendants Tompkins,

20 Edwards, Aubry, and Doe Defendants then conspired to cover up evidence of their

21 illegal destruction of the firearms without notice to Plaintiff.  On information and

22 belief, such cover-up included, inter alia, withholding from Plaintiff and his

23 attorneys any of the correspondence, applications, or documents generated

24 appurtenant to Defendants obtaining the ex parte court order authorizing the

25 firearms' destruction.

26      82.    On information and belief, Defendant Beck was aware of and

27 approved of the use of an unlawful ex parte order from the Los Angeles County

28 Superior Court to effect the destruction of the firearms.  On information and belief,

**FIRST AMENDED COMPLAINT**

1  Defendant Beck was aware of and approved of Tompkins's, Edwards's, Aubry's,

2  and the Doe Defendants' tactic of refusing to allow return of the firearms and the

3  pretextual claim that "proof of ownership" needed to be furnished as a prerequisite

4  to the firearms' return.  On information and belief, Defendant Beck was aware of

5  and approved of Tompkins's, Edwards's, Aubry's, and the Doe Defendants' tactic

6  of delaying and misrepresenting to Plaintiff and his counsel that the firearms would

7  be returned after the proof of ownership documents submitted by Plaintiff had been

8  reviewed.  On information and belief, Defendant Beck was aware of and approved

9  of use of the delay tactics of Tompkins, Edwards, Aubry, and the Doe Defendants

10  to allow Aubry and the Doe Defendants to surreptitiously seek and secure a court

11  order for the firearms' destruction.  On information and belief, Beck intended for

12  the firearms to be destroyed to assist the LAPD in its efforts to justify its federal

13  anti-terrorism funding and to assist Beck in his political profile as advocating for

14  the reduction of citizen access to firearms.  On further information and belief, Beck

15  intended for the firearms to be destroyed to assist the LAPD in covering up

16  malfeasance and theft within the Property Division.

17      83.    The actions of Defendants Tompkins and Edwards in conspiring to

18  cause and actually causing the destruction of Plaintiff's property without notice to

19  Plaintiff and in violation of LAPD's contrary written policy and state law, were not

20  the actions of "rogue" detectives, but were in furtherance of LAPD's adopted

21  unlawful policy and done pursuant to such policy.  That such actions were in

22  accord with LAPD is evidenced by, inter alia, Defendants Tompkins and Edwards

23  seeking and receiving the continuing assistance of the City Attorney's office to

24  defend and execute on the policy, including having the City Attorney's office argue

25  in filings and at hearings heard by the Ventura County Superior Court that LAPD's

26  heightened proof of ownership policy, and the delay the application of such policy

27  to Plaintiff's property caused, was a lawful policy of the LAPD and was being

28  properly applied to Plaintiff.  Further evidence that such actions by Defendants

**FIRST AMENDED COMPLAINT**

1  Tompkins and Edwards were done pursuant to LAPD policy is inherent in

2  Defendants Tompkins and Edwards seeking the assistance of and receiving

3  assistance from the City Attorney's Office, through Defendant Aubry, to obtain a

4  Los Angeles County Superior Court order purportedly justifying the destruction of

5  the firearms.  On information and belief, but for Defendants Tompkins and

6  Edwards asking the City Attorney's Office to assist them in destroying Plaintiff's

7  property pursuant to an adopted LAPD policy, and the City Attorney's Office

8  recognizing and agreeing that such policy was an LAPD policy, the City Attorney's

9  Office would not have assisted LAPD in arguing for the legality of the policy or in

10  seeking the ex parte Los Angeles County Superior Court destruction order.  Had

11  Defendants Tompkins and Edwards not been acting in furtherance of an LAPD

12  policy, Defendant Aubry and the City Attorney's Office would have declined to

13  assist them in their efforts.

14       84.    The total value of the destroyed property is $707,950. LAPD

15  unlawfully seized and then destroyed 364 firearms and other related property.  A

16  list of the property destroyed by Defendants, for which damages are sought

17  hereunder, is attached hereto as Exhibit "2," and is incorporated herein by

18  reference.

19       85.    On information and belief, LAPD destroyed Plaintiff's property not

20  only for the reasons set forth above and below, but also to effect a cover-up of

21  malfeasance within its own Property Division, i.e., the use of, damage to, and theft

22  of certain of Plaintiff's property by LAPD officers and staff, including Doe

23  Defendants, in violation of LAPD's written policies and state law bailment

24  obligations.  On information and belief, some of the property seized from Plaintiff

25  is still within the possession or control of Defendants or their agents,

26  notwithstanding that Defendants have represented that such items are no longer in

27  Defendants' possession or are missing.

28       86.    Plaintiff timely presented a claim for reimbursement to the City of Los

**33**

**FIRST AMENDED COMPLAINT**

Angeles pursuant to California Government Code §910, et seq. on January 2, 2015. Defendants rejected the claim.  Within the limitations period thereafter applicable to the state law claims identified below, Plaintiff has brought this suit.

87.    The fair market rental value of the firearms from the time they were unlawfully seized up through the date of their destruction was $4,100,000.00.  On information and belief, the diminution in the fair market value of the firearms and property that were eventually returned to Plaintiff, where such diminution in value was the result of mishandling and abuse by LAPD while such firearms and property were in Defendants' custody, is no less than $50,000.00.  On information and belief, the amount of fees paid by Plaintiff to file for LEGR Applications for firearms whose return were unlawfully delayed or prevented as a result of Defendants' acts and omissions described above, is no less that $5,000.00.

/ / /

/ / /

/ / /

## FIRST CLAIM FOR RELIEF:

### Violation of Civil Rights Under Color Of Law

### (42 U.S.C. §1983)

### Against Defendants BECK, FEUER, AUBRY, TOMPKINS, EDWARDS, CITY OF LOS ANGELES, and DOES 1 through 50

88.    Plaintiff fully reincorporates Paragraphs 1-88, supra, as though fully alleged hereinafter.

89.    Actions taken by state governmental officials in carrying out their official responsibilities, even if contrary to state law, are nevertheless actions taken "under color of law." Monroe v. Pape, 365 U.S. 167, 186-87 (1961) (overruled on other grounds by Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978)).  At all times relevant hereto, Defendants acted "under color of law" within the meaning of 42 U.S.C. §1983.

**FIRST AMENDED COMPLAINT**

90.     As set forth hereinabove, and for all times relevant to this litigation, City of Los Angeles, Beck, Feuer, and DOES 26 through 50 adopted a policy, and implemented and communicated that policy to subordinates, including Beck, Feuer, Aubry, Tompkins, Edwards, and DOES 1 through 25, that in instances where LAPD takes possession of an individual's firearms, including through seizure, LAPD will give 180 days notice to the owner of the firearms before it will destroy such firearms in its possession.  City of Los Angeles, Beck, Feuer, and DOES 26 through 50, appurtenant to this adopted policy, adopted a further policy that LAPD will not destroy the firearms if, within 180 days of giving notice to the owner of the firearms regarding the intended destruction, the owner informs LAPD that the owner has not abandoned the firearms and wishes to regain possession from LAPD, or otherwise wishes to transfer the firearms to another owner.  These adopted policies are lawful in that they are consistent with California law regarding the obligations of Law Enforcement Agencies when those agencies have seized or otherwise possess a citizen's firearms.

91.     City of Los Angeles, Beck, Feuer, and DOES 26 through 50 adopted a policy, and implemented and communicated that policy to subordinates, that in instances where LAPD has possession of an individual's firearms, and the owner is eligible to retake possession of such firearms because the owner is no longer suffering a legal infirmity that would prevent the owner from possessing firearms, LAPD requires the owner to submit a LEGR Application to DOJ as a condition of the return of such firearms.  This policy, in and of itself, is also lawful in that it is consistent with California law regarding the obligations of Law Enforcement Agencies when those agencies are returning a citizen's firearms.

92.     City of Los Angeles, Beck, Feuer, and DOES 26 through 50 adopted, implemented, and communicated a policy to subordinates, in the form of Special Order No. 1 and later LAPD Manual, Volume 4, Section 560.40, which policy required return of firearms to their owners unless the firearms were illegal to

**FIRST AMENDED COMPLAINT**

1  possess or if the LAPD had articulable probable cause to disbelieve a sworn

2  declaration of ownership from the owner.

3    93.    Contrary to the above written policy about the return of firearms,  City

4  of Los Angeles, Beck, Feuer, and DOES 26 through 50 further adopted an

5  unwritten policy that LAPD will not return firearms to their owner until and unless

6  such owner can provide proof of ownership in the form of written title or a sales

7  receipt.  Alternatively, in the absence of the owner furnishing written title or a sales

8  receipt, the adopted policy allows the owner to redeem firearms only if the owner

9  "voluntarily registers" the firearm in DOJ's AFS.  Such registration is not required

10  under California law, or under LAPD's prior written policies (including Special

11  Order No. 1), and this unwritten policy of LAPD to withhold possession of

12  firearms in order to force an owner to register those firearms is illegal.  Proof that

13  such an illegal policy to withhold return of property in violation of other policy and

14  state law was an adopted by LAPD and not the act of rogue detectives is evidenced

15  by, inter alia, LAPD requesting and receiving the assistance of the City Attorney's

16  Office to negotiate with Wright and his attorneys regarding the conditions under

17  which the firearms would be returned, including the City Attorney's Office

18  explaining the illegal "policy" to Wright and his attorneys in negotiations for return

19  of the firearms, and the Los Angeles City Attorney appearing at hearings in the

20  Ventura County Superior Court to explain that the reason the firearms were

21  delayed in being returned to Wright was because LAPD was enforcing its alleged

22  heightened proof of ownership policy.

23    94.    Defendants, and each of them, were aware that their unwritten policy

24  of withholding the return of firearms to owners was illegal in that, inter alia, it was

25  well-settled law that such a policy was illegal.  The aforementioned Special Order

26  No. 1, which later became, inter alia, LAPD Manual, Volume 4, Section 560.40,

27  was enacted as an express condition of the settlement of a prior federal lawsuit

28  challenging LAPD's unlawful firearms retention policies, <u>Sarah McGee, et al. v.</u>

**FIRST AMENDED COMPLAINT**

City of Los Angeles, et al., U.S.D.C. C.D. Cal. Case No. 98-2043GHK.  In that lawsuit, Defendants City of Los Angeles and its then-Chief Bernard Parks were sued for seizing and failing to return firearms to Plaintiffs and for having a policy that failed to follow state law regarding the procedure for the return of seized firearms.  Defendant City of Los Angeles resultantly enacted Special Order No. 1 to bring its firearms retention policy into conformance with state law and the constitutional protections necessary for the seizure of personal property. Thus, although the City was well aware and previously acknowledged that it must follow its written policies as set forth in LAPD Manual, Volume 4, Section 560.40 and Special Order No. 1 in order to comply with state law and to not violate Plaintiff's constitutional rights with regard to seizure of his firearms, in promulgating the unwritten "proof of ownership" policy in contravention to the written policies, and then applying that policy to refuse to return and then ultimately justify destroying Plaintiff's firearms, Defendants acted with full knowledge and awareness of the illegality of their actions.

95.     Despite the fact that 1) California law recognizes that possession creates a rebuttable presumption of ownership in non-titled property, 2) California law does not require registration of firearms by owners as a condition of their return by law enforcement agencies, 3) LAPD itself has policies recognizing the right of return of non-titled personal property – including firearms –  to its owners without written title or proof of purchase being presented, and 4) the custom and practice in California is that most owners of firearms will not have written title or a sales receipt for their firearms to present to a law enforcement agency, LAPD nonetheless implemented and applied to Plaintiff its illegal policy requiring proof of ownership via written title or sales receipt, or, alternatively, registration, as a condition of the return of lawfully-owned firearms to owners whose ownership is not in dispute.

96.     As a result of LAPD's unlawful policy, Plaintiff lost the use of his

**FIRST AMENDED COMPLAINT**

1   firearms for a period from the time of their destruction back through the applicable

2   limitations period.  Plaintiff also lost the use and possession of his firearms

3   permanently when they were maliciously destroyed.

**Count 1: Violation of Fourth Amendment**

5       97.   Plaintiff fully reincorporates Paragraphs 1-87, and 90-96, supra, as

6   though fully alleged hereinafter.

7       98.   The Fourth Amendment to the United States Constitution provides in

8   part that "[t]he right of the people to be secure in their persons, houses, papers, and

9   effects, against unreasonable searches and seizures, shall not be violated."

10      99.   The Plaintiff seeks a remedy against Defendants City of Los Angeles,

11  Beck, Feuer, Aubry, Tompkins, Edwards, and DOES 1 through 50 for the wrongful

12  seizure of Plaintiff's personal property.  Even though the seizure of Plaintiff's

13  firearms in 2004 was pursuant to a lawful search warrant, when Plaintiff became

14  eligible as a matter of law to sell or possess the firearms again, provided proof of

15  ownership pursuant to LAPD policy and state law, demanded the release or return

16  of the firearms, and was unlawfully denied by LAPD, the lawful seizure transmuted

17  into an unlawful seizure.

18      100.   On information and belief, the execution of the unlawful policy that

19  resulted in the destruction of Plaintiff's firearms was done with the intent and

20  knowledge that such policy violated established law.  Such intent and knowledge is

21  inferred from, inter alia, the receipt by City of Los Angeles, Beck, Feuer, DOES 26

22  through 50, and policy makers of other California law enforcement agencies, prior

23  to the seizure and destruction of Plaintiff's firearms, of an opinion letter by the

24  California Attorney General which acknowledges and instructs law enforcement

25  agencies that owners of some handguns and almost all long guns will lack proof of

26  ownership in the form of written title, a sales receipt, or registration in AFS.  Such

27  intent and knowledge is further inferred from, inter alia, the unlawful continued

28  seizure and retention policy being promulgated and adopted by Defendants in

**FIRST AMENDED COMPLAINT**

1   direct contravention of Defendants' own written policies set forth in Special Order

2   No. 1 and Volume 4, Section 560.40 of the LAPD Manual, which written policies

3   were the direct result of the prior <u>McGee v. City of Los Angeles</u> lawsuit.

4   Notwithstanding actual or constructive receipt of the Attorney General's opinion

5   letter on this issue, and being in actual receipt of Defendants' Special Order No. 1

6   and the LAPD Manual, City of Los Angeles, Beck, Feuer, and DOES 26 through

7   50 implemented the unlawful policy. Beck continues to promulgate that policy.

8   Tompkins, Edwards, and Aubry followed that policy in facilitating the continued

9   withholding of Plaintiff's firearms.

10                  **Count 2: Violation of Fifth Amendment**

11          101.   Plaintiff fully reincorporates Paragraphs 1-86, 90-96, and 99-100,

12   supra, as though fully alleged hereinafter.

13          102.   The Fifth Amendment to the United States Constitution provides in

14   part that "[n]o person shall be . . . deprived of life, liberty or property, without due

15   process of law; nor shall private property be taken for public use, without just

16   compensation." This prohibition against taking of private property for public use

17   without just compensation is applicable to state and local governments under the

18   Fourteenth Amendment.

19          103.   Plaintiff seeks a remedy against Defendants City of Los Angeles,

20   Beck, Feuer, Aubry, Tompkins, Edwards, and DOES 1 through 50 for the

21   continued retention and destruction of Plaintiff's personal property, which amounts

22   to a *de facto* taking without just compensation in violation of Plaintiff's Fifth

23   Amendment rights, as applied to the States through the due process clause of the

24   Fourteenth Amendment. Defendants' conduct, as alleged above, constitutes an

25   unlawful taking of property, and thus violates Plaintiff's right to due process under

26   the Fifth and Fourteenth Amendments to the United States Constitution.

27          104.   On information and belief, the execution of the unlawful policy that

28   resulted in the permanent taking of Plaintiff's firearms was done with the intent

**FIRST AMENDED COMPLAINT**

1  and knowledge that such policy violated established law.  Such intent and

2  knowledge is inferred from, inter alia, the receipt by City of Los Angeles, Beck,

3  Feuer, DOES 26 through 50, and policy makers of other California law

4  enforcement agencies, prior to the seizure and destruction of Plaintiff's firearms, of

5  an opinion letter by the California Attorney General which acknowledges and

6  instructs law enforcement agencies that owners of some handguns and almost all

7  long guns will lack proof of ownership in the form of written title, a sales receipt,

8  or registration in AFS. Such intent and knowledge is further inferred from, inter

9  alia, the unlawful takings policy being promulgated and adopted by Defendants in

10  direct contravention of Defendants' own written policies set forth in Special Order

11  No. 1 and Volume 4, Section 560.40 of the LAPD Manual, which written policies

12  were the direct result of the prior McGee v. City of Los Angeles lawsuit.

13  Notwithstanding actual or constructive receipt of the Attorney General's opinion

14  letter on this issue, and the actual receipt of Defendants' Special Order No. 1 and

15  the LAPD Manual, City of Los Angeles, Beck, Tompkins, Edwards, Aubry, Feuer,

16  and DOES 1 through 25, or any of them, first delayed Plaintiff the return of his

17  firearms for a substantial period of time continuing back through the applicable

18  limitations period, and then ultimately permanently denied Plaintiff the use of his

19  firearms by destroying or facilitating the destruction of the firearms.  That such

20  delay and destruction was done without adequate due process is evidenced by, inter

21  alia, such destruction occurring in contravention of, and in direct interference with,

22  the plea agreement entered into between the Ventura County District Attorney's

23  Office and Plaintiff which was then ratified as a court order by the Ventura County

24  Superior Court.

25  **Count 3: Violation of Fourteenth Amendment**

26      105.   Plaintiff fully reincorporates Paragraphs 1-87, 90-96, 99-100, and

27  103-104, supra, as though fully alleged hereinafter.

28      106.   The Fourteenth Amendment to the United States Constitution provides

**FIRST AMENDED COMPLAINT**

1   in part that no State shall "deprive any person of . . . property, without due process
2   of law."

3       107.   Plaintiff seeks a remedy against Defendants City of Los Angeles,
4   Beck, Feuer, Aubry, Tompkins, Edwards, and DOES 1 through 50 for the
5   continued retention of Plaintiff's personal property after Plaintiff availed himself of
6   the administrative processes required by law. Intentional retention of Plaintiff's
7   personal property thereafter is a deprivation of property without due process in
8   violation of the Fourteenth Amendment.  Intentional destruction of Plaintiff's
9   personal property is a permanent deprivation of property rights without due process
10  in violation of the Fourteenth Amendment.

11      108.   On information and belief, the execution of the unlawful policy that
12  resulted in the deprivation of Plaintiff's firearms without due process was done
13  with the intent and knowledge that such policy violated established law,
14  Defendants' own policy, the orders of the Ventura County Superior Court, and the
15  terms of the plea agreement entered into between Plaintiff and Ventura County.
16  Such intent and knowledge is inferred from, inter alia, the actual knowledge by
17  City of Los Angeles, Beck, Tompkins, Edwards, and DOES 1 through 25, or any of
18  them, of state law and the other firearms policy previously adopted by LAPD that
19  required notice to the owner and an opportunity to redeem seized property.  Such
20  intent and knowledge is further inferred from, inter alia, the participation by
21  Defendants in the prosecution and post-plea hearings in the Ventura County court
22  regarding the disposition of the firearms.  The proper execution of LAPD's written
23  policy on the return of firearms mandated that City of Los Angeles, Beck,
24  Tompkins, Edwards, and DOES 1 through 25 not destroy Plaintiff's firearms.
25  Defendants' obligation to follow the court orders of the Ventura County Superior
26  Court and to not interfere with the plea agreement entered into between Ventura
27  County and Plaintiff also mandated that City of Los Angeles, Beck, Tompkins,
28  Edwards, and DOES 1 through 25 not destroy Plaintiff's firearms.  State law and

**41**

**FIRST AMENDED COMPLAINT**

ethical canons required proper notice to affected parties before Defendants City of Los Angeles, Aubry, and Feuer sought a court order to destroy Plaintiff's property. Notwithstanding actual notice of LAPD's policy, City of Los Angeles, Beck, Feuer, Aubry, Tompkins, Edwards, and DOES 1 through 25, or any of them, destroyed or facilitated the destruction Plaintiff's firearms without further notice or warning afforded to Plaintiff and without regard to the ongoing efforts that Plaintiff had made to retrieve the firearms, of which they were fully aware. State law and ethical canons required Defendants City of Los Angeles, Aubry, and Feuer to bring any motion for destruction of the firearms in the court with the proper jurisdiction, the Ventura County Superior Court, which requirements Defendants were fully aware, yet intentionally ignored in denying Plaintiff both proper notice and the correct venue for their ex parte destruction motion. All of these circumstances not only constituted a denial of due process to Plaintiff, but directly contravened state law and LAPD's express policy for destruction of firearms and directly contravened state law for seeking court orders.

**Count 4: Failure to Train**

109.   Plaintiff fully reincorporates Paragraphs 1-87, 90-96, 99-100, 103-104, and 107-108, supra, as though fully alleged hereinafter.

110.   Defendant Beck is responsible for the operations, practices, and customs of the LAPD. Defendant Beck is also responsible also for the hiring, screening, training, retention, supervision, discipline, counseling and control of the personnel and officers under his supervision and command, including Defendants Tompkins and Edwards.

111.   Defendant Feuer is responsible for the operations, practices, and customs of the Office of the City Attorney. Defendant Feuer is also responsible also for the hiring, screening, training, retention, supervision, discipline, counseling and control of the personnel and deputy city attorneys under his supervision and command, including Defendant Aubry.

**42**

**FIRST AMENDED COMPLAINT**

112.   On information and belief, Defendants, and each of them, will deny that in committing the acts and omissions against Plaintiff described herein, including the violations of the Fourth, Fifth, and Fourteenth Amendments described hereinabove, that they were acting pursuant to the adopted heightened proof of ownership policy described hereinabove.  On further information and belief, Defendants, and each of them, will aver that they were acting in conformance with the state laws described hereinabove, including Section 560.40 of the LAPD Manual.

113.   Defendants Beck and Feuer, and each of them, had notice of the applicable state law regarding the return of firearms to owners prior to their destruction.  Such notice was expressly and implicitly obtained through, inter alia, the prior McGee v. City of Los Angeles lawsuit, Special Order No. 1, and the resulting Volume 4, Section 560.40 of the LAPD Manual.  Further, such state laws, and the resulting written policies enacted to conform to such laws, were designed and intended to prevent violation of Plaintiff and other citizens' civil rights including the right to due process prior to the destruction of personal property and the right to compensation for takings of property.

114.   Notwithstanding such notice, Defendant Beck failed to properly screen, train and/or supervise his officers, including Defendants Tompkins and Edwards, with regard to such written policies and laws and the resulting protections against unconstitutional seizures and takings.

115.   Notwithstanding such notice, Defendant Feuer failed to properly screen, train and/or supervise his deputy city attorneys, including Defendant Aubry, with regard to such written policies and laws and the resulting protections against unconstitutional seizures and takings.

116.   As a result of such failures to train, Defendants failed to apply the written policies and laws that would have afforded him the necessary protections of his constitutional rights.  Plaintiff resultantly suffered violations of his

**FIRST AMENDED COMPLAINT**

1   constitutional rights including, inter alia, the continued seizure and denial of his

2   personal property from the point of their destruction back through the applicable

3   limitations period, and the destruction and permanent deprivation of his personal

4   property without due process or adequate compensation.

5   **SECOND CLAIM FOR RELIEF:**

6   **State Law Torts of Conversion and Trespass to Chattels**

7   **Against Defendants BECK, FEUER, AUBRY, TOMPKINS, EDWARDS,**

8   **CITY OF LOS ANGELES, and DOES 1 through 50**

9   117.   Plaintiff fully reincorporates Paragraphs 1-87, supra, as though fully

10   alleged hereinafter.

11   118.   Plaintiff lawfully owned all of the firearms seized.  At no time did

12   Defendants, or any of them, have an ownership interest in Plaintiff's firearms.  City

13   of Los Angeles only had a possessory interest in the firearms from the time the

14   firearms were seized up through the time when Plaintiff became eligible as a matter

15   of law to possess the firearms again, provided proof of ownership pursuant to

16   LAPD policy, and demanded the return of the firearms.  Within the relevant

17   limitations period, Defendants refused to return Plaintiff's personal property,

18   resulting in an intentional and substantial interference with Plaintiff's property by

19   preventing Plaintiff from having access to the firearms, delaying the return of the

20   firearms after Plaintiff lawfully demanded their return unless Plaintiff complied

21   with legally unfounded requirements, interfering with Plaintiff's use or possession

22   of the firearms, damaging the firearms, and then destroying the remaining firearms.

23   119.   Plaintiff seeks a remedy against Defendants City of Los Angeles,

24   Beck, Feuer, Aubry, Tompkins, Edwards, and DOES 1 through 50 for the

25   continued wrongful exercise of control and possession over Plaintiff's personal

26   property and the ultimate destruction of such property.  LAPD's retention of

27   Plaintiff's firearms without a continued possessory interest, resulting in

28   interference with and denial of Plaintiff's use or possession of the firearms,

constitutes a trespass to Plaintiff's chattels under California law.  The destruction of Plaintiff's property constitutes conversion of Plaintiff's personal property under California law.

### THIRD CLAIM FOR RELIEF:

### Violation of Racketeer Influenced and Corrupt Organizations Act
### (18 U.S.C. §1961, *et seq.*)

### Against Defendants AUBRY, TOMPKINS, EDWARDS, and DOES 1 through 50

120.   Plaintiff fully reincorporates Paragraphs 1-87, 90-96, 99-100, 103-104, 107-108, and 110-116, supra, as though fully alleged hereinafter.

121.   A violation of 18 U.S.C. §1962, subdivision (c), under the Racketeer Influenced and Corrupt Organizations Act ("RICO") requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985).  If the defendant engages in a pattern of racketeering activity in a manner forbidden by the provisions of section 1962, and the racketeering activities injure the plaintiff in the plaintiff's business or property, the plaintiff has a claim under 18 U.S.C. §1964, subdivision (c).

122.   An "enterprise" "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. §1961(4).

123.   Defendants Office of the Los Angeles City Attorney and LAPD, the employers of Defendants Aubry, Tompkins, Edwards, and DOES 26 through 50, are two separate but related entities of the City of Los Angeles that regularly work together to defend the city in litigation, bring lawsuits on behalf of the People, and prosecute misdemeanor criminal offenses.

124.   The Office of the Los Angeles City Attorney, the LAPD, and the Gun Unit, and any distinct entity comprising a relevant combination thereof, are all "enterprises" under 18 U.S.C. §1961(4).

125.   The enterprise(s) affected interstate commerce in numerous ways, including that the LAPD destroys firearms, both legally and illegally, thus taking firearms out of the stream of commerce, including, on information and belief, hundreds of firearms that had traveled in interstate commerce prior to destruction.

126.   As members of the enterprise(s), Defendants Aubry, Tompkins, Edwards, and the Doe Defendants associated for the common and ongoing purpose of engaging in a fraudulent course of conduct.

127.   Defendants Aubry, Tompkins, Edwards, and the Doe Defendants were employed by or associated with the enterprise(s).

128.   Defendants Aubry, Tompkins, Edwards, and the Doe Defendants participated in the conduct and affairs of the enterprise(s) through a patter of racketeering activities, including multiple racketeering acts described herein.

129.   At the time Aubry and the Doe Defendants engaged in the enterprise(s), there was no pending prosecution by Aubry's office against Plaintiff, nor did Aubry, Feuer, or the City ever intend to prosecute Plaintiff for a criminal act during the time that Aubry, Tompkins, Edwards, and the Doe Defendants engaged in the enterprise(s).

130.   At the time Tompkins, Edwards, and the Doe Defendants engaged in the enterprise(s), there was no lawful pending criminal investigation by LAPD against Plaintiff, nor did Tompkins, Edwards, Beck or the City ever intend to seek prosecution of Plaintiff for a criminal charge during the time that Aubry, Tompkins, and Edwards engaged in the enterprise(s).

131.   Each of Defendants Aubry, Tompkins, Edwards, and DOES 26 through 50, individually and collectively, made decisions regarding the furtherance of the interference with and denial of Plaintiff's use or possession of the firearms and the ultimate destruction of Plaintiff's property. Through The Los Angeles Attorney's Office, LAPD sought and received an unlawful ex parte court order to have the firearms destroyed. Destruction of Plaintiff's firearms resulted in the

1   permanent taking of the firearms by LAPD and a permanent interference with

2   Plaintiff's property rights in the firearms.

3       132.   The goal of the enterprise was to deprive Plaintiff of his firearms for

4   the related purposes of (1) demonstrating that the City's Gun Unit was being

5   sufficiently effective in using federal grant money to keep guns "off the streets"

6   and (2) obtaining further funding to continue the activities of the enterprise. To

7   accomplish the goals of the enterprise(s), Tompkins and Edwards interacted with

8   one another and took direction from Beck.  To accomplish the goals of the

9   enterprise(s), Aubry interacted with Tompkins and Edwards, and took direction

10   from Feuer.  Each of these interactions took place in written correspondence, via

11   telephone, in person, or via email.

12       133.   A "predicate act" is illegal conduct that is prohibited by 18 U.S.C.

13   §1962.  The racketeering activity prohibited by 18 U.S.C. §1962 is defined in 18

14   U.S.C. §1961(1) as conduct that is chargeable, indictable, and punishable under

15   various criminal statutes including, but not limited to, mail fraud and wire fraud.

16   Defendants Aubry, Tompkins, Edwards, and the Doe Defendants devised and

17   intended to devise a scheme to defraud Plaintiff. Over the course of years,

18   Defendants Aubry, Tompkins, Edwards, and the Doe Defendants each sent at least

19   two e-mails to Plaintiff's counsel delaying the return of Plaintiff's firearms and

20   placing additional, unnecessary, and unlawful conditions on the return of

21   Plaintiff's firearms. Defendants Aubry, Tompkins, Edwards, and the Doe

22   Defendants each voluntarily and intentionally sent such e-mails to Plaintiff's

23   counsel intending to deprive Plaintiff of his firearms and to engage in a scheme to

24   defraud Plaintiff.  On information and belief, Aubry Tompkins, Edwards, and the

25   Doe Defendants, during the course of the enterprise(s), sent numerous

26   correspondence and emails to one another and to Feuer, Beck, and DOES 1

27   through 25, regarding and in furtherance of the enterprise(s). Each of the above-

28   described emails were transmitted to the members of the enterprise via public

1  utility communication facilities or via the mails.

2      134.   With knowledge of the illegality of their plan to deprive Plaintiff of

3  his firearms, Defendants Aubry, Tompkins, Edwards, and the Doe Defendants

4  continuously and repeatedly misrepresented to Plaintiff that his firearms would be

5  returned, when they knew or had reason to know that Plaintiff's firearms would not

6  be returned. Over the years, Defendants Aubry, Tompkins, Edwards, and the Doe

7  Defendants placed additional, unnecessary, and unlawful conditions on the return

8  of Plaintiff's firearms, or otherwise communicated such conditions to Plaintiff's

9  counsel. Defendants Aubry, Tompkins, Edwards, and the Doe Defendants could

10  have or should have known of the intended destruction of Plaintiff's property, and

11  their intent to participate in the scheme to defraud Plaintiff is evident in their

12  repeated failures to apprise Plaintiff of the truth.

13      135.   Defendants Aubry, Tompkins, Edwards, and the Doe Defendants had

14  actual knowledge of LAPD's lawful and well-established firearms policy.

15  Defendants Aubry, Tompkins, Edwards, and the Doe Defendants had knowledge of

16  the fact that the adopted policy they executed against Plaintiff – lasting for many

17  years  – directly contradicted the lawful and well-established LAPD policy, and

18  therefore knew that execution of the adopted policy was in fact illegal and in

19  furtherance of the scheme to defraud Plaintiff.

20      136.   The communications between Defendants Aubry, Tompkins, Edwards,

21  the Doe Defendants, and Plaintiff's counsel continued for many years without

22  resolution as to the return of Plaintiff's property. The communications were relayed

23  using the same mediums and were directed at the same victim by the same

24  Defendants. Because governmental entities are involved in the conduct, such

25  fraudulent conduct has the potential to continue indefinitely and cause serious

26  harm to others in the City of Los Angeles.

27      137.   On information and belief, Tompkins and the Doe Defendants ordered

28  the continued retention of Plaintiff's firearms after LAPD no longer had cause to

**FIRST AMENDED COMPLAINT**

1    keep Plaintiff's property. On information and belief, Tompkins and the Doe
2    Defendants then ordered the destruction of Plaintiff's firearms in LAPD's
3    possession without notice to Plaintiff. On information and belief, pursuant to
4    LAPD's unlawful policies and procedures, Edwards and the Doe Defendants
5    unlawfully refused to return Plaintiff's firearms to him and then authorized their
6    destruction.

7         138.   Each of Defendants Aubry, Tompkins, Edwards, and the Doe
8    Defendants played a significant role in the continued interference with and denial
9    of Plaintiff's use or possession of the firearms and the ultimate destruction of
10   Plaintiff's property. But for Defendants' conduct, Plaintiff would not have suffered
11   any loss. There is a direct relationship between the injury and Defendants'
12   injurious conduct. Defendants Aubry, Tompkins, Edwards, and the Doe
13   Defendants knowingly deprived Plaintiff of his property by using mail and other
14   mediums of communication to mislead Plaintiff into believing his property was
15   being processed for return, while unbeknownst to Plaintiff, they were actually
16   planning to get an ex parte order, based on incomplete or incorrect allegations, that
17   putatively authorized the destruction of the property.

18        139.   Defendant Aubry and the Doe Defendants sought the unlawful ex
19   parte order to have the firearms destroyed. Defendants Tompkins, Edwards, and the
20   Doe Defendants authorized and ordered the destruction of Plaintiff's firearms.

21        140.   On information and belief, Defendant Tompkins, Edwards, and DOES
22   26 through 50 falsely represented to a third party, either directly or indirectly, that
23   legal authority to destroy Plaintiff's property had been obtained such that the third
24   party could legally destroy Plaintiff's property, and such destruction thereafter
25   occurred. The scheme resulted in a significant loss of property to Plaintiff, and
26   Plaintiff is entitled to damages, trebled per statute.

27        141.   On information and belief, the practice of improperly retaining and
28   destroying firearms seized by the Gun Unit is ongoing and is not unique to the

**49**
**FIRST AMENDED COMPLAINT**

Plaintiff.

## FOURTH CLAIM FOR RELIEF:

### Conspiracy to Violate Racketeer Influenced and Corrupt Organizations Act

### (18 U.S.C. §1962(d))

### Against Defendants AUBRY, TOMPKINS, EDWARDS, and DOES 1 through 50

142.    Plaintiff fully reincorporates Paragraphs 1-87, 90-96, 99-100, 103-104, 107-108, 110-116, and 123-141, supra, as though fully alleged hereinafter.

143.    A conspiracy to violate RICO is a separate claim under 18 U.S.C. §1962, subdivision (d), which makes it "unlawful for any person to conspire to violate any of the provisions" of that section.

144.    Defendants Aubry, Tompkins, Edwards, and DOES 1 through 50 unlawfully conspired, as set forth above, to violate 18 U.S.C. §1962(b)-(d).

145.    Plaintiff was injured by the destruction of his property, and Plaintiff is entitled to damages, trebled per statute.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**FIRST AMENDED COMPLAINT**

**FIFTH CLAIM FOR RELIEF:**

**State Law Action for Declaratory Relief, Writ of Prohibition and/or Writ of**

**Mandamus as to Preemption of LAPD Policy by State Law**

**(18 U.S.C. §1962(d))**

**Against Defendants BECK, CITY OF LOS ANGELES, and DOES 1 through**

**50**

146.   Plaintiff fully reincorporates Paragraphs 1-87, supra, as though fully alleged hereinafter.

147.   Section 7 of Article XI of the California Constitution provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general law."

148.   Pursuant to California Government Code §53071, the California Legislature intended that as to licensing or registration of firearms, or laws relating to licensing or registration of firearms, the California Legislature would solely occupy the field of such laws within California, and that local regulations requiring registration or relating to such requirements would be preempted.[2]

149.   Under California law, the Legislature has determined that firearms owners are not obligated to voluntarily register their firearms with AFS as a condition of proving ownership of such firearms to the DOJ or to a local law enforcement agency.

150.   LAPD's adopted policy, as described hereinabove, requires heightened proof of ownership as a condition of return of firearms to their owners, such heightened proof requirements including, inter alia, that firearms owners

---

[2]  "It is the intention of the Legislature to occupy the whole field of regulation of the registration or licensing of commercially manufactured firearms as encompassed by the provisions of the Penal Code, and such provisions shall be exclusive of all local regulations, relating to registration or licensing of commercially manufactured firearms, by any political subdivision as defined in Section 1721 of the Labor Code." CAL. GOV'T CODE §53071

**FIRST AMENDED COMPLAINT**

1   seeking return of firearms "voluntarily" register their firearms in AFS, such that

2   owners who fail to voluntarily register forfeit ownership and possession under such

3   regulation.  As to Plaintiff specifically, Defendants have contended, and, on

4   information and belief, will continue to contend, that Defendants' destruction of

5   Plaintiff's firearms was proper, inter alia, because of Plaintiff's refusal to

6   "voluntarily" register his firearms in conformance with the adopted LAPD policy.

7        151.   LAPD's voluntary registration policy, as an adopted policy of a

8   governmental agency applied to the public at large, constitutes a local regulation

9   for purposes of Section 53071.

10        152.   Such local regulation creates a new class of persons who are required

11   to voluntarily register their firearms in order to prove ownership and gain return of

12   such firearms where the Legislature has voiced a clear intent to solely prescribe

13   laws regarding such issues.  Furthermore, the Legislature has not only voiced an

14   intent to solely prescribe laws on the issue of under what circumstances must a

15   firearm owner register a firearm, but the Legislature has, in fact, prescribed such

16   laws, as set forth in, inter alia, Penal Code §§33850 through 33895.  Such laws

17   conflict with LAPD's adopted policy that was and is being applied to Plaintiff, and,

18   on information and belief, is being applied to other persons whose firearms LAPD

19   has possessed or is currently possessing.

20        153.   On information and belief, as set forth hereinabove, Defendant City of

21   Los Angeles and its agents are still in possession of, and have refused to release to

22   Plaintiff, firearms Plaintiff owns, on the basis of, inter alia, the application of its

23   adopted policy requiring voluntary registration as a condition of maintaining

24   ownership and recovering possession.  Defendants have a clear, present, and

25   ministerial duty to not enforce LAPD's adopted voluntary registration policy

26   against Plaintiff and others.

27        154.   Plaintiff is beneficially interested in this matter, in that he was and is

28   subject to LAPD's preempted adopted policy.

**FIRST AMENDED COMPLAINT**

155.   Defendants' enactment and enforcement of LAPD's adopted voluntary registration policy is and will be of a continuing nature for which Plaintiff has no plain, speedy, or adequate remedy at law, and which has and will continue to result in irreparable harm, including, but not limited to, further refusal of Defendants to turn over to Plaintiff those firearms of Plaintiff's still in LAPD's or its agents' possession which Defendants have otherwise characterized as lost.

156.   LAPD's adopted policy of requiring registration of firearms as part of its heightened proof of ownership policy is expressly and impliedly preempted by state law on firearms registration.  As such, Plaintiff seeks as a remedy a declaration from this court that such policy is void as preempted under existing state law.  Plaintiff further seeks that this court issue a writ of mandamus or prohibition, as authorized under California law, against Defendants from enforcing in the future  LAPD's adopted policy of requiring voluntary firearms registration as to Plaintiff and all other affected persons and ordering the return of such firearms to Plaintiff still in LAPD's possession.

## PRAYER

WHEREFORE Plaintiff prays for relief as follows:

157.   For monetary damages, including special and general damages, from Defendants, including for actual damages in the form of loss of use of the seized firearms, the value of the destroyed firearms, the damage to the returned property, and other actual damages as described above, in an amount of no less than $4,862,950.00;

158.   For punitive damages, as permitted under state and federal law, from Defendants, and each of them.

159.   For remedies available pursuant to 42 U.S.C. §1983 and for an award of reasonable attorney's fees, costs, and expenses pursuant to 28 U.S.C. §2412, 42 U.S.C. §1988, California Code of Civil Procedure §1021.5, and any other applicable state or federal law not mentioned in this Prayer;

160.   For an award of treble damages and costs, including attorney's fees, pursuant to 18 U.S.C. §1964(c);

161.   For a declaration, pursuant to 28 U.S.C. §§2201-2202, that the acts and omissions of Defendants, and each of them, were unconstitutional and violated state law, and that Plaintiff is entitled to relief as a result of such violations, including the return of any and all property of Plaintiff still within Defendants' possession;

162.   For a declaration, pursuant to 28 U.S.C. §§2201-2202 and California Code of Civil Procedure §1060, and for a writ to issue, pursuant to California statutory and common law, that LAPD's policy of requiring voluntary registration of firearms in AFS is void as preempted by California Government Code §53071;

163.   For an award of reasonable attorney's fees, costs, and expenses pursuant to California Penal Code §33885, which provides that: "In a proceeding for the return of a firearm seized and not returned pursuant to this chapter, where the defendant or cross-defendant is a law enforcement agency, the court shall award reasonable attorney's fees to the prevailing party; and

164.   For such other and further relief as may be just and proper.

Date: October 16, 2015                    **MICHEL & ASSOCIATES, P.C.**

                                          /s/ C.D. Michel

                                          C.D. Michel
                                          E-mail:cmichel@michellawyers.com
                                          Attorneys for Plaintiff
                                          Wayne William Wright

1

## DEMAND FOR JURY TRIAL

2
      Plaintiff hereby demands a trial by a jury of his peers.

3
Date: October 16, 2015             **MICHEL & ASSOCIATES, P.C.**

4
                                /s/ C.D. Michel

5
                                C.D. Michel
                                E-mail:cmichel@michellawyers.com

6
                                Attorneys for Plaintiff
                                Wayne William Wright

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

# EXHIBIT "1"

**Los Angeles** Police Department



**Official Site of The LOS ANGELES POLICE DEPARTMENT**

newsroom (/newsroom) / 2004 archives (/2004_archives) / september 2004 (/september_2004)

# News Release

**Friday, September 17, 2004**



## Hundreds of Guns Confiscated

WHO:
Los Angeles City Mayor James K. Hahn
Los Angeles Police Chief William J. Bratton

WHAT:
News Conference

WHEN:
September 17, 2004
4:00 p.m.

WHERE:
Parker Center
150 North Los Angeles Street
Los Angeles

Los Angeles: The Los Angeles Police Department aggressively targets suspects involved in the illegal sale of firearms to stop the flow of guns to the streets of Los Angeles.

On September 16, 2004, the Gun Unit, Detective Support Division, working from recently developed intelligence information, conducted an undercover gun buy operation in the Porter Ranch area of Los Angeles. The suspect, Wayne Wright, engaged in an unlawful firearm transaction with an undercover Gun Unit officer. Wright was immediately arrested for the violation and during a subsequent search of his vehicle 11 additional rifles and shotguns were recovered.

## NEWS ARCHIVES

(http://www.lapdonli
ne.org
/2014_archives)

| 2015 (http://www.lapdonline.org /2015_archives) |
| --- |
| 2006 (http://lapdonline.org /2006_archives) |
| 2005 (http://lapdonline.org /2005_archives) |
| 2004 (http://lapdonline.org /2004_archives) |
| 2003 (http://lapdonline.org /2003_archives) |
| 2002 (http://lapdonline.org /2002_archives) |
| 2001 (http://lapdonline.org /2001_archives) |

Case 2:15-cv-05805-R-PJW   Document 19   Filed 10/16/15   Page 59 of 76   Page ID #:678

Gun Unit detectives then obtained a search warrant for Wright's residence in the city of Simi Valley. During the service of the warrant, Gun Unit detectives recovered 376 weapons, including rifles, shotguns, handguns and assault weapons. Many of these guns are the types routinely used in crimes in Los Angeles. Also recovered at Wright 's residence was a silencer and thousands of rounds of ammunition, including tracer rounds and armor piercing rounds, all of which in California, are felonies to possess.

During 2003, the gun unit seized 348 firearms. Year-to-date in 2004, the Gun Unit has seized 411 firearms. The seizure in this case of 388 total firearms nearly equals that for the first 8 months of 2004 and exceeds the total seizure for 2003.

The suspect, Wayne Wright, is not a licensed gun dealer and the Los Angeles Police Department believes that Wright is actively engaged in unlawful gun trafficking.

Suspect: Wayne Wright, 56 years of age, a resident of Simi Valley, California was booked at Devonshire Area Police Station for 12072 (d) P.C. - Transfer, Delivery or Sales of Firearms.

This news advisory was prepared by Los Angeles Police Department's Media Relations Section at, 213-485-3586.

| 2000 (http://www.lapdonline.org /2000_archives) (http://lapdonline.org /2007_archives) |
| --- |
| 1999 (http://www.lapdonline.org /1999_archives) (http://www.lapdonline.org /1998_archives) |

(http://www.lapdonline.org /2014_archives)

 Follow @LAPDHQ (http://twitter.com/LAPDHQ)  LAPD on Facebook

(http://www.facebook.com/thelapd?sk=info) Follow @lapolicefdtn

(http://twitter.com/lapolicefdtn)

## Contact Us

Emergency: 911
Non-Emergency: 877-ASK-LAPD

100 West 1st Street
Los Angeles, CA 90012

File a commendation or Complaint (/our_communities /content_basic_view/9217)

## Stay Connected

## Get Involved

- iWatch (/iwatchla)
- Joint Regional Intelligence Center (http://jric.org /default.aspx?AspxAutoDetectC ookieSupport=1)
- Text-A-Tip (/get_informed /pdf_view/39390)
- Crime Stoppers (/crime_stoppers)
- LA Metro Task Force On Human Trafficking (800-655-4095)
- Volunteer (/our_communities /content_basic_view/733)
- Reward Bulletin (/reward_bulletin_listing)
- DHS.gov/alerts (http://DHS.gov /alerts)

## Our Galleries

  

  

  







(http://www.facebook.com/thelapd?sk=info)

(http://twitter.com/LAPDHQ)

(http://instagram.com/lapdhq)

(https://itunes.apple.com/us/app/lapd/id952681677?ls=1&mt=8)

(https://play.google.com/store/apps/details?id=com.lapd)

4/16/2015 1:29:01PM

Translate this page:

Select Language ▼

Site by Radar Blue, Inc. (http://www.radarblue.com)

Copyright © 2015 Los Angeles Police Foundation (http://lapolicefoundation.org/) and the LAPD (/). All Rights Reserved



# EXHIBIT "2"

# EXHIBIT "2"

(1)   Remington Model 700 Rifle

(2)   Winchester Model 77 Rifle

(3)   Weatherby Delux Mauser Rifle, caliber .257

(4)   Remington Model 870 shotgun

(5)   Remington Model 37, .22 Target Rifle

(6)   FN Delux Mauser Rifle

(7)   Remington Model 31 Special Trap Shotgun

(8)   FN Delux Mauser Rifle, stocked by Weatherby

(9)   Browning Citori 20 gauge SKEET Shotgun

(10)  Griffin & Howe Mauser Rifle in 30-06

(11)  Remington Model 10 Shotgun

(12)  Winchester Model 12 Sixteen gauge shotgun

(13)  Smith and Wesson Model 27-2 .357 Magnum

(14)  Smith and Wesson Model 27-2

(15)  Smith and Wesson Model 63

(16)  Smith and Wesson Model 624

(17)  Smith and Wesson Model .357 Magnum

(18)  Smith and Wesson Model of 1917 .45 A.C.P.

(19)  Smith and Wesson Model 29 .44 Magnum

(20)  Smith and Wesson Model 28.2

(21)  Smith and Wesson Model 24-3, 3 inch barrel

(22)  Smith and Wesson Model 1926 Hand Ejector, .44 Special, 5 inch barrel

(23)  Smith and Wesson 1917 .45 A.C.P.

(24)  Smith and Wesson M&P Hand Ejector 2nd Model, (1st Change), .32/20 Target

(25)  Colt New Service

(26)  Colt Bisley

| | |
|---|---|
| (27) | Smith and Wesson Model 39-2 |
| (28) | Star Model B |
| (29) | Star Model B |
| (30) | Star Model M .45 Auto |
| (31) | Smith and Wesson Model 46 |
| (32) | Star Model P |
| (33) | Star Model AS |
| (34) | Walther Model PP .380 |
| (35) | Ruger Standard Model .22 |
| (36) | Star Model BKS |
| (37) | Colt Model 1903, 4th Model |
| (38) | H&R Defender |
| (39) | QFI Plains Rider |
| (40) | Springfield Model 1903 receiver |
| (41) | Springfield Model 1903 receiver |
| (42) | Springfield Model 1911 |
| (43) | Astra Model Cub |
| (44) | High Standard HD Military |
| (45) | Walther PPK/S |
| (46) | Walther PPK/S .380 |
| (47) | Smith and Wesson Model 539 |
| (48) | Colt Model 1905 25 A.C.P. |
| (49) | Beretta Model 948 |
| (50) | Smith and Wesson Model 41 |
| (51) | Beretta Model 21A |
| (52) | Walther PP .22 L.R. |
| (53) | Walther PPK/S |
| (54) | Browning Model 1905, .25 A.C.P. |

1   (55)   Smith and Wesson Model 27-2

2   (56)   Smith and Wesson Model 58, caliber .41 Magnum

3   (57)   FN Browning High Power

4   (58)   Smith and Wesson Model 36

5   (59)   Smith and Wesson Model 629-4

6   (60)   Browning Model 1905, .25 A.C.P.

7   (61)   Smith and Wesson Model .357

8   (62)   Smith and Wesson Model 629

9   (63)   Colt Junior .22 Short

10   (64)   Mauser Standard Model receiver

11   (65)   Remington Model of 1917 receiver

12   (66)   Colt Lightweight Commander

13   (67)   Colt Model 1911A1 Government Model

14   (68)   Colt Gov't. Mdl .38 AMU

15   (69)   High Standard Model 101 Duramatic

16   (70)   High Standard Model 101 Supermatic

17   (71)   High Standard Model SK 100 Sport King

18   (72)   High Standard Model Supermatic

19   (73)   High Standard Model 103 Supermatic Citation

20   (74)   Colt Model 1911A1 Commercial

21   (75)   Colt Combat Government MDL NM

22   (76)   Colt Model 1911

23   (77)   High Standard Model HB

24   (78)   Colt Gold Cup

25   (79)   Springfield U.S. Rifle .30 M1

26   (80)   Remington Rolling Block receiver

27   (81)   Colt Government Model

28   (82)   Smith and Wesson Model 27-2

1  (83)  Smith and Wesson Model 58

2  (84)  Colt Government Series 70

3  (85)  Webley & Scott Mk. IV

4  (86)  Smith and Wesson Chief's Spc. 3"

5  (87)  Smith and Wesson Model 38

6  (88)  Colt Model 1911A1

7  (89)  Browning Model P-35 High Power

8  (90)  Browning Model Baby

9  (91)  Browning Model Baby

10  (92)  Astra Model Cub

11  (93)  Colt SAA Bisley Model

12  (94)  Savage Model 99 Rifle T/D

13  (95)  Remington Model 12 Rifle

14  (96)  German Falling Block Single Shot Free Pistol, .22 Long Rifle

15  (97)  Remington Model 81, caliber .35 Rifle

16  (98)  Remington Model 241 Rifle

17  (99)  U.S. Springfield Model 1896 Carbine Rifle

18  (100)  Remington Model 722BDL Special Order

19  (101)  Remington Model 30S .25 caliber Rifle

20  (102)  Remington Model 1903A1

21  (103)  Remington Model 30

22  (104)  Remington Model 41P, .22

23  (105)  Springfield Model 1903, Rock Island

24  (106)  Remington Model 30 Rifle

25  (107)  Springfield Model 1903 Sedgley

26  (108)  Remington Model 760BDL 5 Diamond

27  (109)  Winchester Model 1907 Rifle

28  (110)  Remington Model 141 Rifle

1   (111) Winchester Model 1907 Rifle

2   (112) Remington Model 30S, caliber 30-06 Rifle

3   (113) Remington Model 8A Rifle

4   (114) Springfield Model 1898 Krag Rifle

5   (115) Remington Model 700 Rifle

6   (116) Fabrique National of Herstal Belgium Model 1908 Delux Rifle

7   (117) Remington Model 81 Rifle

8   (118) Springfield Model 1903A1

9   (119) Springfield Model 1903 Sporting Rifle

10  (120) Remington Model 141 Carbine

11  (121) Remington Model 14 Carbine

12  (122) Remington Model 81 Rifle, caliber .35

13  (123) Winchester Model 1907 Rifle

14  (124) Springfield Model 1903 Rifle

15  (125) Springfield Model 1903A1

16  (126) Savage Model 99RS

17  (127) Remington Model 30 Rifle

18  (128) Newton Rifle Company Standard .256

19  (129) Armalite Match Rifle

20  (130) Remington Model 81, Auto Loading Rifle

21  (131) Remington Model 81, Auto Loading Rifle

22  (132) Parker Bros. PH Grade, Double Barrel Shotgun

23  (133) Ithaca Model 4E, Single Barrel, Trap Shotgun

24  (134) J.P. Sauer Royal Grade, Double Barrel Shotgun

25  (135) L.C. Smith Model 3E, Double Barrel Shotgun

26  (136) L.C. Smith Field Grade Ejector Model, Double Barrel Shotgun 16 gauge

27  (137) L.C. Smith Field Grade Ejector Model, 20 gauge FWT. Shotgun 1940

28  (138) J.P. Sauer Manufactured 12 Gauge, Double Barrel Shotgun

1  (139)  Ithaca Model Lewis No.2 Grade, Double Barrel Shotgun

2  (140)  Remington Model 11 Sportsman, Auto-Loading Shotgun

3  (141)  Winchester Model 70 Super Grade Rifle

4  (142)  Savage Model 1899, CD Grade

5  (143)  Remington Model 521 T, caliber 22 Target Rifle

6  (144)  FN Model Auto 5 Shotgun

7  (145)  Savage Model 99 G .300

8  (146)  Winchester Model 94 Carbine

9  (147)  BRNO Model 22F

10  (148)  Winchester Model 37 Shotgun

11  (149)  Stevens Model Favorite Rifle

12  (150)  Remington Model 550-1 Rifle

13  (151)  Winchester Model 70 Rifle

14  (152)  Winchester Model 70

15  (153)  Enfield Model 1887 Trials Rifle

16  (154)  Savage Model 99R Rifle

17  (155)  Marlin Model 39-A

18  (156)  Remington Model 12-A

19  (157)  Mauser Sukalle Custom .270

20  (158)  Savage Model

21  (159)  Chas. Newton Standard Model Rifle

22  (160)  Winchester Model 70 Custom .35

23  (161)  Custom .300 Holland & Holland Express Rifle

24  (162)  Oberndorf Mauser Model B 7mm 1912

25  (163)  Marlin Model 1894 Rifle

26  (164)  Remington Model 521-T Junior Target Rifle

27  (165)  Savage Model 1899 Rifle

28  (166)  Remington Model 241 Rifle

1   (167)  Remington Model 121 Rifle

2   (168)  Winchester Model 1895 Rifle Lyman No. 21

3   (169)  FN Auto-Loading Shotgun

4   (170)  Sako Model L-46 Rifle

5   (171)  Marlin Model 39A Rifle

6   (172)  Remington Falling Block Rifle

7   (173)  Marlin Model 36 SC Carbine

8   (174)  Ballard Marlin Rifle

9   (175)  Remington Model 722, caliber .257 Custom

10  (176)  Winchester Model 70 Custom F.W. Rifle

11  (177)  Savage Model 24 Rifle/Shotgun

12  (178)  Savage Model 1899 Rifle .30 WCF

13  (179)  Oberndorf Mauser Model B 8X60

14  (180)  Winchester Model 1897, 12 Gauge Shotgun

15  (181)  Eastern Arms Co. Shotgun

16  (182)  Remington Model 11 Shotgun 16 Rib

17  (183)  Remington Wingmaster Model 870

18  (184)  Remington Model 513-T, .22 Target Rifle

19  (185)  Springfield Armory Model 1898 Krag, NRA Style Sporting Rifle

20  (186)  Winchester Model 54 Improved

21  (187)  Ithaca Model 37, 16 Gauge Shotgun

22  (188)  Mannlicher Schoenauer Model 1905 Carbine, London proofed 9X57 Mauser

23         Lyman sights

24  (189)  Springfield Armory U.S. Rifle, Caliber .30, M1

25  (190)  Remington Model 513-T Target Rifle

26  (191)  Mannlicher Schoenauer Model 1924 Carbine, Griffin-Howe/Claw Mounts

27         Full Stock

28  (192)  Savage Model 99F Rifle

1  (193) Savage Model 1895 Rifle

2  (194) Savage Model 99T Rifle

3  (195) Savage Model 99 Sukalle Special order .219

4  (196) Savage Model 99EG Rifle .250

5  (197) Savage Model 1899 .250-3000 Rifle

6  (198) Savage Model 1899G .30 Rifle

7  (199) Savage Model 99G Rifle

8  (200) Savage Model 99B Rifle, Caliber .300

9  (201) Savage Model 1899A Rifle

10  (202) Savage Model 1899A Rifle

11  (203) Savage Model 99 Custom Rifle

12  (204) Savage Model 99RS Rifle

13  (205) Marlin Model 1893 Lever Action Rifle

14  (206) Remington Model 11, Auto-Loading Shotgun

15  (207) Remington Model 11, 12 Gauge Shotgun

16  (208) Remington Model 11, 12 Gauge Shotgun

17  (209) Remington Model 31, 12 Gauge Shotgun

18  (210) Winchester Model 70 Rifle

19  (211) Lee Enfield Rifle No.1 Mk.3

20  (212) Remington Model 870 Magnum Shotgun

21  (213) Chinese Type 56 SKS War Trophy

22  (214) Winchester Model 1892 Rifle

23  (215) Remington Model 33, .22 Caliber Rifle

24  (216) Winchester Model 9422M Rifle

25  (217) Winchester Model 1894 Rifle

26  (218) Springfield Model 1903 Sporting Rifle

27  (219) Remington Model 512, .22 Caliber Rifle

28  (220) Mannlicher Schoenauer Model of 1950 Rifle

(221) Springfield Model 1903 Conversion by Chas Newton Company of Buffalo, New York

(222) Springfield Custom Model 1903 Sporting Rifle

(223) Mauser Model 98 Custom Sporting Rifle

(224) Browning .22 Auto-Loading Rifle

(225) Smith-Corona Model 1903A3 Rifle

(226) Savage Model 99F .250 Lyman 3X

(227) Remington Model 512 Rifle

(228) Remington Model 510 Rifle

(229) Remington Model 510P Rifle

(230) Remington Model 41P Rifle

(231) Remington Model 241 Rifle

(232) Winchester U.S. Carbine M1, .30 Caliber Rifle

(233) Winchester Model 1885 High Wall Rifle

(234) Springfield U.S. Model of 1898 Constabulary Carbine Rifle

(235) Inland Division, U.S. Carbine M1, .30 Caliber

(236) Ruger Model 10-22 Rifle

(237) Remington Model 12 Rifle

(238) Lee Enfield No.4 MK2 Rifle

(239) Springfield Armory Model 1903A1 Rifle

(240) Lee Enfield No.1 MK3, .22 Caliber Conversion Rifle by the Parker Hale Co. of Birmingham, U.K.

(241) Lee Enfield Rifle No.1 MK5

(242) Winchester Model 57 Rifle

(243) Walther Sport Model V .22 Rifle

(244) Savage Model 23, .22 Caliber Rifle

(245) Remington Model 31, 20 Gauge Skeet Gun

(246) J. Stevens Arms Co. Model No. 26 Crack-shot

1 (247) Remington Model 341P, .22 Caliber Rifle

2 (248) Inland Division, U.S. Carbine M1, .30 Caliber

3 (249) Winchester Model 69A, .22 Caliber Rifle

4 (250) Lee Enfield No.1 MKIII Rifle

5 (251) Winchester Model 67, .22 Caliber Rifle

6 (252) Remington Model 1100, 12 Gauge Shotgun

7 (253) Browning Auto 5, 12 Gauge Shotgun

8 (254) Remington Model 11, 12 Gauge Shotgun

9 (255) Winchester Model 67, .22 Caliber Rifle

10 (256) Remington U.S. Rifle Model of 1903-A3

11 (257) Springfield Model 1903A1 Rifle

12 (258) Springfield Model 1903 Rifle

13 (259) Springfield Model 1903 Rifle

14 (260) Springfield Model 1903MKI Rifle

15 (261) Remington Model 1903 Rifle

16 (262) Winchester Model of 1917 Sporting Rifle

17 (263) FN Delux Sporting Rifle

18 (264) Remington Model 1903, NRA Target Rifle

19 (265) H&R Arms U.S. MI Rifle, .30 Caliber

20 (266) Rock Island Model 1903 Rifle

21 (267) Springfield Model 1903 Rifle

22 (268) Springfield Model 1903 Rifle

23 (269) Springfield Model 1903 Rifle

24 (270) Russian Mosin-Nagant Model 1944 Carbine

25 (271) Springfield Model 1903 MKI

26 (272) Marlin Model 1889 Lever Action Rifle

27 (273) Savage Model 19 Target .22 Rifle

28 (274) Marlin Model 1894C Carbine

(275)  Lee Enfield No.4 MKI

(276)  Springfield Model 1903A1 Rifle

(277)  Remington Model 1903 Rifle

(278)  Remington Model 788 Rifle

(279)  Winchester Model 75 Sporter

(280)  Winchester Model 75 Sporter

(281)  Remington Model 1903 Rifle

(282)  Russian SKS Rifle

(283)  Remington Model 12 C Rifle

(284)  Ruger Model 44 Carbine Rifle

(285)  Winchester Model 72A Rifle

(286)  Universal M1 Carbine Rifle

(287)  Ithaca Model 37 Shotgun

(288)  Remington Model 30S Rifle

(289)  Remington Model 720 Rifle

(290)  Springfield Model 1903 MKI Rifle

(291)  Remington Model 514, .22 Caliber Rifle

(292)  Stevens Model 55 Rifle

(293)  Winchester Model 67A, .22 Caliber Rifle

(294)  Remington Model 30 Rifle

(295)  Remington Model 30S Rifle

(296)  Remington Model 12, .22 Pump Action Rifle

(297)  Remington Model 241, .22 Caliber Rifle

(298)  Iver Johnson Pre-WW2 410 Shotgun

(299)  FN Model 98 Mauser Rifle.333OKH

(300)  Remington Model 512, .22 Caliber Rifle

(301)  H&R Shotgun

(302)  Ruger MKI Standard Model, .22 Caliber Pistol

(303)  Smith and Wesson Model 24-3 Revolver

(304)  Smith and Wesson Model 27 Revolver

(305)  Smith and Wesson Model .357 Revolver

(306)  Smith and Wesson Military & Police Model 1905 Fourth Change Revolver

(307)  Smith and Wesson .44 Hand Ejector, Fourth Model 1950 Target (Model 24)

(308)  Smith and Wesson Model K-38 Target Revolver

(309)  Smith and Wesson Model K-22 Combat Target

(310)  Smith and Wesson Model 1917, .45 Caliber

(311)  Colt Officers Model Special Revolver

(312)  Colt Officers Model Target Revolver

(313)  Colt Officers Model Special Revolver

(314)  Colt Model 1911A1

(315)  Colt Model 1911 Pistol

(316)  Colt Government Model 1911

(317)  Colt Woodsman Match Target

(318)  H&R Arms U.S. Rifle, Caliber .30 MI

(319)  Springfield Armory U.S. Rifle Caliber .30 MI

(320)  Springfield U.S. Rifle, Caliber .30 MI

(321)  Smith Corona Model 1903-A3 Rifle

(322)  Eddystone U.S. Rifle Model 1917

(323)  Springfield U.S. Rifle Model 1903 MK1

(324)  Mauser Model 1898 6.5X57 Fehringer

(325)  Remington Model 1903 Springfield Rifle

(326)  Springfield U.S. Rifle Model 1903 MK1

(327)  J. Stevens Arms Single Shot Rifle

(328)  H.S.B. Co. Model C

(329)  Smith and Wesson Model 1913, .35 Caliber Pistol

(330)  H&R Top Break Revolver

(331) Rock Island U.S. Model 1903

(332) Fabrique National Model Delux Sport Rifle

(333) Stevens Model 522 Shotgun

(334) Remington Model 11, 12 Gauge Riot Shotgun

(335) Remington Model 742 Rifle

(336) Sako Mauser Rifle

(337) Industrie Belgian Box Lock 12 Gauge Shotgun

(338) Remington Model 511-X Scoremaster Rifle

(339) Francottee, Acier Special Belgium Double Barrel,

(340) Savage Arms Model 19 NRA, .22 Caliber Target Rifle

(341) High Standard Flite King, 12 Gauge Shotgun Riot

(342) Winchester Model 1907 Rifle

(343) Marlin Model 28 Shotgun

(344) Lee Enfield Rifle No.4 MK1

(345) Savage Model 23 Sporter, .22 Caliber Rifle

(346) Remington Model 25 Rifle

(347) Smith and Wesson .38 Caliber Revolver

(348) L.C. Smith No. 2E Grade, Double Barrel Shotgun

(349) J.P. Sauer 12 Gauge, Double Barrel Shotgun

(350) L.C. Smith 12 Gauge, Double Barrel Shotgun, No.3E Grade Museum Letter

(351) Browning Superposed, 20 Gauge Shotgun

(352) Iver Johnson Champion Grade .410 Shotgun

(353) Remington Model 32 Shotgun

(354) Remington Model 700 Heavy Barrel Rifle

(355) Steyr-Damiler Puch SSG Model 69 Rifle

(356) Remington Model 121, .22 Caliber Rifle

(357) Omark Model 44 Rifle

(358) Colt Python 100083

(359) Vest, Safariland

(360) Vest, Safariland

(361) Body Armor

(362) Trauma Plate

(363) Purchase Order, Castle Gun Shop for Colt SAA

(364) $1000.00 cash

1     **IN THE UNITED STATES DISTRICT COURT**

2     **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

3     **LOS ANGELES BRANCH COURTHOUSE - SPRING STREET**

4   WAYNE WILLIAM WRIGHT,    ) **CASE NO.: 2:15-cv-05805-R-PJW**

5     Plaintiff,     )
    ) **CERTIFICATE OF SERVICE**

6     v.     )

7   CHARLES L. BECK; MICHAEL N. )
  FEUER; WILLIAM J. BRATTON; )

8   HEATHER AUBRY; RICHARD )
  TOMPKINS; JAMES EDWARDS; )

9   CITY OF LOS ANGELES; and )
  DOES 1 through 50, )

10     )
    Defendants. )

11   ———————————————)

12   IT IS HEREBY CERTIFIED THAT:

13       I, the undersigned, am a citizen of the United States and am at least eighteen

14   years of age. My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

15       I am not a party to the above-entitled action. I have caused service of:

16     **FIRST AMENDED COMPLAINT**

17   on the following party by electronically filing the foregoing with the Clerk of the

18   District Court using its ECF System, which electronically notifies them.

19   Eric Brown, Deputy City Attorney     Attorney for Defendants
  200 North Main Street, City Hall East

20   9th Floor
  Los Angeles, California 90012

21   Email: Eric.Brown@lacity.org

22       I declare under penalty of perjury that the foregoing is true and correct.
  Executed on October 16, 2015.

23

24                 /s/ C. D. Michel
                C. D. Michel

25                 Attorney for Plaintiffs

26

27

28