JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE WILLIAM WRIGHT, | ) CASE NO. CV 15-5805-R |
| | ) |
| Plaintiff, | ) ORDER GRANTING DEFENDANTS' |
| | ) MOTION FOR SUMMARY JUDGMENT |
| v. | ) |
| | ) |
| CHARLES L. BECK; et al., | ) |
| | ) |
| Defendants. | ) |

Before the Court is Defendants' Motion for Summary Judgment, filed on November 19, 2018. (Dkt. No. 102). Having been thoroughly briefed by the parties, this Court took the matter under submission on December 12, 2018.

Plaintiff Wayne William Wright ("Plaintiff") seeks relief in connection with the seizure and destruction of certain firearms formerly in his possession by the Los Angeles Police Department ("LAPD") and other employees and agents of Defendant City of Los Angeles (collectively, "Defendants"). In 2004, Plaintiff was allegedly the target of a "sting" operation conducted at a gun show where he displayed part of his firearm collection. Following this operation, LAPD searched Plaintiff's storage unit located in Ventura County and discovered an unregistered assault weapon. Plaintiff pled guilty to misdemeanor possession of an unregistered assault weapon and was sentenced to probation. In addition, hundreds of Plaintiff's firearms,

accessories, and other property were seized by LAPD.  After completing his probation, Defendant applied to the California Department of Justice for return of his property, which was still in LAPD's possession.  In total, 114 items of seized property were released to Plaintiff by court order, and the remaining items (except for a small number placed on investigative hold) were ultimately destroyed by LAPD on or around June 12, 2014 pursuant to an order from the Los Angeles County Superior Court.  Plaintiff asserts that Defendants refused to return his firearms and then destroyed them deliberately, pursuant to an illegal policy, and in violation of state law, prior court orders, and Plaintiff's Constitutional rights under the Fourth and Fourteenth Amendments.  Defendants contend that the property was seized, held, and later destroyed in accordance with California law, LAPD policy, and the above-referenced final disposition order. Defendants now seek summary judgment on all claims.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To meet its burden of proof on a motion for summary judgment, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the opposing party has the burden of producing competent evidence and cannot rely on mere allegations or denials in the pleadings.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587.

///

///

**Local Rule 6-1**

As a preliminary matter, Defendants' Motion for Summary Judgment was not defective under Local Rule 6-1, as Plaintiff contends.  The Motion was timely filed on November 19, 2018.  Due to a clerical error, certain corrected exhibits were filed by Defendants the following day.  Moreover, there was no prejudice to Plaintiff that would justify striking the Motion.  Plaintiff obtained a one-week extension to file an opposition, yet two pleadings in support of the opposition were filed beyond the deadline, apparently because of a clerical error by Plaintiff's firm.  Plaintiff cannot possibly argue in good faith that he has been so prejudiced by Defendants' slightly late filing of three exhibits that the Motion should be stricken when portions of Plaintiff's own opposition were also filed a day late.

**Qualified Immunity**

Defendants assert that the individual named Defendants are entitled to qualified immunity.  The doctrine of qualified immunity provides "government officials breathing room to make reasonable but mistaken judgments;" it "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Ashcroft v. al-Kidd*, 563 U.S. 731,743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Qualified immunity applies "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Even if there is a question as to the legality of an officer's conduct, the Court may nevertheless find that the conduct was "objectively reasonable" for purposes of qualified immunity.  *See Graham v. Connor*, 490 U.S. 386, 397, 399 n.12 (1989) (objective reasonableness inquiry "may be relevant to the availability of the qualified immunity defense to monetary liability under § 1983"); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.").

Plaintiff's case is devoid of any evidence that the individual Defendants were "plainly incompetent" or knowingly violated the law through their handling of the seized property.  Rather, the record shows that the individual LAPD Defendants—Tompkins and Edwards—acted in

1   accordance with California law, LAPD policy, and court orders.  Furthermore, Plaintiff has

2   provided absolutely no evidentiary support for his speculative and conclusory allegation that the

3   other individual Defendants—Beck, Aubry, and Feur—had a role in promulgating or enforcing the

4   allegedly illegal policies by which his property was seized and some of it ultimately destroyed.

5   Accordingly, no genuine dispute of material fact exists as to the individual Defendants' right to

6   qualified immunity.

7   **Plaintiff's Fourteenth Amendment Due Process Claim**

8          When property is seized pursuant to a warrant, due process requires only that the law

9   enforcement agency "take reasonable steps to give notice that the property has been taken so the

10  owner can pursue available remedies for its return." *City of W. Covina v. Perkins*, 525 U.S. 234,

11  240 (1999).  The law enforcement agency has no obligation to inform the owner of those specific

12  remedies.  *Id.*  As the Supreme Court explained, "[o]nce the property owner is informed that his

13  property has been seized, he can turn to [] public sources to learn about the remedial procedures

14  available to him.  The City need not take other steps to inform him of his options." *Id.* at 241.

15         The record in this case clearly establishes that Plaintiff was given notice that his property

16  had been taken and that such notice was adequate to give Plaintiff the opportunity to pursue

17  available remedies for its return.  LAPD timely provided "Receipt for Property Taken into

18  Custody" (Form 10.10) notices to Plaintiff that identified the specific items seized both in

19  connection with his arrest and execution of the search warrants.  State remedies were available to

20  Plaintiff, and he used those processes to seek return of the seized property.  Plaintiff filed two

21  motions in state court for return of the seized property, one in 2007 that resulted in the release of

22  non-firearm property and another in 2011 that resulted in an order releasing 26 firearms.

23  Thereafter, in 2012, LAPD obtained a court order granting the release of a total of 114 items of

24  seized property, including those 26 firearms previously released.

25         Plaintiff does not dispute that he received notice of the seized property or that California

26  law provides adequate post-deprivation remedies but contends that he was owed additional process

27  beyond that mandated by the Supreme Court in *Perkins*.  Specifically, Plaintiff believes he should

28  have received separate notices (1) when LAPD determined that his proof of ownership with

respect to certain firearms was insufficient and (2) before LAPD sought a disposition order regarding the seized property still in LAPD's custody in late 2013.  Plaintiff cites to no authority in support of either proposition.  Moreover, Plaintiff's counsel made this very same argument before the Los Angeles County Superior Court in September 2018, which rejected it on the ground that it would be inconsistent with *Perkins* and California law.  As Judge Scott Gordon explained, "[n]otice is required only after the initial seizure."  Submitted Ruling Re: Complaint of Michel & Associates, P.C. at 7 (Sept. 18, 2018).

Plaintiff also contends that Defendants sought and obtained the December 2013 disposition order in secret by going to the Los Angeles County Superior Court, rather than the Ventura County Superior Court that had heard Plaintiff's motions for return of property and denied Defendants' 2011 request to destroy the firearms still in their possession.  However, it was plainly permissible under California law for Defendants to seek a disposition order in Los Angeles County rather than Ventura County.  "All property or things taken on a warrant must be retained by the officer in his custody, *subject to the order of the court to which he is required to return the proceedings before him*, or of any other court in which the offense in respect to which the property or things taken is triable."  Cal. Pen. Code § 1536 (emphasis added).  As the court that issued the warrants ordering seizure of the property, the Los Angeles County Superior Court was "the court to which [the officer] is required to return the proceedings before him."

LAPD was also required by department policy to seek the disposition order from the Los Angeles County Superior Court.  LAPD Manual Volume 4, Section 565.10, which addresses disposition of evidence seized pursuant to a search warrant states, "[w]hen circumstances are such that a court order for disposition is needed, the investigating officer shall prepare an original and two copies of a Court Order for Search Warrant Property, Form 10.18, and present them for signature to the magistrate who issued the warrant, or to the presiding judge when the magistrate is unavailable."  Thus, Defendants complied with both California law and LAPD policy by returning to the Los Angeles County Superior Court to obtain the disposition order, and Plaintiff has provided no authority requiring additional process before final disposition of seized property in police custody.  Accordingly, there is no genuine dispute of material fact, and Defendants are

1    entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment Due Process claim.

2    **Plaintiff's Fourth Amendment Unreasonable Search & Seizure Claim**

3          The Fourth Amendment protects "[t]he right of the people to be secure in their persons,

4    houses, papers, and effects, against unreasonable search and seizures…" U.S. Const. amend. IV.

5    In determining whether a seizure violates the Fourth Amendment, the Court must conduct a fact-

6    specific inquiry in which it weighs the nature of the individual's interest in the property against the

7    government's interest in seizing it. *United States v. Place*, 462 U.S. 696, 703 (1983). The

8    ultimate question in a case such as this is whether the law enforcement agency's conduct was

9    "reasonable." *See, e.g.*, *id.* As Plaintiff concedes, the initial seizure of the firearms and related

10   items was lawful under the Fourth Amendment—the first seizure was made incident to arrest, and

11   the subsequent seizures were performed pursuant to validly obtained search warrants. *See Weeks*

12   *v. United States*, 232 U.S. 383, 392 (1914) (holding that the right to seize fruits of the crime

13   incident to arrest is "always recognized").

14         Even when a seizure is initially reasonable, "a seizure lawful at its inception can

15   nevertheless violate the Fourth Amendment because the manner of execution unreasonably

16   infringes possessory interests protected by the Fourth Amendment[.]" *United States v. Jacobsen*,

17   466 U.S. 109, 124 (1984). "A seizure is justified under the Fourth Amendment only to the extent

18   that the government's justification holds force. Thereafter, the government must cease the seizure

19   or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). Thus, an

20   initially lawful seizure may later become unlawful due to an unreasonable refusal to release the

21   seized property or an unreasonable decision to dispose of the property.

22         The record shows that LAPD's refusal to return those seized firearms that had not been

23   released by court order was supported by reasonable justification. An important factor in

24   determining the nature of an individual's possessory interest under the Fourth Amendment is

25   "whether the individual consented to a seizure and search." *U.S. v. Sullivan*, 797 F.3d 623, 633

26   (9th Cir. 2015) (citations omitted). *See also Puckett v. United States*, 556 U.S. 129, 137 (2009)

27   ("[P]lea bargains are essentially contracts."); *Cuero v. Cate*, 850 F.3d 1019, 1024 (9th Cir. 2017)

28   (plea bargains are contracts under California law). "Where a person consents to search and

1    seizure, no possessory interest has been infringed because valid consent, by definition, requires

2    voluntary tender of property." *Sullivan*, 797 F.3d at 633 (internal quotations omitted).  It is

3    undisputed that Plaintiff expressly agreed, as part of his plea bargain, that LAPD would retain

4    possession of the seized firearms unless and until Plaintiff provided sufficient proof of ownership

5    under LAPD policy.  It is also undisputed that Plaintiff entered into the plea agreement knowingly

6    and voluntarily.  Moreover, the property could only be returned to Plaintiff by way of a court

7    order.  As discussed in the preceding section, where law enforcement officers seize property

8    pursuant to a warrant, they do so on behalf of the court and cannot legally return that property

9    until a court orders its release.  *People v. Superior Court*, 28 Cal. App. 3d 600, 608 (1972); Cal.

10   Pen. Code §§ 1528, 1536.  Accordingly, LAPD's refusal to return certain items of seized property

11   in the absence of a court order to do so was reasonable as a matter of law.

12        LAPD's destruction of those items remaining in its custody in 2014 was likewise

13   reasonable under the Fourth Amendment.  No court order released to Plaintiff any of the firearms

14   that were ultimately destroyed, and Plaintiff does not dispute this.  After holding the property for

15   roughly nine years, LAPD obtained a court order on December 16, 2013 authorizing the release of

16   one additional firearm to Plaintiff and releasing the remaining items to LAPD, five of which were

17   subject to LAPD investigative hold and the rest released for final disposition.  Moreover, as

18   discussed above, Defendants complied with LAPD policy by seeking the disposition order from

19   the court that originally issued the warrant rather than the court that had previously ruled on

20   Plaintiff's motions for return of property.

21        Plaintiff asserts correctly that he did not waive the benefit of all state-law provisions

22   relevant to the release of his property by agreeing to a plea bargain; however, he has cited to no

23   law that would have required LAPD to release the remaining items to him or that would invalidate

24   the order of the Los Angeles County Superior Court authorizing disposition of the remaining

25   unclaimed firearms.  Although California Evidence Code Section 637 creates a presumption that

26   "[t]he things which a person possesses are presumed to be owned by him," that presumption only

27   applies in actions before a California court.  Cal. Evid. Code § 300.  The Evidence Code does not

28   apply to LAPD determinations of ownership or its disposition of seized property pursuant to a

court order.  Plaintiff submitted affidavits and other evidence regarding his allegedly lawful ownership, but that evidence was found to be unconvincing by LAPD except as it applied to the items that were released to Wright.  However, neither California law nor LAPD policy requires a law enforcement agency to accept a person's sworn affidavits as conclusive proof that he or she owns seized property.

Defendants have succeeded in showing that Plaintiff lacks sufficient evidence to carry his ultimate burden at trial of proving that Defendants' refusal to return seized property or the destruction of said property was unreasonable under the Fourth Amendment.  Plaintiff has not produced competent evidence to the contrary.  Accordingly, there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim.

**Plaintiff's Failure to Train Claim**

Liability under 42 U.S.C. § 1983 may be imposed on a local government when its official policies or customs cause government employees to violate another's constitutional rights.  *See, e.g.*, *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Plaintiff's failure to train claim is derivative of his claims under the Fourth and Fourteenth Amendments.  Because summary judgment is granted in favor of Defendants on those claims, Plaintiff's failure to train claim must also fail as a matter of law.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is GRANTED.  (Dkt. No. 102).

Dated: December 19, 2018.

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE