# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE WILLIAM WRIGHT<br><br>                 Plaintiff,<br><br>     v.<br><br>CHARLES L. BECK; MICHAEL N.<br>FEUER; HEATHER AUBRY; RICHARD<br>TOMPKINS; and JAMES EDWARDS;<br>CITY OF LOS ANGELES; and DOES 1-50,<br><br>                 Defendants. | **CASE NO.:  2:15-cv-05805-R-PJWx**<br>[***Assigned to the Hon. Manuel L. Real***]<br><br>**FINDINGS OF FACT AND<br>CONCLUSIONS OF LAW RE<br>DEFENDANTS' MOTION FOR<br>SUMMARY JUDGMENT** |

Following this Court's grant of Summary Judgment in favor of Defendant on all claims on December 19, 2018 (Dkt. 179), Defendants respectfully submit the following Proposed Statement of Uncontroverted Facts and Conclusions of Law.

# I. STATEMENT OF UNCONTROVERTED FACTS

| No. | Uncontroverted Facts | Supporting Evidence |
|-----|----------------------|---------------------|
| 1 | On September 16, 2004, LAPD arrested Plaintiff after he agreed to sell, and gave possession of, a firearm to undercover Detective Edwards. | Declaration of Detective Richard Tompkins ("Tompkins Decl." at ¶3; Declaration of Patricia Ursea ("Ursea Decl.") at ¶2, Ex. A at p.4<br><br>Plaintiff's Genuine Disputes of Material Facts (PGDM) Dkt. 126-1) at p.2 (SUF 1) |
| 2 | Incident to that arrest, LAPD seized from Plaintiff's vehicle several thousand rounds of live ammunition, shotguns, and rifles. | Tompkins Decl. at ¶4; Declaration of James Edwards ("Edwards Decl.") at ¶4<br><br>PGDM, Dkt 26-1 at p. 2 (SUF 2) |
| 3 | After the arrest, LAPD obtained search warrants from Los Angeles Superior Court Judge Melvin Sandvig to search Plaintiff's house and various other locations. | Tompkins Decl. at ¶5; Defendants' Request for Judicial Notice, filed concurrently, ("D-RJN") Ex. |

| No. | Uncontroverted Facts | Supporting Evidence |
|-----|----------------------|---------------------|
|     |                      | A<br>PGDM, Dkt 26-1 at p. 2 (SUF 3) |
| 4   | In executing the search warrants issued by Judge Sandvig, LAPD seized a total of 463 firearms and other related items, including gun parts, ammunition, and documents related to firearm sales. | Tompkins Decl. at ¶7<br><br>PGDM, Dkt 26-1 at p. 2 2-3 (SUF 3) |
| 5   | LAPD issued to Plaintiff "Receipt[s] for Property Taken Into Custody" (Form 10.10.00) that listed all items seized by LAPD. | Tompkins Decl. at ¶8; Edwards Decl. at ¶7; D-RJN, Ex. A<br><br>PGDM, Dkt 26-1 at p.3 (SUF 5) |
| 6   | Ventura County District Attorney's Office filed three felony charges against Plaintiff. | D-RJN, Ex. B at CITY000123; Ursea Decl. at ¶2, Ex. A at p. 6<br><br>PGDM, Dkt 26-1 at p. 3 (SUF 6) |
| 7   | Plaintiff knowingly and voluntarily entered into a deal in which he pled guilty to illegal possession of an assault rifle under then-California Penal Code § 12280(b) (which was reduced to a misdemeanor) in exchange for the other charges being dismissed. | D-RJN, Ex. C; Ursea Decl. at ¶2, Ex. A at p. 14<br><br>PGDM, Dkt 26-1 at p.3 (SUF 7) |

| No. | Uncontroverted Facts | Supporting Evidence |
|-----|---------------------|---------------------|
| **8** | One of the conditions of the plea deal was that any seized firearm that was not destroyed as "illegal" would "be sold once proof of ownership has been provided pursuant to Los Angeles Police Department Policy". | D-RJN, Ex. C; Ursea Decl. at ¶2, Ex. A at p. 14<br>Ursea Decl. at ¶2, Ex. A at pp. 10-11; 15-16<br><br>PGDM, Dkt 26-1 at p.4 (SUF 8) |
| **9** | In December 2006, Plaintiff filed in Ventura County Superior Court a motion to return all firearm and non-firearm property seized by LAPD ("2006 Property Return Motion"). | D-RJN, Ex. D<br><br>PGDM, Dkt 26-1 at p.4 (SUF 9) |
| **10** | Ventura County Superior Court Judge Rebecca S. Riley (the same judge who sentenced Plaintiff in August 2006) held a hearing on Plaintiff's motion on January 16, 2007. | D-RJN, Ex. B; Ursea Decl. at ¶2, Ex. A at p.20<br><br>PGDM, Dkt 26-1 at p.5-6 (SUF 11) |
| **11** | On January 16, 2007, Judge Riley issued a ruling ordering the release of only non-firearm items. | D-RJN, EX. F<br><br>PGDM, Dkt 26-1 at p.6 (SUF 12) |
| **12** | On August 31, 2011, Wright filed a Motion to Return Property in Ventura County Superior Court ("2011 Property Return Motion"). | D-RJN, Ex. G<br><br>PGDM, Dkt 26-1 at p.7 (SUF 15) |

| No. | Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| **13** | Plaintiff filed a Reply in support of his 2011 Property Return Motion and attached to it a document entitled "Affidavit of Wayne W. Wright." | D-RJN, Ex. I<br><br>PGDM, Dkt 26-1 at p.7-8 (SUF 17) |
| **14** | On September 29, 2011, Ventura County Superior Court Judge Ryan J. Wright conducted a hearing on Plaintiff's motion. | D-RJN, Ex. B; Ursea Decl. at ¶2, Ex. A at p.39<br><br>PGDM, Dkt 26-1 at p.8 (SUF 18) |
| **15** | On October 17, 2011, Judge Wright signed an order authorizing the release of the 26 firearms. | D-RJN, Ex. J; Ursea Decl. at ¶2, Ex. A at p.42<br><br>PGDM, Dkt 26-1 at p.8 (SUF 19) |
| **16** | On April 4, 2012, Judge Sandvig (the judge who had issued the search warrants in 2004) signed a disposition order (Form 10.18.00) authorizing release of 114 items. | D-RJN, Ex. K<br><br>PGDM, Dkt 26-1 at p.9 (SUF 24) |
| **17** | Plaintiff picked up items released in Judge Sandvig's 2012 Order in several batches, in April and August 2012, and January 2013. | Ursea Decl. at ¶2, Ex. A at pp.45-47; Edwards Decl. at ¶35, Ex. D at CITY000649-693<br><br>PGDM, Dkt 26-1 at p.9 (SUF 25) |
| **18** | In December 16, 2013, Judge Sandvig signed an order for disposition (Form 10.18.00), which | D-RJN, Ex. L<br>PGDM, Dkt 26-1 at p.9-10 |

FINDINGS OF FACT AND CONCLUSIONS OF LAW

| No. | Uncontroverted Facts | Supporting Evidence |
|-----|----------------------|---------------------|
|     | authorized the release of one additional firearm to Plaintiff; (2) authorized the remaining items to be released to LAPD, five subject to investigative hold (e.g., stolen firearms), and the rest for disposition. | (SUF 27) |
| 19  | Firearms authorized for disposition under the December 2013 order that were not under investigative hold were smelted in the ordinary course on June 12, 2014. One firearm under investigative hold was smelted after June 12, 2014 when LAPD lifted the investigative hold. | Edwards Decl. at ¶32, ¶33<br><br>PGDM, Dkt 26-1 at p.10<br>(SUF 28) |
| 20  | The Los Angeles City Attorney's Office, including Defendants Aubry and Feuer, had no role in reviewing the proof of ownership evidence, making determinations as to its sufficiency, or the decisions as to which firearms should be retained and/or ultimately destroyed.<br>There is no evidence that Defendant Beck had any involvement. | Declaration of Heather Aubry at ¶3; Edwards Decl. at ¶22; Tompkins Decl. at ¶17<br><br>*Celotex Corp. v Catrett*, 477 U.S. 317, 323, 325 (1986) (Defendants are under no obligation to disprove Plaintiff's case); *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (Defendants need only "point[] out" to the Court an "absence of evidence" supporting Plaintiff's claim or claims.) (Citations omitted). |

| No. | Uncontroverted Facts | Supporting Evidence |
|-----|---------------------|---------------------|
|     |                     | PGDM, Dkt 26-1 at p.10-11 (SUF 29) |

## II. CONCLUSIONS OF LAW

### A. Defendants Named In Their Individual Capacity Are Entitled To Qualified Immunity.

1. The doctrine of qualified immunity provides "government officials breathing room to make reasonable but mistaken judgments;" it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731,743 (2011) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

2. Qualified immunity applies "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

3. Even if there is a question as to the legality of an officer's conduct, the Court may nevertheless find that the conduct was "objectively reasonable" for purposes of qualified immunity. *See Graham v. Connor*, 490 U.S. 386, 397, 399 n.12 (1989) (objective reasonableness inquiry "may be relevant to the availability of the qualified immunity defense to monetary liability under § 1983"); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted.").

4. Defendants Edwards and Tompkins are entitled to qualified immunity because they acted in accordance with California law, LAPD policy, and court orders.

5. Defendant[s] Aubry, Feuer and Beck are entitled to qualified immunity because Plaintiff has provided no evidence that they played had a role in promulgating or enforcing the allegedly illegal policies by which his property was seized and some of it ultimately destroyed.

**B. Plaintiff's Fourteenth Amendment Rights Were Not Violated.**

6.   For seizures performed pursuant to warrant, due process requires only notice of seized items and available post-seizure state law remedies. *City of West Covina v. Perkins*, 525 U.S. 234, 240 (1999). The law enforcement agency has no obligation to inform the owner of those specific remedies. *Id*. As the Supreme Court explained, "[o]nce the property owner is informed that his property has been seized, he can turn to [] public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options." *Id*. at 241. Plaintiff received notice the seized items and later filed two property return motions under California law (which resulted in orders releasing some, but not all, of the items).

7.   In September 2018, the Los Angeles County Superior Court rejected the argument that additional notice is required before LAPD seeks a disposition order as inconsistent with *Perkins* and California law. As Judge Scott Gordon explained, "[n]otice is required only after the initial seizure." Submitted Ruling Re: Complaint of Michel & Associates, P.C. at 7 (Sept. 18, 2018).

8.   The California Penal Code gives law enforcement the option to obtain disposition orders either from the court that issued the original search warrants or a different court with jurisdiction over the property at issue. Cal. Pen. Code §1536. LAPD obtained the 2014 disposition order from Los Angeles Superior Court Judge Sandvig, who issued the original search warrants.

9.   LAPD Manual Volume 4, Section 565.10, which addresses disposition of evidence seized pursuant to a search warrant states, "[w]hen circumstances are such that a court order for disposition is needed, the investigating officer shall prepare an original and two copies of a Court Order for Search Warrant Property, Form 10.18, and present them for signature to the magistrate who issued the warrant, or to the presiding judge when the magistrate is unavailable." Thus, Defendants complied with both California law and LAPD policy by returning to the Los Angeles County Superior Court to obtain the disposition order, and Plaintiff has provided no authority requiring additional process

before final disposition of seized property in police custody.

10.  Plaintiff does not dispute that he received notice of the seized property or that California law provides adequate post-deprivation remedies.

11.  Defendants complied with both California law and LAPD policy by returning to the Los Angeles County Superior Court to obtain the disposition order, and Plaintiff has provided no authority requiring additional process before final disposition of seized property in police custody.

12.  Accordingly, there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment Due Process claim.

## C.  Plaintiff's Fourth Amendment Rights Were Not Violated.

13.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures…" U.S. Const. amend. IV.

14.  In determining whether a seizure violates the Fourth Amendment, the Court must conduct a fact specific inquiry in which it weighs the nature of the individual's interest in the property against the government's interest in seizing it. *United States v. Place*, 462 U.S. 696, 703 (1983).  The ultimate question in a case such as this is whether the law enforcement agency's conduct was "reasonable." *See, e.g., id.*

15.  Even when a seizure is initially reasonable, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because the manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[.]" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017).  Thus, an initially lawful seizure may later become unlawful due to an unreasonable refusal to release the seized property or an unreasonable decision to dispose of the property.

16. An important factor in determining the nature of an individual's possessory interest under the Fourth Amendment is "whether the individual consented to a seizure and search." *U.S. v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015) (citations omitted). *See also Puckett v. United States*, 556 U.S. 129, 137 (2009) ("[P]lea bargains are essentially contracts."); *Cuero v. Cate*, 850 F.3d 1019, 1024 (9th Cir. 2017) (plea bargains are contracts under California law).

17. Where a person consents to search and seizure, no possessory interest has been infringed because valid consent, by definition, requires voluntary tender of property." *Sullivan*, 797 F.3d at 633 (internal quotations omitted).

18. Absent a court order, law enforcement cannot release firearms seized pursuant to a warrant. Cal. Penal Code §§ 1528, 1536. None of the court orders in this case released the items that LAPD retained or destroyed.

19. Although California Evidence Code Section 637 creates a presumption that "[t]he things which a person possesses are presumed to be owned by him," that presumption only applies in actions before a California court. Cal. Evid. Code § 300. The Evidence Code does not apply to LAPD determinations of ownership or its disposition of seized property pursuant to a court order.

20. Plaintiff submitted affidavits and other evidence regarding his allegedly lawful ownership, but that evidence was found to be unconvincing by LAPD except as it applied to the items that were released to Wright. However, neither California law nor LAPD policy requires a law enforcement agency to accept a person's sworn affidavits as conclusive proof that he or she owns seized property.

21. LAPD's refusal to return certain items of seized property in the absence of a court order to do so was reasonable as a matter of law.

22. Accordingly, there is no genuine dispute of material fact, and Defendants are entitled to judgment as a matter of law on Plaintiff's Fourth Amendment claim.

**D. Plaintiff's "Failure to Train" Claim Fails As a Matter of Law**

23. Liability under 42 U.S.C. section 1983 may be imposed on a local government

only when its official policies or customs cause their employees to violate another's constitutional rights. *See, e.g., Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Plaintiff's failure to train claim is derivative of his claims under the Fourth and Fourteenth Amendments. Because summary judgment is granted in favor of Defendants on those claims, Plaintiff's failure to train claim must also fail as a matter of law.

Dated: January 30, 2019

_____

The Honorable Manuel L. Real
UNITED STATES DISTRICT COURT JUDGE