C.D. Michel – SBN 144258
Joshua Robert Dale – SBN 209942
Anna M. Barvir – SBN 268728
Scott M. Franklin – SBN 240254
MICHEL & ASSOCIATES, P.C.
180 E. Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
cmichel@michellawyers.com
jdale@michellawyers.com

Attorneys for Plaintiff
Wayne William Wright

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| WAYNE WILLIAM WRIGHT,<br><br>                              Plaintiff,<br><br>            vs.<br><br>CHARLES L. BECK; MICHAEL N. FEUER; HEATHER AUBRY; RICHARD TOMPKINS; JAMES EDWARDS; CITY OF LOS ANGELES; and DOES 1 through 50,<br><br>                              Defendants. | Case No.: 2:15-cv-05805-R-PJW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES**<br><br>[Filed concurrently with Declarations of Anna M. Barvir, Joshua R. Dale, Scott M. Franklin, Wayne W. Wright; Exhibits 1-23]<br><br>Date:         April 1, 2019<br>Time:         10:00 a.m.<br>Courtroom:  880<br>Judge:        Hon. Manuel Real |

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

# TABLE OF CONTENTS

**Page**

Table of Contents .................................................................................................. ii

Table of Authorities ............................................................................................ iv

Introduction ........................................................................................................... 1

Argument ................................................................................................................ 1

I.    The City Is Not Entitled to a Fee Award Under Section 1988 Because
      Wright's Action Was Not Frivolous .............................................................. 1

      A.    That Wright Survived Two Motions to Dismiss and an Appeal to the
            Ninth Circuit Demonstrates That His Claims Were Not Wholly
            Without Merit ......................................................................................... 2

      B.    Wright's Claims Were Not Frivolous Despite This Court's Ruling on
            the City's Motion for Summary Judgment ............................................. 4

            1.    Wright's Claims Were Not Frivolous Despite the Court's
                  Holding That Defendants Were Entitled to Qualified Immunity . 4

                  a.    Wright reasonably believed that neither Tompkins or
                        Edwards were entitled to qualified immunity. ................. 4

                  b.    Wright reasonably believed that Aubry, Feuer, and Beck
                        were not entitled to qualified immunity. ......................... 6

            2.    Wright's Pursuit of the Fourteenth Amendment Claim Was
                  Not Frivolous; It Was Based on a Good-faith Argument That
                  the Court Rejected ....................................................................... 7

            3.    Wright's Pursuit of the Fourth Amendment Claim Was Not
                  Frivolous; It Was Based on a Good-faith Argument That the
                  Court Rejected ........................................................................... 10

      C.    The City Has Not Met Its Burden to Show That Wright's Failure to
            Train Claim Was Frivolous ................................................................. 12

      D.    If Any of Wright's Claims Ever Became Frivolous, It Was Not Until
            Long After the City Contends ............................................................. 13

II.   Should the Court Find That the City Has Met Its High Burden Under 42
      U.S.C. §1988, It Should Nonetheless Exercise Its Discretion to Deny All
      or Most of the City's Fee Claim .................................................................. 14

      A.    The Court Should Not Grant Any Fee Award to the City .................... 15

            1.    The Court Should Deny the City's Request in Its Entirety
                  Because the City Has Not Proven Which Hours Were
                  *Exclusively S*pent on its Defense of Non-frivolous Claims ........ 15

2.   The Court Should Deny the City's Request in its Entirety Because It Is "Outrageously Excessive" ...................................... 15

a.   City's claimed hourly rates are inconsistent with the rates of similarly situated legal professionals—including those within the City Attorney's own office. ............................. 16

b.   The City seeks nearly $750,000 for just a few months' work; even absent sufficient billing records, the excessiveness of such a fee claim is patent. ..................... 20

B.   Should the Court Exercise Its Discretion to Award Some Fees, It Should Substantially Reduce the Award ................................................ 23

1.   Granting the City's Request Would Expose Wright to Financial Ruin; That Is Not the Intent of Section 1988 ............. 23

2.   As Explained Above, the City's Fee Claim Is Unreasonable ..... 25

Conclusion ................................................................................................. 25

TABLE OF CONTENTS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Antuna v. County of Los Angeles*,
No. 14-cv-5600, 2016 U.S. Dist. LEXIS 189152 (C.D. Cal. Mar. 8, 2016) ................................................................................................. 18

*Barry v. Fowler*,
902 F.2d 770 (9th Cir. 1990) ........................................................ 1, 4

*Blum v. Stenson*,
465 U.S. 886 (1984) ......................................................................... 16

*Boddie v. Connecticut*,
401 U.S. 371 (1987) ........................................................................... 8

*Brown v. Stackler*,
612 F.2d 1057 (7th Cir. 1980) ........................................................ 16

*Case v. Unified Sch. Dist. No. 233*,
157 F.3d 1243 (10th Cir. 1998) ...................................................... 16

*Cervantes v. County of Los Angeles*,
No. 12-cv-09889, 2016 WL 756456 (C.D. Cal. Feb. 24, 2016) .......... 18

*Charves v. W. Union Tel. Co.*,
711 F.2d 462 (1st Cir. 1983) .......................................................... 23

*Christiansburg Garment Co. v. EEOC*,
434 U.S. 412 (1978) .............................................................. 2, 6, 13

*City of West Covina v. Perkins*,
525 U.S. 234 (1999) .................................................................... 9, 10

*Dang v. Cross*,
422 F.3d 800 (9th Cir. 2005) ..................................................... 16, 19

*Eng v. County of Los Angeles*,
2010 WL 11509152 (C.D. Cal. Nov. 18, 2010) ................................ 2

*Envtl. Def. Fund, Inc. v. Reilly*,
1 F.3d 1254 (D.C. Cir. 1993) ......................................................... 16

*Farris v. Cox*,
    508 F. Supp. 222 (N.D. Cal. 1981) ..................................................... 16

*Ferland v. Conrad Credit Corp.*
    244 F.3d 1145 (9th Cir. 2001) ........................................................... 14

*Fox v. Vice*,
    563 U.S. 826 (2011)............................................................... 2, 14, 15

*Franceschi v. Swartz*,
    57 F.3d 828 (9th Cir. 1995) ............................................................ 3, 4

*Galen v. Cty. of Los Angeles*,
    477 F.3d 652 (9th Cir. 2007) ....................................................*passim*

*Gates v. Deukmejian*,
    987 F.2d 1392 (9th Cir. 1992) ............................................. 14, 20, 25

*Hallstrom v. City of Garden City*,
    991 F.2d 1473 (9th Cir 1993) ............................................................. 6

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)........................................................................... 5

*Harris v. Maricopa Cty. Super. Ct.*,
    631 F.3d 963 (9th Cir. 2011) ........................................................... 15

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
    707 F.3d 1114 (9th Cir. 2013) ........................................................... 6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)......................................................................... 14

*Houston v. Inland Marine Indus.*,
    Nos. C-81-4729 and C-81-3115, 1982 WL 459 (N.D. Cal. June 25,
    1982) ............................................................................................... 16

*In re HPL Technologies, Inc. Securities Litigation*,
    366 F. Supp. 2d 912 (N.D. Cal. 2005)........................................ 19, 20

*Hughes v. Rowe*,
    449 U.S. 5 (1980)............................................................................... 2

*J.N. v. Hendrickson*,
    No. 14-cv-02428, 2017 WL 3498608 (C.D. Cal. Aug. 15, 2017) ....... 19

*Jensen v. Stangel*,
762 F.2d 815 (9th Cir. 1985) .................................................................. 2

*Jordan v. Multnomah County*,
815 F.2d 1258 (9th Cir. 1987) ............................................................ 17

*Jt. Anti-Fascist Refugee Comm. v. McGrath*,
341 U.S. 123 (1951) ............................................................................. 9

*Klein v. City of Laguna Beach*,
No. 08-cv-1368, 2016 WL 9774705, 7-9 (C.D. Cal. Aug. 25, 2016)............ 18, 19

*Lavan v. City of Los Angeles*,
693 F.3d 1022 (9th Cir. 2012) .......................................................... 8, 10

*Legal Servs. of N. Cal., Inc. v. Arnett*,
114 F.3d 135 (9th Cir. 1997) ............................................................. 1, 8

*Lewis v. Kendrick*,
944 F.2d 949 (1st Cir. 1991) .............................................................. 16

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .................................................................... 5, 8, 10

*Lopez v. Gordon*,
No. 14-cv-07791, 2016 WL 6998563 (C.D. Cal. Nov. 28, 2016) ...................... 19

*Martin v. Cty. of Los Angeles*,
No. 16-cv-02809, 2017 WL 3508735 (C.D. Cal. June 27, 2017)...................... 15

*Mathews v. Eldridge*,
424 U.S. 319 (1976).......................................................................... 5, 9

*Memphis Light, Gas & Water Div. v. Craft*,
436 U.S. 1 (1978)................................................................................. 9

*Miller v. L.A. Cty. Bd. of Educ.*,
827 F.2d 617 (9th Cir. 1987) ............................................................. 23

*Milton H. Green Archives, Inc. v. CMG Worldwide, Inc.*,
No. 05-cv-02200, 2009 WL 10669361 (C.D. Cal. Mar. 25, 2009) ................ 15

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989).......................................................................... 23

TABLE OF AUTHORITIES

*Neidermeyer v. Caldwell*,
  No. 14-cv-1209, 2016 WL 10935023 (C.D. Cal. Mar. 29, 2016) ....................... 17

*Park v. Carlyle/Galaxy San Pedro, L.P.*,
  No. 09-cv-00793, 2009 WL 10669742 (C.D. Cal. Oct. 8, 2009) ......................... 20

*Parks v. Watson*,
  716 F.2d 646 (9th Cir. 1983) ................................................................................. 2

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ........................................................................................... 14

*Rodriguez v. Cty. of Los Angeles*,
  96 F. Supp. 3d 1012 (C.D. Cal. 2014) ................................................................. 19

*Saman v. Robbins*,
  173 F.3d 1150 (9th Cir. 1999) ............................................................................... 2

*Shedlin v. Balagot*,
  No. 14-cv-03664, 2016 WL 2732133 (C.D. Cal. May 9, 2016) ........................... 19

*Sorenson v. Mink*,
  239 F.3d 1140 (9th Cir. 2001) ....................................................................... 14, 25

*Spangler v. County of Ventura*,
  No. 16-cv-09174, 2018 WL 5304767 (C.D. Cal. Oct. 24, 2018) ............. 18, 19, 24

*Tahfs v. Proctor*,
  316 F.3d 584 (6th Cir. 2003) ................................................................................. 1

*Taylor AG Indus. v. Pure-Gro*,
  54 F.3d 555 (9th Cir. 1995) ......................................................................... 3, 7, 10

*Tutor-Saliba Corp. v. City of Hailey*,
  452 F.3d 1055 (9th Cir. 2006) ............................................................................ 1, 8

*United States v. $28,000 in Currency*,
  802 F.3d 1100 (9th Cir. 2015) ............................................................................. 18

*United States v. Place*,
  462 U.S. 696 (1983) ........................................................................................... 10

*Wright v. City of Los Angeles*,
  L.A. Super. Ct. Case No. BC 606993 ................................................................. 20

TABLE OF AUTHORITIES

*Young v. Wolfe*,
  No. 07-cv-03190, 2017 WL 3184167 (C.D. Cal. July 26, 2017) ........................ 19

*Zamani v. Carnes*,
  491 F.3d 990 (9th Cir. 2007) ................................................................. 12

**Statutes**

42 U.S.C. § 1983 ......................................................................*passim*

42 U.S.C. § 1988 ......................................................................*passim*

Cal. Evid. Code § 637 .......................................................................... 11

Cal. Pen. Code § 1536......................................................................... 10, 11

**Other Authorities**

U.S. Const. amend. II ........................................................................... 17

U.S. Const. amend. IV ....................................................................... 10, 12

U.S. Const. amend. XIV .................................................................... 7, 8, 9

viii

**INTRODUCTION**

Dismissal of a plaintiff's 42 U.S.C. § 1983 action at the summary judgment stage "does not render his case per se frivolous" to justify the imposition of an attorneys' fee award. *Galen v. Cty. of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007). The City's motion for attorneys' fees, however, ignores that principle and argues that "[f]iling and continuing to prosecute a claim that has no legal or factual basis cannot be deemed anything other than frivolous." ECF No. 188 at 3.

The City's motion is based on several passages in this Court's order granting summary judgment against Wright, but those passages do not meet the City's high burden here. Indeed, this "court must . . . avoid 'post hoc reasoning" in analyzing whether a claim is frivolous. *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir. 2006). Because, Wright's arguments were reasonable given the current state of relevant law, and because his lawsuit was, *at minimum*, "a good faith effort to advance a novel theory under [the Ninth Circuit's] § 1983 jurisprudence[,]" *Legal Servs. of N. Cal., Inc. v. Arnett*, 114 F.3d 135, 141 (9th Cir. 1997), the Court should deny the City's motion in its entirety.

But even if the Court somehow finds that Wright's claims lacked merit, it should exercise its broad discretion to deny all or most of the City's "outrageously excessive" fee claim.

**ARGUMENT**

**I.    THE CITY IS NOT ENTITLED TO A FEE AWARD UNDER SECTION 1988 BECAUSE WRIGHT'S ACTION WAS NOT FRIVOLOUS**

Attorneys' fees may be awarded against an unsuccessful section 1983 plaintiff only "*in exceptional circumstances*." *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (emphasis added); *see also Tahfs v. Proctor*, 316 F.3d 584, 596 (6th Cir. 2003) (section 1988 fees should be awarded to defendants only in truly "egregious" cases). To that end, "the Supreme Court has established a high hurdle for prevailing defendants to clear before being awarded attorney fees under 42 U.S.C. § 1988[.]"

*Saman v. Robbins*, 173 F.3d 1150, 1158 (9th Cir. 1999). Indeed, under section 1988, a court may only "award attorney's fees to a defendant upon a finding that the plaintiff's action was frivolous[.]" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). "An action becomes frivolous when the result appears obvious or the arguments are wholly without merit." *Galen*, 477 F.3d 652, 666 (9th Cir. 2007) (citing *Christiansburg*, 434 U.S. at 422; *Hughes v. Rowe*, 449 U.S. 5, 14-15 (1980) (per curiam)). What's more, "[w]here a case presents novel or 'complex constitutional questions [ ] not easily resolved,' the standard for what constitutes a frivolous claim is heightened. *Eng v. County of Los Angeles*, 2010 WL 11509152 (C.D. Cal. Nov. 18, 2010) (citing *Parks v. Watson*, 716 F.2d 646, 664 (9th Cir. 1983)).

The City has come nowhere near meeting its extremely high burden of proving that "exceptional circumstances" justify a fee award—especially one for three-quarters of a million dollars. Wright had reasonable grounds to bring and to continue pursuit of his section 1983 claims during the entire course of this litigation. What's more, the City vigorously defended against Wright's claims as if they had merit. Indeed, there is no shortage of irony that the City seeks $723,830 in fees for more than 1,200 hours of work to defeat claims the City alleges Wright should have known were "frivolous" even without discovery. ECF No. 188 at 10. As discussed below, the City has not proved that Wright's claims were "wholly without merit," and it is not entitled to fees under 42 U.S.C. § 1988.

### A. That Wright Survived Two Motions to Dismiss and an Appeal to the Ninth Circuit Demonstrates That His Claims Were Not Wholly Without Merit

At bare minimum, the fact that Wright prevailed on two separate pleadings challenges strongly suggests that his suit was not frivolous. Such rulings indeed "suggest that [plaintiff's] claims were not without merit." *Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir. 1985) (citing *Hughes v. Rowe*, 449 U.S. 5, 15-16 (1980)). Because all but one of Wright's claims easily survived *two* separate pleadings

challenges, the City's contention that Wright "needed no discovery to know that there was no legal basis to support his speculative theories of liability," ECF No. 188 at 4 (emphasis omitted), simply makes no sense. Such illogical and baseless characterizations of Wright's suit are a theme of the City's motion.

And it is unfair to characterize Wright's claims as frivolous when the Court's interpretation of the legal principles at issue necessarily meant that Wright not submitted facts showing that the City violated his constitutional rights. For Wright *did* identify evidence and facts of material dispute under his proffered legal theory. That the Court did not embrace Wright's legal conclusions, and how that affected the record as it sat before the Court on summary judgment, does not make Wright's claims frivolous. The authorities are clear—even novel arguments that flout established law are not necessarily without merit. *Taylor AG Indus. v. Pure-Gro*, 54 F.3d 555, 563 (9th Cir. 1995). Here, because Wright survived *two* motions to dismiss, and only lost on summary judgment because of legal calls that went against him, the Court should give Wright's case at least as charitable an assessment as a case that asks a court to reconsider nearly nationwide precedent.

But despite Wright's successes at the pleadings stage, the City claims that, at some point, Wright should have realized his claims were baseless and dismissed them. ECF No. 188 at 4. The City relies on two cases: *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007) and *Franceschi v. Swartz*, 57 F.3d 828, 831-32 (9th Cir. 1995). *Id.* at 3. Both cases are distinguishable.

In *Galen*, the court held that the plaintiff failed to uncover any evidence of policy or practice necessary to support his *Monell* claim. 477 F.3d at 667. That is, he failed to prove the existence of any policy or practice responsible for his claimed harm. *Id.* The court thus concluded that, by the close of discovery, Galen should have known that he lacked evidence to support his *Monell* claim. *Id.* at 666.[1]

---

[1] As an aside, Wright had reason to believe that his *Monell* claim was viable at least as late as December 6, 2018, when the City last offered to stipulate to the

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Here, Wright relied on evidence that (1) the City ignores generally applicable state law when evaluating requests for return of property, ECF No. 126-1 at 21, ECF No. 127-6, Ex. EE at 74:25-76:2, 79:8-19; (2) the City Attorney's office makes arguments in court supporting LAPD's property ownership determinations without independent review, ECF No. 107 at 7, and (3) LAPD seeks disposition orders ex parte, without first notifying the property claimant, ECF No. 127-6, 154:19-156:2, 160:1-161:8. Wright is nothing like Galen. He uncovered and produced evidence of the offending policies and practices; Galen did not.

The *Franceschi* case is also distinguishable. First, the Ninth Circuit found that plaintiff, an attorney, "knew or should have known" that the judicial officers he sued had *absolute* immunity from suit. *Franceschi*, 57 F.3d at 832. The court thus held him to a higher standard because he was an attorney—Wright is not. Second, the legal issue there was *absolute judicial immunity*; a cut-and-dried defense fundamentally different from the highly circumstance-specific and unpredictable qualified immunity analysis at issue.

**B.    Wright's Claims Were Not Frivolous Despite This Court's Ruling on the City's Motion for Summary Judgment**

The City's motion alleges that Wright's lawsuit was frivolous based on several passages from the Court's December 19, 2018 order granting summary judgment. ECF No. 188 at 2-3. Whether evaluated collectively or individually, those passages do not present the "exceptional circumstances" that justify an award of fees. *See Barry*, 902 F.2d at 773.

**1.    Wright's Claims Were Not Frivolous Despite the Court's Holding That Defendants Were Entitled to Qualified Immunity**

**a.    Wright reasonably believed that neither Tompkins or Edwards were entitled to qualified immunity.**

The Court's finding that Wright had not shown that Tompkins and Edwards

---

existence of *Monell* liability. Dale Decl. ¶¶ 2-3; Exs. 18-19. It is hard to believe the City would offer to stipulate to a frivolous claim.

4

were "plainly incompetent" or had knowingly violated the law in maintaining and disposing Wright's property does not establish that Wright's claims against them were frivolous. ECF No. 179 at 2.

This Court held that "[q]ualified immunity applies 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Id.* at 3 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court also reasoned that the LAPD defendants "acted in accordance with California law, LAPD policy, and court orders," and found that they were entitled to qualified immunity. *Id.* at 3-4. But compliance with a non-federal authority does not, by itself, preclude a federal due process violation. The Supreme Court expressly said so in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982): "because minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Id*. at 432. Logic compels the same result, with greater force, for compliance with a local police policy or a state-court order. At minimum, it was *not frivolous* for Wright to contend that this Supreme Court authority means what it says and to believe that a court might agree that Edwards and Tompkins were *not* entitled to qualified immunity.

What's more, the Supreme Court long ago held that the right to due process requires a *meaningful* "opportunity to present [a] claim of entitlement" *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976). That is, "notice of the case against" must be given *before* the opportunity to be heard occurs. *Id.* Because it was undisputed that the detectives did not inform Wright that they intended to seek a court order to destroy his firearms before doing so, ECF No. 127-5 at 11, it was not unreasonable to rely on Supreme Court authority and to argue that Edwards and Tompkins knew they were violating Wright's well established due process rights.

Finally, it is crucial that the Court "resist the understandable temptation to

engage in post hoc reasoning by concluding that, because [Wright] did not ultimately prevail, his action must have been" without merit. *Christiansburg*, 434 U.S. at 421-22. So, again, the Court need not have found that Wright was correct about any of this. It is enough, for defeating this motion, that Wright can identify a colorable basis for the arguments that fueled his case.

### b.   Wright reasonably believed that Aubry, Feuer, and Beck were not entitled to qualified immunity.

The City next references the Court's holding that Beck, Feuer, and Aubry also enjoyed qualified immunity to bolster its claim that Wright litigated that issue frivolously. ECF No. 188 at 2. The Court held: "Plaintiff has provided absolutely no evidentiary support for his speculative and conclusory allegation that the other individual Defendants—Beck, Aubry, and Feuer—had a role in promulgating or enforcing the allegedly illegal policies by which his property was seized and some of it ultimately destroyed." ECF No. 179 at 2.

But Wright's argument against Feuer and Beck was reasonable given relevant binding authorities. Wright sued Feuer and Beck only in their official capacities, and a 1983 action for injunctive relief against an official-capacity defendant does not require evidence of personal involvement in the injury causing acts or omissions. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013). More important, such defendants cannot even "assert a qualified immunity defense to liability under [s]ection 1983." *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1482 (9th Cir 1993). Together, these authorities prove that Wright's position was *not* frivolous. Indeed, Wright had more than reasonable grounds to sue Beck and Feuer even if they had not directly participated in the conduct leading to Wright's harms.

As for Aubry, Wright did have plausible evidence that she was involved in the events proximately linked to Edwards and Tompkins' acquisition of the order permitting the destruction of Wright's property in December 2013. In addition to other circumstantial evidence, Aubry, Tompkins, and Edwards had, in their privilege

6
OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1   log, identified email interactions from September 11, 2013 with the subject line

2   "Wayne Wright[.]" Barvir Decl. ¶ 19, Ex. 22 at 3. Just five days later, Edwards

3   executed LAPD Form 10.06.00 that he attached to the property disposition order he

4   had signed by Judge Melvin Sandvig in December 2013. ECF. No. 18-14 at

5   CITY000371. Even if not conclusive, the timing of these communications is

6   suspicious. And it, at least, suggests that LAPD sought and received advice from

7   Aubry on obtaining the 2013 disposition order. It was *not* frivolous for Wright to

8   believe earnestly that a jury would draw an inference in his favor based on it.

9       Because Wright's arguments in opposition to applying the doctrine of

10  qualified immunity were reasonable despite this Court's ultimate ruling against

11  Wright, the City is not entitled to any fees. *See Galen*, 477 F.3d at 667.

12  **2.    Wright's Pursuit of the Fourteenth Amendment Claim Was Not Frivolous; It Was Based on a Good-faith Argument That the Court Rejected**

13

14      The City claims that Wright's Fourteenth Amendment due process claim was

15  frivolous and references the Court's finding that Wright "cites no authority"

16  supporting his argument that he was wrongfully denied due process. ECF No. 188 at

17  2 (quoting ECF No. 179 at 5). But a lack of authority does not necessarily make an

18  argument frivolous—courts are supposed to be generous in that analysis. Regardless,

19  Wright respectfully disputes the finding that he cited no authority in support of his

20  argument.

21      First, the bar to finding that a claim is frivolous is extraordinarily high. *See*

22  *Galen*, 477 F.3d at 667 (holding that a claim must be in direct conflict with clearly

23  established law to be "wholly without merit"). The Ninth Circuit's decision in

24  *Taylor AG Indus. v. Pure-Go*, 54 F.3d 555, 563 (9th Cir. 1995), is instructive. There,

25  the Ninth Circuit held that, even though "the [relevant] law ha[d] been clearly

26  established not only by the Supreme Court but seven other courts of appeal[,]" the

27  Ninth Circuit had "never spoken on this issue," so the allegedly frivolous "argument

28  cannot be characterized as wholly without merit." *Id.*

What's more, even when a party knows its claim "is unsupported by existing precedent, the Ninth Circuit has held that such claims are not frivolous if the plaintiff was "likely . . . launching a good faith effort to advance a novel theory under our § 1983 jurisprudence." *Legal Servs.*, 114 F.3d at 141. In short, even if more than half the nation's appellate courts, *and the Supreme Court*, disagree with a plaintiff's legal theory, and even if it is only *likely* that plaintiff's argument was a good faith attempt to challenge established law, a fee award is frowned upon. That's a high bar. And it is not met here. For it is not just *likely* that Wright was making a good-faith argument that he was entitled to notice before the LAPD sought a court order to dispose the seized property; he *was* making one. ECF No. 179 at 4-5. That the Court rejected it does not matter. *See Tutor-Saliba*, 452 F.3d at 1060 (warning that the "court must . . . avoid 'post hoc reasoning'" in analyzing whether a claim is frivolous).

Indeed, both the Supreme Court and Ninth Circuit have spoken on the issue, and each gave Wright reasonable legal grounds to pursue his due process claim. First, as Wright cited in opposition to the City's motion for summary judgment, ECF No. 126 at 8-10,[2] *Logan* holds that "the State may not ***finally*** destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." 455 U.S. at 434 (emphasis added). *Logan* is clear what this means: "What the Fourteenth Amendment . . . require[s] . . . 'is "an *opportunity* . . . granted at a meaningful time and in a meaningful manner" . . . "for [a] hearing appropriate to the nature of the case." ' " *Id.* at 437 (quoting *Boddie v. Connecticut*, 401 U.S. 371, 378 (1987) (citations omitted). Part of the holding that due process requires a *meaningful* opportunity to be heard, is the requirement of notice given *before* that

---

[2] The City grossly misrepresents the record here when it claims that Wright "could not identify a single case that supported his argument." ECF No. 188 at 3-4. For, as discussed in this section, ***Wright relied on several binding authorities***, including *Logan*, *Matthews*, and *Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012). But even if he had not, *the lack of any case clearly on point does not make a claim frivolous per se*. *Legal Servs.*, 114 F.3d at 141.

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

hearing. *Matthews*, 424 U.S. at 348-49. Here, the City did not dispute that it gave Wright no such notice before destroying his property, so Wright's due process claim had, at minimum, some basis in fact and law.

And even the Supreme Court's holding in *City of West Covina v. Perkins*, 525 U.S. 234 (1999) does little to cast doubt on the reasonableness of Wright's pursuit of his Fourteenth Amendment claim. For "due process, 'unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' It is 'compounded of history, reason, the past course of decisions.' " *Jt. Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162-63 (1951). Based on the circumstances of *this* case, Wright made a good-faith argument that the process held to be sufficient in *Perkins* was insufficient here. Recall, he argued that a plain reading of *Perkins* proves that the Court intended to address a narrow issue— whether a municipality must give actual notice of available property-return remedies to satisfy due process. ECF No. 126 at 10-11 (citing *Perkins*, 525 U.S. at 236). Here, the issue was about the notice required before a *final destruction of property rights*. Indeed, by the time the City obtained an order authorizing the melting of Wright's firearm collection, Wright had actual notice of and had already begun to avail himself of state-law remedies under section 1536. Wright thus understood *Perkins* to apply to a circumstance fundamentally different from his.

Referencing the seminal Supreme Court case *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978), *Perkins* itself explains the distinction between a situation in which due process requires individualized notice and where it does not. In *Memphis Light*, the *Perkins* Court recalled, the Court held that actual notice may be required where property-return procedures are "not set forth in documents accessible to the public." *Perkins*, 525 U.S. at 242 (citing *Memphis Light*, 436 U.S. at 16-17). Wright reasonably believed that *Perkins* did not control. For LAPD's procedures for obtaining and executing disposition orders, like the procedures at issue in *Memphis Light*, are "not set forth in documents accessible to the public." *Id.*

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

What's more, the Ninth Circuit has held that the *Perkins* standard concerns only what notice is required when the government seizes a person's property, and that the potential for permanent property deprivation is a separate issue altogether. *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032-33 (9th Cir. 2012) (citing *Perkins*, 525 U.S. at 240; *Logan*, 455 U.S. at 439). Together, these authorities armed Wright with a good-faith basis to argue that *Perkins* did not apply, and that Wright was entitled to notice *before* the City destroyed his property.[3] Because Wright's due process claim was not wholly without merit, the City is not entitled to any fees for its work defending that claim.

### 3. Wright's Pursuit of the Fourth Amendment Claim Was Not Frivolous; It Was Based on a Good-faith Argument That the Court Rejected

This Court correctly noted that the "ultimate question in [a Fourth Amendment] case such as this is whether the law enforcement agency's conduct was 'reasonable'." ECF No. 179 at 6 (citing *United States v. Place*, 462 U.S. 696, 703 (1983)). It also recognized that "an initially lawful seizure may later become unlawful due to an unreasonable refusal to release the seized property or an unreasonable decision to dispose of the property." *Id*. at 6. Ultimately, though, the Court made two findings in the City's favor that it found determinative. The City relies on those two passages to justify a fee award for its defense against Wright's Fourth Amendment. ECF No. 188 at 3 (citing ECF No. 179 at 7-8). Despite these two passages, however, the City has not met the high bar of proving that Wright's Fourth Amendment claim was frivolous.

First, the City quotes the Court's holding that "LAPD's refusal to return certain items of seized property in the absence of a court order to do so was reasonable as a matter of law." *Id.* (quoting ECF No. 179 at 7). Relying on Penal

---

[3] That a state court rejected this argument in a matter that Wright was not a party to should not be construed against Wright. Even if Wright had been a party to that matter, authorities such as *Taylor* and *Legal Services* hold that an earnest belief that the law is wrong does not warrant sanctions. Wright has presented ample authorities that attest to the earnestness of his legal argument.

10

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

Code section 1536, the Court reasoned that "where law enforcement officers seize property [under] a warrant, they . . . cannot legally return that property until a court orders its release."  But Wright plausibly believed that the August 17, 2006 Ventura court order accepting the terms of Wright's plea deal, ECF No. 126-1 at 4, *was* a release order—although a conditional one. For that order *did* grant the release of Wright's seized firearms. It was not unreasonable to contend that the 2006 order satisfied section 1536, even though it included the condition that Wright provide "proof of ownership" under LAPD Policy.

The City, however, apparently believed that *additional* orders were required. *See, e.g.*, ECF No. 107 at 6 (citing ECF No. 113, Ex. K). But it is disingenuous to argue that the refusal to return Wright's property was reasonable "in the absence of a court order" authorizing release. For that argument obfuscates the mechanics of the property return procedure. Because LAPD was charged with evaluating the sufficiency of Wright's proof of ownership, a property-return order would have issued only once LAPD was satisfied that Wright had met his burden. LAPD can't obstruct Wright's attempts to obtain an order releasing his property, then claim its refusal to release the property without an order was reasonable. So Wright's position was that the relevant question was not whether LAPD reasonably relied on the lack of a court order, but whether its proof-of-ownership determinations were reasonable.

And Wright's claim that LAPD determinations were *not* reasonable was supported by both the record and plausible legal arguments. For instance, despite the Court's ultimate ruling, Wright reasonably argued that LAPD should have applied the presumptions of Evidence Code section 637. ECF No. 126 at 16. First, Wright never knowingly waived the application of section 637. Indeed, Wright provided evidence that, when the City drafted the LAPD Policy, it expressed its intent that state law was to inform LAPD's application of its policy. ECF No. 127-5, Ex. AA; ECF No. 126 at 15. Second, as this Court recognized, section 637 applies in California courts. ECF No. 179 at 7. And, as this Court also held, a court order was

11

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

necessary for the release of Wright's property. *Id.* At minimum, it is not unreasonable to contend that if the decision to return the firearms is up to the state court, then the laws that apply in state court should apply.

Next, the City quotes the Court's holding that "neither California Law nor LAPD policy requires a law enforcement agency to accept a person's sworn affidavits as conclusive proof that he or she owns seized property." ECF No. 188 at 3 (citing ECF No. 179 at 8). But Wright never argued that LAPD had to accept his sworn affidavit as *conclusive* proof of ownership. Instead, he argued that the City (*per its own policy*) must have had "articulable probable cause" to disbelieve the sworn affidavit. ECF No. 126 at 16. Wright presented evidence that neither Edwards nor Tompkins ever formed such probable cause and, instead, simply dismissed Wright's affidavit as unreliable in light of alleged crimes Wright was never charged with. ECF No. 127-6, Ex. EE at 78:18-79:19, Ex. FF at 76:2-79:19. For that reason, it was unreasonable to withhold, and ultimately destroy, Wright's property. For these reasons, Wright had a non-frivolous Fourth Amendment claim. The City is not entitled to attorneys' fees for its defense of that claim.

### C.   The City Has Not Met Its Burden to Show That Wright's Failure to Train Claim Was Frivolous

The City does not even attempt to prove that Wright's claim for failure to train was frivolous. Because the City, as a prevailing defendant seeking a section 1988 fee award, bears the burden of proving that the plaintiff's claim was "frivolous" or "wholly without merit," its failure to address the issue dooms the City's motion. It is too late for the City to raise the issue for the first time in its reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). The City has waived the issue. It is thus not entitled to fees for its defense against Wright's failure to train claims and, as discussed below, the City is entitled to *no fee award at all* because it made no attempt to segregate its work on the various claims.

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

### D.   If Any of Wright's Claims Ever Became Frivolous, It Was Not Until Long After the City Contends

The City contends that "[e]ven assuming Plaintiff required some discovery to realize the frivolous nature of his claims, . . . Defendants should have been dismissed as early as July 13, 2018 or during various stages of discovery." ECF No. 188 at 6-7. That is, the City myopically claims that, as soon as any defendant produced information during discovery that *they themselves* claim was exculpatory, Wright had to accept such information as true and determinative and dismiss parties. The City cites no authority for this dubious proposition. And it fails to identify even one—supposedly determinative—discovery response. Both facts show the meritless nature of the City's claim that Wright "was 'on-notice' that his claims lacked factual support" while discovery was ongoing. *Id.* at 4.

Interestingly, the only case the City mentions on this point is *Galen*. That case, however, does not support the City's position that Wright's claims became factually frivolous before the close of discovery. There, Galen's *Monell* claim became frivolous only after he "had **completed** discovery[.]" *Galen*, 477 F.3d at 666 (emphasis added). So if the Court finds that Wright brought a frivolous claim, at best the City may recover only those fees for work completed sometime *after* discovery closed on November 26, 2018. *See* ECF No. 57.

Certainly, many cases are clearly frivolous at the end of discovery; often the parties have resolved all material factual disputes by that point. But the Supreme Court has prescribed caution in this area. "[N]o matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery *or trial.*" *Christiansburg*, 434 U.S. at 422 (emphasis added). Because the parties were engaged in substantial pretrial and discovery-related issues right after the close of discovery on November 26, 2018, there was not a sufficient "buffer" between the close of discovery and the deadline for Wright's opposition to summary judgment on December 3, 2018. For one week is insufficient time to digest recent discovery responses, sufficiently oppose an extensive summary

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1  judgment motion, and decide if "the result appear[ed] obvious" for each of the

2  claims Wright pleaded.

3       Finally, if the Court determines that Wright's claims were frivolous, the City's

4  refusal to timely produce its person most knowledgeable for deposition, Franklin

5  Decl. ¶¶ 2-4, Ex. 20, and the fact that the scheduling order did not expressly state

6  that this Court intended the discovery cutoff to apply to the hearing of discovery

7  motions, justify a finding that this case could not have become frivolous until

8  Wright's summary judgment opposition deadline, December 3, 2018. Thus, the only

9  the period the City spent working on a "frivolous" claim could have been December

10  3, 2018 through December 22, 2018. *See Fox*, 563 U.S. at 836 (holding that court

11  may only grant fees for work done on frivolous claims).

## II.   SHOULD THE COURT FIND THAT THE CITY HAS MET ITS HIGH BURDEN UNDER 42 U.S.C. §1988, IT SHOULD NONETHELESS EXERCISE ITS DISCRETION TO DENY ALL OR MOST OF THE CITY'S FEE CLAIM

14       Under 42 U.S.C. § 1988, a "prevailing party in certain civil rights actions may

15  recover 'a *reasonable* attorney's fee as part of the costs.' " *Perdue v. Kenny A. ex*

16  *rel. Winn*, 559 U.S. 542, 547, 550 & n. 2 (2010) (emphasis added). In the Ninth

17  Circuit, to determine a "reasonable" fee award, the Court must start by calculating

18  the "lodestar" amount—the product of multiplying the number of hours *reasonably*

19  expended on the litigation by a *reasonable* hourly fee). *Ferland v. Conrad Credit*

20  *Corp.* 244 F.3d 1145, 1149, n. 4 (9th Cir. 2001); *see Hensley v. Eckerhart*, 461 U.S.

21  424, 433-37 (1983). The fee applicant bears the initial burden of proving the hours

22  worked and justifying the hourly rate claimed. *Hensley*, 461 U.S. at 437 ("The fee

23  applicant bears the burden of establishing entitlement to an award and documenting

24  the appropriate hours expended and hourly rates."); *Gates v. Deukmejian*, 987 F.2d

25  1392, 1397 (9th Cir. 1992). If the moving party fails to meet that burden, the Court

26  should exercise its discretion to deny all or part of the fee request. *Sorenson v. Mink*,

27  239 F.3d 1140, 1146 (9th Cir. 2001).

28       Here, the City seeks to recover $723,830 for 1,215 hours of work completed

by three professionals over the course of just six months. ECF No. 188 at 10. But the City's motion and supporting evidence reveal that the claim is excessive. So even if this Court finds that the City has met the demanding burden to prove that Wright's claims were "frivolous," it should still deny all or most of the City's fee claim as unreasonable.

### A.   The Court Should Not Grant Any Fee Award to the City

#### 1.   The Court Should Deny the City's Request in Its Entirety Because the City Has Not Proven Which Hours Were *Exclusively S*pent on its Defense of Non-frivolous Claims

Under 42 U.S.C. § 1988, when a civil rights action presents both frivolous and non-frivolous claims, a defendant may recover only fees necessarily incurred defending against the frivolous ones. *See Fox v. Vice*, 563 U.S. 826, 829 (2011) ("Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim.") Courts may not use a pro-rata allocation to determine which fees were attributable to only frivolous claims. *Id.* at 836-37; *Harris v. Maricopa Cty. Super. Ct.*, 631 F.3d 963, 971 (9th Cir. 2011). Instead, the defendant must prove which portion of the fees is attributable *exclusively* to frivolous claims. *See Harris.*, 631 F.3d at 972. Failure to make a good-faith effort to segregate hours justifies denying the entire request. *See Martin v. Cty. of Los Angeles*, No. 16-cv-02809, 2017 WL 3508735 (C.D. Cal. June 27, 2017) (denying all fee award because prevailing defendants did not break down the billed hours by claim). Here, the City does not even attempt to segregate the billed hours by claim. So, even assuming any claim was frivolous, the Court cannot determine which portion of the hours billed are attributable solely to defending against frivolous claims. The Court should thus deny the City's entire fee claim.

#### 2.   The Court Should Deny the City's Request in Its Entirety Because It Is "Outrageously Excessive"

As this Court has held, a complete denial of fees is justified when a party makes a fee claim that is "outrageously excessive." *Milton H. Green Archives, Inc.*

*v. CMG Worldwide, Inc.*, No. 05-cv-02200, 2009 WL 10669361, at *21 (C.D. Cal. Mar. 25, 2009). Indeed, several circuits have held that "when a party submits a § 1988 attorney's fee request that is outrageously excessive, the court may respond by awarding no fees at all." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 1998); *see, e.g.*, *Envtl. Def. Fund, Inc. v. Reilly*, 1 F.3d 1254, 1258-60 (D.C. Cir. 1993); *Lewis v. Kendrick*, 944 F.2d 949, 958 (1st Cir. 1991); *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).[4] Courts rightly take this punitive action to deter attorneys from making unreasonable demands, "knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Brown*, 612 F.2d 1057, 1059; *see also Lewis*, 944 F.2d at 958 ("A request for attorney's fees is required to be in good faith and in reasonable compliance with judicial pronouncements, and not an opening gambit in negotiations to reach an ultimate result.").

Considering (1) the City's extremely high hourly rates and (2) its inadequate support for a nearly *$725,000* claim, the City's fee request is so "outrageously excessive" that this Court should deny a fee award altogether.

> **a.    City's claimed hourly rates are inconsistent with the rates of similarly situated legal professionals—including those within the City Attorney's own office.**

The Court calculates a reasonable hourly rate according to the prevailing market rates in the relevant community; such rates should be in line with similar services by lawyers of reasonably comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). The fee applicant must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." *Dang v. Cross*,

---

[4] So have state and federal courts in California. *Houston v. Inland Marine Indus.*, Nos. C-81-4729 and C-81-3115, 1982 WL 459, *2 (N.D. Cal. June 25, 1982) ("If the petitioning lawyer is guilty of overreaching in seeking outrageously unreasonable fees, the Court, in its discretion, may deny all fees."); *Farris v. Cox*, 508 F. Supp. 222, 227 (N.D. Cal. 1981) ("Even in civil rights cases, fees may be denied in their entirety when petitioning lawyers are guilty of overreaching in seeking outrageously unreasonable fees.")

16

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

422 F.3d 800, 814 (9th Cir. 2005). The City claims its two attorneys are entitled to $695 per hour and its paralegal is entitled to $250. But the City's rates lack sufficient support and are inconsistent with the rates in the relevant community.

First, the City supports its rates with little more than the attorney's own statements that they believe the rates are "fair and reasonable."[5] ECF No. 188-1 ¶ 5; ECF No. 188-2 ¶ 8. Lebron declares that he joined the state bar in December 2004, that he worked for large firms for 10 years, and that he joined the City Attorney's Office in 2014. Lebron Decl. ¶ 3. He does not claim to have handled any 1983 actions during his 10 years in private practice, and he only vaguely describes having handled "numerous" such cases during his five years with the City. *Id.* ¶¶ 2, 4. Ms. Ursea has "been an active litigator for nearly 16 years." Ursea Decl. ¶ 2. While she describes some experience with civil rights claims in her three years with the City, most of her career has focused on general civil litigation. *Id.* ¶¶ 4-5. Grams, for his part, states that in the private sector, he billed between $165 and $250 "per hour depending on the client and the firm." ECF No. 188-3 ¶ 4. Without explanation, the City chooses to bill him at the very top of that broad range, ECF No. 188 at 10.

The City's declarations do nothing to place the claimed rates in the context of prevailing market rates for those with comparable experience. "This type of evidence may be considered in establishing a reasonable hourly rate; however, standing alone, it is insufficient to establish reasonableness." *Neidermeyer v. Caldwell*, No. 14-cv-1209, 2016 WL 10935023 at *3(C.D. Cal. Mar. 29, 2016) (citing *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)). The City

---

[5] Admittedly, Lebron also submits a declaration of C.D. Michel, one of Wright's attorneys, that was attached to an unsuccessful fee motion in an unrelated case. Michel's declaration does not help the City's cause. There, he references the rates of attorneys at some of the country's most distinguished law firms working in the technical and rapidly evolving area of Second Amendment litigation—not general 1983 civil rights litigation in L.A. ECF No. 188-1, Ex. A. Just because the property at issue here was firearms does not place it in the same universe as the sorts of cases Michel was referencing in that case. What's more, Michel, an attorney with more than 25 years' experience litigating civil rights cases, was seeking only $600 per hour there. Dale Decl., Ex. 21 ¶ 7. Wright's attorney, Joshua Dale, who also has more experience than the City's attorneys, was seeking only $450. *Id.*, Ex. 21 ¶ 8.

17

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

presents *no* evidence of prevailing market rates in Los Angeles. It certainly has not proven that courts routinely award $695 per hour to civil rights attorneys with much less than 20 years' experience. Lebron and Ursea don't even claim that they themselves have ever been awarded that rate.

Second, the City's claimed hourly rates are wildly inconsistent with the rates this Court has awarded in recent 42 U.S.C. § 1983 actions. *See United States v. $28,000 in Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) ("[R]ate determinations in other cases are satisfactory evidence of the prevailing market rate.") For instance, in *Klein v. City of Laguna Beach*, the Court held that only $635 per hour was a reasonable rate for a 23-year attorney with substantial section 1983 experience. No. 08-cv-1368, 2016 WL 9774705, *7-9 (C.D. Cal. Aug. 25, 2016), *rev'd on other grounds*. The court awarded an even more-seasoned attorney (33 years), with less constitutional law background, only $525 an hour. *Id.* In *Antuna v. County of Los Angeles*, the Court saved rates between $600 and $700 for *senior partners with over 30 years of experience*. No. 14-cv-5600, 2016 U.S. Dist. LEXIS 189152 (C.D. Cal. Mar. 8, 2016). Most recently, an attorney representing the County of Ventura with "25 years of experience defending public entities in civil rights and general litigation" claimed a rate of just $200 per hour. *Spangler v. County of Ventura*, No. 16-cv-09174, 2018 WL 5304767 (C.D. Cal. Oct. 24, 2018).

The table below shows rates awarded by the Central District in civil rights cases in recent years—it also shows that the court has reserved the rate Lebron and Ursea seek for attorneys with far more experience than they have.

| Case | Experience | Rate |
|---|---|---|
| *Antuna v. County of Los Angeles*, No. 14-cv-5600, 2016 U.S. Dist. LEXIS 189152 (C.D. Cal. Mar. 8, 2016) (Barvir Decl. ¶ 2, Ex. 1) | 30+ | $600-700 |
| *Cervantes v. County of Los Angeles*, No. 12-cv-09889, 2016 WL 756456 (C.D. Cal. Feb. 24, 2016) (Barvir Decl. ¶ 3, Ex. 2) | 36 years | $700 |

18
OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

| | | |
|---|---|---|
| *J.N. v. Hendrickson*,<br>No. 14-cv-02428, 2017 WL 3498608 (C.D. Cal.<br>Aug. 15, 2017) (Barvir Decl. ¶ 4, Ex. 3) | 29 years | $650 |
| *Klein v. City of Laguna Beach*,<br>No. 08-cv-1368, 2016 WL 9774705 (C.D. Cal. Aug.<br>25, 2016), *rev'd on other grounds* (Barvir Decl. ¶ 5,<br>Ex. 4) | 23 years | $635 |
| | 33 years | $525 |
| *Lopez v. Gordon*,<br>No. 14-cv-07791, 2016 WL 6998563 (C.D. Cal.<br>Nov. 28, 2016) (disability rights case) (Barvir Decl.<br>¶ 6, Ex. 5) | 20+ years | $425 |
| | 29 years | $425 |
| | 20 years | $350 |
| *Rodriguez v. Cty. of Los Angeles*,<br>96 F. Supp. 3d 1012 (C.D. Cal. 2014) (Barvir Decl.<br>¶7, Ex. 6) | 28 years | $700 |
| *Shedlin v. Balagot*,<br>No. 14-cv-03664, 2016 WL 2732133 (C.D. Cal.<br>May 9, 2016) (Barvir Decl. ¶8, Ex. 7) | 4 years | $200 |
| | 5 years | $250 |
| | 20 years | $350 |
| | 29 years | $425 |
| | 20+ years | $425 |
| *Spangler v. County of Ventura*,<br>No. 16-cv-09174, 2018 WL 5304767 (C.D. Cal.<br>Oct. 24, 2018) (Barvir Decl. ¶ 9, Ex. 8) | 25 years | $200 |
| *Young v. Wolfe*<br>No. 07-cv-03190, 2017 WL 3184167 (C.D. Cal.<br>July 26, 2017) (Barvir Decl. ¶ 10, Ex. 9) | 26 years | $525 |

Unfortunately, it is not clear from these cases just what rate is appropriate for Los Angeles civil rights attorneys with 14-16 years' experience. With no evidence from the City that its rates "are in line with those prevailing in the community," *Dang*, 422 F.3d at 814, Wright offers rates based on an adjusted USAO Attorney's Fees Matrix. *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 (N.D. Cal. 2005) was the first California federal case to use the Laffey/USAO matrix, to determine reasonable hourly rates. There, the court recognized that the matrix is a "well-established objective source for rates that vary by experience." *Id.* at 921. At the same time, however, it found that the Bay Area's

1    higher cost of living required an adjustment. *Id*. It did so by adjusting matrix figures
2    upward by the difference between the federal courts' locality pay differentials of San
3    Francisco and Washington, D.C . *Id.* at 921-22.

4         Ever since the Northern District adopted this protocol in 2005, federal courts
5    in California have relied on the adjusted Laffey/USAO Attorney's Fees Matrix in
6    countless fee disputes. And even though some judges in this district have questioned
7    whether it accurately reflects the billing practices in Los Angeles, courts may rely on
8    it. *See Park v. Carlyle/Galaxy San Pedro, L.P.*, No. 09-cv-00793, 2009 WL
9    10669742, *16 (C.D. Cal. Oct. 8, 2009). Here, adjusting the current USAO figures
10   upward by 2.35% (the difference between the locality pay differential in Los
11   Angeles (30.57%) and D.C. (28.22%)), Ursea would reasonably expect to bill about
12   $557 per hour. Lebron might request $503 per hour. Grams, a paralegal, should
13   charge only $170 per hour. Barvir Decl., ¶¶ 11-13, Exs. 10-12.

14        Finally, the rate Lebron and Ursea request is wildly inconsistent with the $500
15   hourly rate that Eric Brown, formerly counsel of record here, requested in the related
16   state-case *Wright v. City of Los Angeles*, L.A. Super. Ct. Case No. BC 606993.
17   Barvir Decl. ¶¶ 17-18, Ex. 16 at 15, Ex. 17 at 5. Brown is also an attorney with the
18   Los Angeles City Attorney's Office, and he has more than "20 years of experience
19   as a trial and appellate attorney." *Id.*, Ex. 15, Ex. 16 at 16. That a more-seasoned
20   attorney from defense counsel's own office was awarded *nearly $200 less* than the
21   City seeks here shows again that the requested rates are extremely inflated.

**b.    The City seeks nearly $750,000 for just a few months'
work; even absent sufficient billing records, the
excessiveness of such a fee claim is patent.**

24        The fee applicant "bears the burden of documenting the appropriate hours
25   expended in litigation and must submit evidence in support of hours worked." *Gates*,
26   987 F.2d at 1397. Here, counsels' hopelessly vague descriptions of the use of their
27   time do not allow Wright to fulfill his burden of challenging, with specificity, the
28   reasonableness of hours billed. And it doesn't allow the Court to conduct its review

20

either. For instance, Lebron and Ursea provide no time frames during which they were working on the projects for which they seek recovery. ECF No. 188-1 at 4-12; ECF No. 188-2 at 3-6. They lump all work on huge projects, like drafting the summary judgment motion and researching legal issues related to eight separate evidentiary motions, into single line items. *See, e.g.*, ECF No. 188-2 at 5-6. It is also unclear whether and to what extent counsel repeatedly engaged in the same legal research on claims and defenses, a task that appears at least four times in the City's declarations. ECF No. 188-1 at 10-11; ECF No. 188-2 at 5.[6] But even if the City had provided documentation that would facilitate a reasonableness review, the excessiveness of the City's claim is patent. Considering that, between them, the City's two lead attorneys have some 30 years' litigation experience and considering the City's position that this case was obviously "frivolous," it is shocking to think that they could have possibly spent anywhere near the time they claim here.

First, the City seeks fees for 205 hours of work by Ursea on the motion for summary judgment and related tasks. ECF No. 188-2 at 5. She spent 50 hours "research[ing] legal issues" for the motion. *Id*. She spent another 105 drafting the motion and supporting documents. *Id.* Then she invested another 35 on the reply. *Id.*[7]  Assuming a solid 8 hours of average daily productivity, the motion occupied *all of Ursea's time for more than five full weeks*. That seems an extremely excessive and inefficient use of time for an Am100-trained litigator with 16 years' experience on handling "high risk and high-profile matters." ECF No. 188-2 ¶2.

It is also "outrageously excessive" if, as the City argues, Wright lacked legal and factual bases for his claims. Consider this, Ursea spent 60 hours—more than a week of non-stop work—researching *just the legal aspects* of Wright's claims. *Id.* at

---

[6] The City might argue that counsel's declarations are sufficient because, unlike private firms, it does not contemporaneously bill time. But the argument is belied given that Grams, the City's own paralegal, provided much more helpful descriptions of his work. *See* ECF 188-3.

[7] For instance, it took *five hours* to draft a request for judicial notice. ECF No. 188-2 at 5. That pro forma document is fewer than 2 pages of substantive content. ECF No. 108.

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

5. Recall, however, the City argues that Wright's case was so legally weak that he "needed no discovery" to see that. ECF No. 188 at 4. That would mean that Ursea's 60 hours of research, done late in the litigation, was unnecessary. But even if a diligent attorney would do *some* research, it would be more than charitable to label Ursea's effort "excessive." Now, of course, there may be a perfectly legitimate reason Ursea found it prudent to invest so much time just doing legal research—Wright's claims were *not* frivolous. Even so, one of two things must be true: (1) the time Ursea spent on was excessive because the demands of the case simply did not justify it; or (2) Wright's claims were not frivolous, and it took an accomplished litigator over 200 hours to craft a case dispositive motion involving nuanced constitutional law issues. The latter is likely true, and it guts the City's motion.

The City's fee request is littered with similarly excessive fee demands. Wright summarizes some of the other more egregious claims below:

Answer/Pretrial Research: Lebron spent 7 hours researching affirmative defenses for the answer and another 8 hours drafting it. ECF No. 188-1 at 10. This is a patently excessive amount of time. First, it is incredulous that the City Attorney's Office has no bank of affirmative defense work product. A day's worth of research to investigate them is not required. Second, it is highly likely that this research was duplicative of research done to bring the two motions to dismiss, and which was done again when Lebron was preparing the pretrial documents. *Id.* at 10-11.

Deposition Preparation: Lebron allegedly spent 50 hours preparing 4 witnesses for deposition: 12 hours with Aubry, 16 hours with Tompkins, 16 hours with Edwards, and 6 with LAPD employee Steven Ross. ECF No. 188-1 at 9. This amount of time crosses the boundary into excessiveness, especially for Aubry. Afterall, Aubry is not only herself an attorney—she is a Los Angeles District City Attorney. Again, it strains credulity that preparing her would take so much time. Especially if the case against her was as weak as the City thought it was. And while Tompkins and Edwards may not be attorneys, 16 hours each is excessive

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

1  given the supposed total lack of evidence or legal merit to Wright's claims.

2      <u>Motions in Limine:</u> The City had one week to draft and file oppositions to

3  Wright's 18 motions in limine. It ultimately addressed all of Wright's MILs in just 5

4  separate memoranda, two of which addressed 14 of the 18 motions. ECF Nos. 171-

5  176. Lebron claims that he spent 46 hours toward this effort, and Ursea states that

6  she spent 61 hours, totaling ***107 hours***. The research alone accounts for 41 hours. It

7  strains credulity that (1) two attorneys invested that much time in just one week, (2)

8  attorneys of this experience level would need so spend that much time researching to

9  oppose straightforward evidentiary motions, and (3) that they would really bother

10  investing so much time given their apparent appraisal of the merits of the case.

11      <u>Paralegal Work:</u>  The City cannot recover billing for clerical work at paralegal

12  rates. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989). Yet the City

13  seeks to collect $6,750 for 27 hours of clerical deposition-related work, including

14  issuing checks at $250 per hour. ECF 188-3 ¶ 9. What's more, Grams spent 40 hours

15  in expert rebuttal witness activities, *including 9 hours of online research just to find*

16  *an expert*, when the City ultimately found a non-party LAPD officer with

17  questionable credentials to assume the role. *Id.* ¶ 7. The amount of work simply does

18  not reflect the quality of the witness procured.

**B.  Should the Court Exercise Its Discretion to Award Some Fees, It Should Substantially Reduce the Award**

**1.  Granting the City's Request Would Expose Wright to Financial Ruin; That Is Not the Intent of Section 1988**

22      In civil rights cases brought under 42 U.S.C. § 1983, courts should consider

23  the financial resources of the plaintiff in awarding fees to a prevailing defendant.

24  *Miller v. L.A. Cty. Bd. of Educ.*, 827 F.2d 617, 621 (9th Cir. 1987). "This is

25  particularly true when the fee request against an individual plaintiff is sizable . . . .

26  While an award of attorney's fees for a frivolous lawsuit may be necessary to fulfill

27  the deterrent purposes of 42 U.S.C. § 1988 . . . the award should not subject the

28  plaintiff to financial ruin." *Id.* (citing *Charves v. W. Union Tel. Co.*, 711 F.2d 462,

465 (1st Cir. 1983) (recognizing that "the amount of the award, even in a frivolous case, may be a reduced assessment, dependent upon the plaintiff's ability to pay"). Because Wright could not afford to pay the even a fraction of a judgment on the City's outrageously high fee request, the Court should exercise its broad discretion to assess fees at a substantially reduced rate.

In *Spangler*, while recognizing the county's "right and ability to seek attorneys' fees," the Court refused to contribute to an individual civil rights plaintiff's financial ruin and thus slashed the county's fee award. No. 16-cv-09174, 2018 WL 5304767, at *6 (C.D. Cal. Oct. 24, 2018). There, the county sought just $87,500 in fees for work completed "after [p]laintiff was put on notice that her claims were without merit." *Id.* at *2. The court found that a reduced award of $77,220 more accurately represented the value of the work performed. *Id.* at *6. But, considering the individual plaintiff's ability to pay, the court awarded only $1,035 to the county, an amount equal to about ½ her monthly expenses. *Id.* at *6-7.

Here, having successfully defended itself from liability for destroying some $500,000 worth of Wright's property, the City now seeks to recover nearly $725,000 in attorney's fees Wright—an elderly, retired veteran and individual section 1983 plaintiff. Wright Decl. ¶ 3. While such a fee award might be reasonable if levied against a major corporation in a trademark case or class action, or even against a large non-profit in a civil rights case, few retired vets, living on a fixed income, could afford a fraction of such an award without substantial hardship. *Id.* ¶¶ 2-5. Like the *Spangler* court, this Court should be "*deeply disturbed* that the [City of Los Angeles] would attempt to recover such a sizable fee against individual, knowing that, were the Court to award fees, any such award would likely cause Plaintiff financial ruin." 2018 WL 5304767, at *6 (emphasis added). It should "declin[e] to cause or contribute to Plaintiff's financial ruin." *Id.* Instead, the Court should calculate a reasonable fee award balancing Wright's ability to pay with the need to deter frivolous lawsuits.

OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES

**2.     As Explained Above, the City's Fee Claim Is Unreasonable**

Again, the fee applicant must document "the appropriate hours expended in litigation and must submit evidence in support of hours worked." *Gates*, 987 F.2d at 1397. Thus, "where the documentation of hours is inadequate, the district court may reduce . . . accordingly." *Sorenson*, 239 F.3d at 1146. Indeed, "[a] district court has wide latitude in determining the number of hours that were reasonably expended by the prevailing lawyers." *Id.* For the reasons described in Part II.A.2, the City's fee claim is unreasonable. The Court should thus exercise its broad discretion to (1) decrease the hourly rates of defense counsel, so they accurately reflect the reasonable billing rates of Los Angeles area civil rights attorneys with similar experience, and (2) strike hours unnecessarily excessive, duplicative, or otherwise unreasonable work.

## CONCLUSION

Again, the City has not met its high burden to prove that "exceptional circumstances" justify a fee award. None of Wright's claims were "frivolous" and, even if some were, the City has identified no hours that its attorneys spent exclusively on defending against frivolous claims. For that reason, the City is not entitled to any award. What's more, the City's "outrageously excessive" fee claim justifies not only significant reductions to the City's request, but a flat denial of the request. For these reasons, Wright asks this Court to deny the City's motion.

Alternatively, Wright asks the Court to stay consideration of this motion pending the resolution of Wright's appeal to the Ninth Circuit, to conserve judicial resources for the City could lose its prevailing party status on appeal.

Dated: March 4, 2019                    **MICHEL & ASSOCIATES, P.C.**

                                        */s/ Anna M. Barvir*
                                        Anna M. Barvir
                                        Counsel for Plaintiff Wayne William Wright

1
2
3

**<u>CERTIFICATE OF SERVICE</u>**
IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

4
5

Case Name: *Wright v. Beck, et al.*
Case No.: 2:15-cv-05805-R-PJW

6

IT IS HEREBY CERTIFIED THAT:

7
8
9

     I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 180 East Ocean Boulevard, Suite 200, Long Beach, California 90802.

10

     I am not a party to the above-entitled action. I have caused service of:

11
12

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR AWARD OF ATTORNEYS' FEES**

13
14

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

15
16
17
18
19
20
21

Felix Lebron
felix.lebron@lacity.org
Gabriel S. Dermer
gabriel.dermer@lacity.org
Patricia Ursea
patricia.ursea@lacity.org
Office of the Los Angeles City Attorney
200 N. Main Street, Room 675
Los Angeles, CA 90012

22
23

     I declare under penalty of perjury that the foregoing is true and correct.

24

Executed March 4, 2019.

25
26

                           */s/ Laura Palmerin*         
                            Laura Palmerin

27
28